UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL W. McCREE, Jr.
    Plaintiff

v.

CIVIL ACTION NO.

PENSION BENEFIT
GUARANTY
CORPORATION
    Defendant

04cv 11334JLT

## THE AMENDED COMPLAINT

    This case is being brought against the Pension Benefit Guaranty Corporation ("PBGC) Pursuant to 29 U.S.C. Para.1303(f), which states that a participant in a retirement or pension plan may bring suit against the corporation administering such plan if they are adversely affected by any action of the corporation with respect to a plan in which such person has interest. The plaintiff, Paul W. McCree, Jr., has indeed been adversely affected by PBGC's administration of his pension plan and now seeks the intervention of this court to recover benefits due to him under the terms of his plan, and to enforce his rights under the terms of the plan, pursuant to 29 U. S. C. Para1132 (a)(1)(B).

### PARTIES

    1. The Plaintiff, Paul W. McCree, Jr. Is a resident of Massachusetts who resides at 173 Goodman's Hill Road, Sudbury, County of Middlesex, Commonwealth of Massachusetts.
    2. PBGC is a corporation with its primary place of business at 1200 K Street, N.W., Washington, in the District of Colombia. Upon information and belief, PBGC is a corporation organized under laws of the District of Columbia and is a wholly owned United States government corporation.

### JURISDICTION AND VENUE

    3. This Court has subject matter jurisdiction over this case, pursuant to 29 USCA para.1303(f)(2)(B), in that the plan had its principal offices in Bedford, Massachusetts.
    4. Venue is proper in this Court, pursuant again, to 29 USCA para.1303(f)(2)(B) which allows an individual to bring a civil action against the PBGC in the " United States district court for the judicial district in which the plan has its principal office."

### Historical Facts and Allegations

    5. On or about November 1, 1984, Mr. McCree was hired by the H.H Aerospace Design Co. as a systems engineer. At this time, the H.H.Aerospace Design Co. had a principal place of business at the Civilian Air Terminal adjacent to Hanscom AFB in Bedford Massachusetts.

1

6. One of the terms of employment promised to Mr. McCree was participation in the H.H. Aerspace Design Co., Inc. Defined Benefit Plan. Mr. McCree's participation in the Pension Plan began immediately on the day he first reported for work in 1984.

7. Between 1989 and 1990, the H.H.A.Aerospace Design Co, Inc. experienced serious cash flow problems. The Company had been withholding payment of salary to compensate. Under this circumstance, sometime between November and December of 1990, Mr. McCree resigned.

8. On or about February of 1991, the H.H.A. Aerospace Design Co., Inc. filed for bankrupcy and ceased doing business.

9. At about the same time , PBGC, took over the administration of the Plan.

10. Mr. McCree decided to retire and on or about October 27,1991, he filed claim for benefits as provided by the Plan

11 PBGC made a preliminary determination of benefit in 1994 and, subsequently in 1995, reduced the preliminary determination by one third for administrative reason. PBGC made its final determination of benefit in September 1998.

12 On or about October 8, 1998, Mr. McCree filed an appeal requesting correction of the calculation of the monthly benefit on two counts.

 I. The defendant failed to follow the direction specified in the Adoption Agreement, Article I. Paragraphs (d, e, f) for determining the average monthly earnings.

 II. The defendant misinterpreted the provisions specified in the Adoption Agreement Article V. Paragraph 5.1 for the formula for calculating the monthly benefit

13 Mr. McCree had discovered that the PBGC, in its determinations of final benefit had used the formulation for the monthly benefit provided in the Plan's Plan Description Document. Since that formulation did not match his recollection, Mr. McCree wrote to the PBGC Board of Appeals asking whether that formulation was a true, valid and authoritative statement. He indicated in his inquiry that if this were true, he should have to withdraw his appeal.

The PBGC responded immediately in writing that, in accord with the inquiry, the case (case # 158439; Appeal # 99-0182) had been closed.

14 In the meantime Mr. McCree had received a copy of the HHA Plan that he had requested from FOIA and found that there actually was a substantive difference between the formulation in the given Plan Description Document and that in the Adoption Agreement. In essence **the formulation in the Adoption Agreement specifies that the benefit was increased or offset by the addition of a specified, positive amount whereas the Plan Description formulation specifies that the benefit was reduced or offset by a subtraction of a specified amount**. The Plan Description Document is dated 1979 whereas the Adoption Agreement is the amended agreement dated 1984. Based on these findings, Mr. McCree wrote requesting that his case be re-opened since the provisions of the Adoption Agreement(1984) has precedence over the Plan Description Document (1979).

If it can be shown that the phrase, **offset by a specified amount**, as used, is ambiguous, (i.e. it cannot be determined whether an increase or reduction is intended.), decision must be made for the increase. Otherwise, the plaintiff would be unduly and unjustly penalised for ambiguities that he had no part in making..

15 In March 2002, The PBGC Board of Appeals, after cordial exchanges spanning four years of denial vs rebuttal between the parties, the PBGC Board of Appeals denied the plaintiff's appeal to reopen the case. The plaintiff was notified that he had exhausted administrative

recourse to further his appeal. He was informed by the Office of the PBGC Counsel that he retained the right to sue for judicial hearing to challenge the PBGC's decision. In all of this, the PBGC has been unable to disprove or refute Mr. McCree's claims or provide substantive, verifiable basis to show that the Plantiff's claims are not supported by the provisions of the Plan.. The defendant, nonetheless, has insisted that the plaintiff had not proven the case that the Adoption Agreement fully supported his claims. Yet, the defendant has ignored or disallowed substantive proofs of claim provided in rebuttals by the plaintiff Furthermore, the plaintiff's rebuttals clearly refute and repudiate the basis for the defendant's denial.

### Factual Allegations

References (1) Case Number 158439; Appeal Number 99-0182.
  (2) The HHA Defined Benefit Plan $_{(1984)}$
    a. The KDCAO Defined Benefit Pension Plan and Trust
    b. The H.H. Aerospace Adoption Agreement $_{(1984)}$ to the KDCAO Defined Benefit Plan And Trust $_{(1984)}$
    c. The Summary Plan Description Document $_{(1979)}$
  (3) The PBGC notice of denial of appeal dated 3/15/2001; (4) My letters dated 3/17/2001, 3/19/2001 and 3/29/2001 in rebuttal of PBGC's denial of appeal Ref (3); (5) PBGC's letter with attachments re. PBGC's Notice dated 3/13/2002 to uphold denial of Appeal No. 99-0182 ; (6) My letters dated 3/16/2002 and 3/20/2002 in response to Ref (5).

This Complaint involves two central provisions of the Adoption Agreement $_{(1984)}$ of the HHA Defined Benefit Plan. (See Ref (2) b., Article I, 5.1(d,e,f ) and Article V, 5.1.)
  (1) Estimation of the Average Monthly Earnings, and
  (2) Determination of the Accrued Monthly Benefit,
  (1) PBGC used W-2 data to determine the estimated , average, monthly earnings. Although W-2 data is indicated, in the Plan's Adoption Agreement $_{(1984)}$ , as a valid source for estimating the average monthly earnings, that option is not the option specifically selected for this purpose in the subject Plan. The option specifically identified is that determined under paragraphs 1.5 (d,e,f) in the Plan's Adoption Agreement $_{(1984)}$ . **This option stipulates that applicable compensation means total, taxable, compensation actually paid or paid and accrued.** In proof of claim, I submitted , with my original appeal in September, 1998, payroll check-stubs accounting for my taxable salary paid or paid and accrued while a full-time, salaried employee of the H H Aerospace Design Co. The HH Aerospace Design Co. had failed. The company went into bankrupcy owing employees accrued salary.
  Since PBGC erroneously used W-2 data, its figure for the estimated, average , monthly earning is incorrect; W-2 data represents actually paid wages only. The PBGC denial of claim for correction of the estimation of monthly earnings is based on its assertion that my earnings represented by the data submitted in proof of claim were not taxable and that, according to the Plan, only "actually paid " Compensation is covered. This assertion is completely false. .It contravenes the selected options stipulated by the provisions of the Plan's Adoption Agreement $_{(1984)}$ , Article I, 1.4, 1.5(d, e, f)..

(2) PBGC used the statement of benefit provided in the Plan's Summary Plan Description (1979) but the Plan's Adoption Agreement (1984) differs from the statement in the Summary Plan Description (1979). In the Adoption Agreement (1984) the phrasing, **offset by**, is used in the statement while in the Summary Plan Description (1979) the word, **minus**, is substituted. I claim, with positive proof, that the phrase, offset by, translates to mean plus. Accordingly, the determination of my monthly benefit should be corrected. But PBGC summarily dismissed the plaintiff's claim by positing the blatantly false counterclaim that the word, offset, means reduce, and thus, that the phrase, offset by, means minus. Then, PBGC quotes the definition of the verb, to offset, from the Merriam-Webster dictionary but confounds and misconstrues the illustrative examples, given thereto, so to infer falsely that offset means reduce.

Furthermore, PBGC adduces federal laws to confirm that the false counterclaim is true. But the cited, IRS federal laws, in fact, by definition, do not confirm or support the PBGC's case and, furthermore, the cited, IRS federal laws, in fact, categorically do not apply to Defined Benefit plans.

Furthermore, PBGC insinuates that positive offsets are illegal based on its perception that positive offsets are disadvantageous and punitive to the employer. But, by provisions of ERISA 1974, it's solely the prerogative of the employer as to how the determination or calculation of benefit in a plan may be defined. **Offsets** used in benefit plans are legal. The Courts have consistently ruled that reductions or offsets made by subtraction of offsets are legal.

***But not all Offsets are reductions.*** **The use of offsets made by addition of positive offsets are not prohibited and are just as legal as any made by subtracting offsets or by the addition of negative offsets. There is no legitimate basis for the phrase, offset by, as used in the statement of benefit in the HHA Plan (1984) to be interpreted to mean or be assumed to mean reduced by or minus.**

PBGC has not disproved the plaintiff's claims. PBGC's rationale for denial is entirely fallacious.. **PBGC's decision is in violation of the nonforfeitable provision in   ERISA 1974 ( 29 USCS 1001 et seq. ). the denial is wrongful and should be reversed.**

The Plaintiff's claim is, in fact, fully supported by federal statute, Article I, 1.4, 1.5(d, e, f), Article V, 5.1 of the Plan (1984) and common understanding of usage and meaning in the English Language.

   1.0 <u>Estimation of the Average Monthly Earnings</u>
      See Reference (2b); Article I , 1.4, 1.5 (d, e ,f).
   1.1 <u>The Original Claim</u> (See Reference (1) ):

In the original appeal, the plaintiff claimed that the PBGC has underestimated his average monthly earnings. He submitted check stubs to validate and verify his income earned while employed by the HHA Aerospace Deign Co. The data spanned the last five years of his employment at HHA. The data on the check stubs included my hourly rate of pay. The fixed, hourly pay rate was based on his fixed annual salary. His total yearly hours are defined by the product of fifty-two weeks at forty hours per weeks or 2080 hours. Consequently, He explained, in hi appeal, that his average yearly salary was the product of the average hourly rate times 2080 hours and therefore, his Average Monthly Earnings were the average yearly salary divided by twelve. He showed that, based on this analysis, his estimated average, yearly salary was $70,720.00. Thus, his average monthly earning was $70,720.00/12 equals $5893.00. The PBGC's estimate , using W-2 data is $4701.28.

1.2 <u>PBGC's Rejoinder</u> See Refs. (3) & (5).

PBGC falsely asserts that the terms of the HHA Plan $_{(1984)}$ allow that only actual wages counted as compensation for estimating the average monthly earnings. PBGC suggests that my claim for correction of the estimate of earnings is based on hypothetical issue. PBGC has alleged that I acted from base, ulterior motive to gain consideration beyond what the Plan provides.

1.3 <u>Plaintiff's Rebuttal and Substantiation of Claim</u> Refs. (See Refs. (4) & (6) )

See the Attachment, Adoption Agreement $_{(1984)}$ , Article I, 1.5(d., e and f). **<u>This clearly specifies that valid compensation for estimating the average monthly earnings is the total, taxable compensation which was actually paid or paid and accrued.</u>** PBGC misrepresents the Plan $_{(1984)}$ ; PBGC insinuates that compensation, as defined by the Plan $_{(1984)}$ , means total, taxable and _actually paid_ only. PBGC used W-2 data ; the W-2 data reports only wages _actually paid_. But, under the Adoption Agreement Article $_{(1984)}$ , the W-2 option is not the option selected in the Plan for determining average earnings. _**This proves that PBGC's estimate of the average monthly earnings is incorrect; it does not follow the provisions of the HHA Plan $_{(1984)}$ .**_

Payroll check stubs are commonly used to determine, corroborate and validate employee income history. There is nothing hypothetical about my payroll record of employment and salary history. _**It is a fact that the my check stub data are an authentic , valid, verifiable record of my total, taxable compensation actually paid and accrued.**_ Using these data, an estimate of the plaintiff's Average Monthly Earnings can be found based on my total, taxable compensation actually paid or paid and accrued as specified by the provisions of the HHA Plan $_{(1984)}$. The plaintiff has appealed to gain no more and no less than what the provisions of the Plan plainly and fairly entitle him.

1.4 <u>Analysis and Conclusion</u>

The PBGC's rejection and denial has no merit. It is based on false and irrelevant accusation. It is based on misrepresentations of the meaning and intent of the provisions of the HHA Plan $_{(1984)}$ . The Adoption Agreement $_{(1984)}$ fully supports the plaintiff's claim.

The plaintiff's claim is substantiated by the fact that in the Adoption Agreement $_{(1984)}$ , Article I, 1.4,1.5 (d, e, f) , compensation covered for estimating the average monthly earnings is defined to be the total, **taxable, actually paid or paid and accrued income.** It is a fact that check stubs are an authentic, verifiable record of an employees total, taxable income.. It is a fact that the check stubs carry hourly rates. It is a fact that the hourly rates shown are based on the plaintiff's yearly salary. It is a fact that his yearly salary is based on fifty-two weeks and forty hours per week or 2080 hours. It is a fact that the estimate of his average yearly salary is equal to the average hourly rate times 2080. It is a fact that the estimate of his average monthly earnings are equal to the average yearly salary divided by twelve. The estimate of plaintiff's monthly earnings should be so corrected.

2.0 <u>Determination of the Equation for the Accrued Monthly Benefit</u>

2.1 <u>The Plaintiff's Claim</u> See Ref .(1); Case Number 158439; Case Number 99-0182.

The definition of the statement of benefit provided in the Adoption Agreement $_{(1984)}$ is: The Normal Retirement Benefit (NRB) is equal to 0.45x the Average Monthly Earnings (AME) _offset by_ (2/3) times the estimated social security benefit or PIA. See Ref (2b), Article V, 5.1.

_In practice, an offset is applied or made by paying or adding or subtracting a compensation, counterweight or counterbalance. The verb, to offset, is commonly used to mean to pay or add or make a compensation, counterbalance or counterweight. An offset can be positive or negative. Thus, the statement, the NRB equals the 0.45xAME offset by_

5

*(2/3)xPIA, means that the NRB equals 0.45xAME balanced or compensated by the addition of or plus (2/3)xPIA, a positive offset.*

Furthermore, the phrasing, the offset, (2/3)x PIA, added to or in addition to 0.45xAME has the same meaning as the phrasing, 0.45xAME offset by (2/3)xPIA. Thus, the phrase, offset by, translates to plus and the equation derived for the NRB is:.(See Ref.(2b), 1.1 and 5.1.).

$NRB_{(1984)} = 0.45xAME + (2/3)x PIA$ and where PAF is the Plan Accrual Factor, the Accrued Monthly Benefit(AMB) is: $AMB_{(1984)} = (0.45xAME + (2/3)xPIA)xPAF_{(1984)}$

***The plantiff reaffirms that his determination of benefit should be so corrected.***
(Note: In my original appeal, I erroneously claimed that the PAF applies only to 0.45xAME. )

2.2 <u>PBGC's Rejoinder</u>  See Refs (3) & .(5)

PBGC's rejoinder consists basically of two parts:(1) justification for using the formulation found in the Plan Description Document $_{(1979)}$ and (2) evidence purported to support that justification. The definition used is: The Normal Retirement Benefit (NRB) is equal to 0.45 times the Average Monthly Earnings (AME) ***reduced by*** (2/3) times the estimated social security benefit or PIA..

2.2.1 ***<u>Rationale for Use of the Plan Description Document</u>*** $_{(1979)}$

PBGC falsely maintains that the Summary Plan Description Document $_{(1979)}$ is a valid and true representation of the statement of benefit provided by the Adoption Agreement $_{(1984)}$ . ***<u>PBGC's rationale is that the phrase, offset by, means reduced by or minus.</u>***

The equations derived from this statement of the benefit are:
$NRB_{(1979)} = 0.45xAME - (2/3)xPIA$ and.
$AMB = (0.45xAME - (2/3)xPIA)xPAF$ .

PBGC thus falsely concludes that the plaintiff's monthly benefit is reduced or offset by the subtraction of a specified amount.

2.2.2 ***<u>PBGC 's Defense by Definition of Offset</u>***

***<u>In defense of its rationale, PBGC quotes from a Merriam-Webster dictionary the following definitions of the verb, offset:</u>*** "1 (a): to place over something; BALANCE credits offset debits   (b) to serve as a counterbalance for :COMPENSATE his speed offsets his opponent's greater weight .

2 : to form an offset in "< offset a wall >" .

***<u>PBGC gives its analysis of the meaning of this definition as follows:</u>***

"***<u>The meaning of the verb "offset" here means reduction; e.g., balance equals credits reduced by debits, income over expenses, gains vs. losses, first component of formula less second component of formula."</u>***

To support the falsehood that **offset by** means **reduced by** , PBGC uses this ***<u>spurious</u>*** analysis of **the examples provided to illustrate usage to falsely infer** that the definition of the verb , offset , and all of its synonyms,  mean reduce   **In practice, the balance (i.e. the difference between credits and debits.) is dynamically offset by ongoing combinations of additions and subtractions of credits and debits. This is what the aphorism, Credits offset debits., means. Neither the definitions nor the illustrations support the false notion that the words, offset and reduce , are synonyms.**

2.2.3 ***<u>Defense by Invoking Authoritative Sources</u>***

In defense of its rationale for denial, PBGC  **falsely infers** that the understanding that reduce means offset is affirmed by the definition for an "offset plan" provided by ***<u>IRS Code, Section 401(1) (4) (D)</u>*** . PBGC falsely claims that the expression,***<u> reduced or offset</u>***., as used in

6

*IRS Revenue Ruling 71-446, Section 2.07,* legitimates the (false) understanding that reduce means offset.

 2.3 Plaintiff's Rebuttal and Substantiation of Claim  (See Refs. (4) & (6). )
The PBGC rationale for denial is entirely fallacious.

 2.3.1 *Rebuttal of Rationale for Using the Summary Plan Description Document* (1979)

The HHA Plan (1979) was amended. The HHA Plan (1984) is the *successor* plan. Curiously, *the Summary Plan Description Document* (1979) , unchanged, has been packaged with the successor plan. In the Summary Plan Description (1979) , the phrasing reduced by or equivalently, the word, minus is used.. But, the *Adoption Agreement* (1984) uses the phrase , *offset by*. Any **Summary Plan Description should contain fundamentally the same direction for determining the monthly benefit as that found in the parent, authoritative, definitive source, the approved Adoption Agreement** . Apparently, with the amendment, the Adoption Agreement (1979) was changed but the Plan Description Document (1979) , inadvertently, was not. The fact that terms like" less "and "minus" and "reduced by" are used in the subject Plan Description Document (1979) is the result of the accident of inadvertently omitted amendment and not by deliberate plan or intent. **Surely the amendment to the Adoption Agreement was intended to do more than change the wording but leave the meaning the same. In effect, PBGC asserts that the Plan Description Document (1979) is a true and valid source simply because it's the source that was used but it can't be a true , and valid source if and only if it is consistent with the provisions of the Adoption Agreement (1984). .**

The document, THE KDCAO Defined Benefit and Trust, Ref (2a), is the definitive source for the preparation of Defined Benefit Plans . It provides (see Ref (2a.), 5.1 (a) & (c)) that an approved Adoption Agreement is the authoritative source for the provisions for any specific plan. *The Plan Description Document is not specifically required by the KDCAO. It is apparently produced for administrative aid. The provisions of the Adoption Agreement (1984) are definitive and determinative*

The Adoption Agreement (1984) , Article I, p.1.4, 1.5(d, e, f) defines compensation covered under the HHA Plan. It is specified , therein, that compensation means the total, taxable, compensation actually paid or paid and accrued by a Participant. The Social Security Retirement Benefit and the average earnings are taxable compensation actually paid, or paid and accrued by a Participant. Accordingly, the total compensation, taxable, actually paid or paid and accrued is the sum of the Participant's average earnings and the Participant's Social Security Retirement Benefit.

**But the Plan Description Document (1979) states that the Normal Retirement Benefit (NRB) is the difference between 0.45 times the average monthly earnings and (2/3) times the estimated Social Security Retirement Benefit. This statement directly contradicts the provisions of the Adoption Agreement (1984) which require and specify that the NRB is the balanced sum of the specified percentages of the constituents of the total, covered compensation.**

**PBGC insinuates that offsets made by the additions of positive offsets are illegal. But provisions, under ERISA 1974 (29 USCS 1001 et seq. ), hold that OFFSETS in pension benefit plans are legal. Under provisions of the same federal authority, the determination of the content of a pension plan is left solely to the employer's free choice and once vested cannot be forfeited. Furthermore, adjudication, of all cases involving dispute over the legality of offsets made by reductions or subtractions, has ruled , in accord with ERISA**

7

1974, that offsets made by reduction or subtraction or made by the additions of negative offset are legal. It follows that offsets made by the additions of positive offsets are held equally legal.

PBGC's assertion, that the phrase, offset by, means reduced by, is absurd; *offset by does not mean minus*. Dictionaries show that reduce means to subtract, diminish or lessen whereas, offset means to balance, compensate, counterbalance or to make an offset. An offset is a compensation, counterweight or counterbalance. *There can be no question that the words, reduce and offset, plainly, are not synonyms. It is just as evident that the phrase, offset by, does not mean minus or any expression equivalent to minus (e.g. less or reduced by).*

However, it is true that the phrases, **offset by a reduction or offset by minus or offset by subtraction**, do convey the same meaning as the phrase, **reduced by**. But, the statement of benefit in the Adoption Agreement $_{(1984)}$ contains no such language, implication, connotation or sign. The definition of the statement of benefit provided in the Adoption Agreement $_{(1984)}$ is: The Normal Retirement Benefit (NRB) is equal to 0.45x the Average Monthly Earnings (AME) *offset by* (2/3) times the social security benefit or PIA. See Ref (2b), Article V, 5.1..

*In common usage, the verb, to offset, means to balance, counterbalance or to form or make an offset. See the Merriam-Webster dictionary. In practice, an offset is formed or made by paying, adding or subtracting an offset, compensation, counterweight or counterbalance. An offset can be positive or negative. Thus, the statement, the NRB equals the 0.45xAME offset by (2/3)xPIA, means that the NRB equals 0.45xAME made offset or balanced by the addition of or plus (2/3)xPIA, a positive offset.*

Furthermore, by common understanding and usage, the expression, the offset, (2/3)xPIA), added to or in addition to or plus 0.45xAME, conveys exactly the same meaning as the expression, 0.45xAME offset by (2/3)xPIA.

For these reasons and consistent with the provisions of the Plan $_{(1984)}$, the phrase, offset by, translates to plus and the correct equation for the Normal Retirement Benefit (NRB) is the sum:

$NRB_{(1984)} = 0.45 \times AME + (2/3) \times PIA$.

The Accrued Monthly Benefit(AMB) is equal to NRBxPAF. ( See Ref (2b), 1.1. & 5.1.)
Then: $AMB_{(1984)} = (0.45 \times AME + (2/3) \times PIA) \times PAF_{(1984)}$.

### 2.3.2 Rebuttal of the PBGC's Definition of Offset

*The Merriam-Webster definition of the verb, offset, includes illustrations of usage. PBGC, based on a specious interpretation of the illustrative examples, falsely infers that offset means reduce. A simple, straightforward examination of the actual Merriam-Webster definition confirms that offset means to place over something, to balance to counterbalance or to compensate, whereas, reduce means to lessen, diminish or subtract. The examples involve intrinsically related factors (e.g. credits vs., debits; speed vs weight). Thus one element of any element of a pair of intrinsically related factors naturally offsets, balances, compensates, etc., the other. The action of the verb, to offset, is to state or express a condition of equilibrium, equivalence or equity.*

The correct inference is that an equilibrium or balance exists between credits and debits. The balance is the difference between the credit and the debits. If the credits exceed the debits, the balance is in a state of profit or surplus. If the debits exceed the credits, the balance is in a state of deficit or loss. The state of balance is offset, balanced, compensated, **counterweighed, counterbalanced or made up for by deliberate, separate, direct actions to add and/or subtract offsets taken as combinations of credits and debits.**

The definitions for reduce and offset show that these words are not synonyms; it is false to infer from the illustrations that these words are synonyms

*Also, the dictionary, in definition (2), provides that offset means to make an offset. An offset is formed or made by addition of a compensation, counterweight or counterbalance. An offset can be positive or negative; thus, not all offsets are reductions.*

### 2.3.3 *Rebuttal of Appeal to Authoritative Sources*

At the PBGC website, http://www.pbgc.gov/about/mission.htm, it is explained in the PBGC Mission Statement that: " PBGC is not funded by general tax revenues. PBGC collects insurance premiums from employers that sponsor insured pension plans, earns money from investments and receives funds from pension plans it takes over."

**Therefore, the cited federal, IRS statutes categorically do not apply. It is explained in the following that, by definition as well, these federal statutes do not apply.**

#### 2.3.3.1 *IRS Revenue Ruling 71-446, Section 2.07*

PBGC has inferred from the phrase, *the benefit is reduced or offset*, as used in this ruling, that reduce means offset. *In English, the conjunction, or, is used to introduce an alternative but the usage does not make or require that paired alternatives (e.g. reduced or offset; or black or white ...etc.) are equal. Alternatives can be equal, opposite or entirely different. Here, the context strongly implies that a conjunction of equal alternatives is intended but the inference that reduce means offset is false. It directly contradicts the fact that reduce and offset, positively, do not mean the same thing. The past participle, offset, means made offset . Thus , the correct inference is that the benefit is reduced by a specified amount or made offset by the addition of minus the specified amount. In other words, the benefit is reduced or offset by a subtraction.* Reductions are offsets but not all offsets are reductions. A benefit may be raised or offset by an addition.

*False Inference Is The Mother of Bastard , Illegitimate Conclusions. An offset can be positive or negative.* A benefit may be reduced or offset or it may be raised or offset.

#### 2.3.3.2 *Code, Section 401(1) (4) (D)*

*PBGC insinuates that the definition for an "Offset Plan" provided by IRS Code, Section 401(1) (4) (D) confirms the false inference that reduce means offset. This definition, in no way specifies, that the phrase, reduced by, means offset by. There is absolutely nothing in the Code that even suggest that offset means reduce.*

The definition specifies that an "offset plan" is any plan in which the contribution attributable to the employer (e.g. 0.45xAME) is *reduced by* a specified amount (e.g. (2/3)xPIA). This definition, in effect, means that an "offset plan" is an "Offset Plan" **if and only if** the **statement of benefit in the plan** defines that **the benefit is equal to the contribution attributable to the employer (e.g. 0.45xAME)** *reduced by or offset by minus* **a specified amount (e.g. (2/3)xPIA). Thus, in an "offset plan" the benefit is** *the difference between* **the contribution attributable to the employer (e.g. 0.45xAME) and a specified amount (e.g. (2/3)xPIA)**..But the definition of the Normal Retirement Benefit, in the Adoption Agreement (1984) states that the benefit is equal to 0.45xAME *offset by* (2/3)xPIA).

*In common usage, the verb, to offset, means to balance, compensate apply or make or form an offset. see Merriam-Webster. In practice, an offset is applied, formed or made by adding or subtracting a compensation, counterweight or counterbalance. An offset can be positive or negative. Thus, the phrase, offset by a specified amount, translates to mean made offset, balanced, counterbalanced or compensated by the addition of or plus a specified*

9

*amount whereas, the phrase, reduced by a specified amount translates to mean minus a specified amount. Thus, the HHA Plan (1984) provides that the Normal Retirement Benefit is <u>the balanced sum of specified</u>, intrinsically positive factors, whereas the Code stipulates that an "Offset Plan" is a plan in which the benefit is <u>the difference between</u> specified, intrinsically positive factors. Consequently, the HHA Plan (1984) does not fit the cited rule or the specified definition for an "Offset Plan". <u>Therefore the cited code and rule by definition do not apply.</u> The interpretation that the NRB is a sum is consistent with the provisions of the HHA Plan (1984). See the Adoption Agreement (1984) Article I, 1.4, 1.5(d, e, f).*

### 2.4 *Analysis and Conclusion*

*<u>The proof of claim, is based on the facts. It is a fact that cited federal statutes do not confirm or support the false inference, that reduce means offset; the cited statutes don't even apply here.</u>* Thus, not only is the counterclaim that offset means reduce obviously false but the rationale adduced by PBGC to support it is also false. It is a fact that the action of the verb, to reduce, is to bring down or breakdown to a lower state or condition. It is a fact that the action of the verb, to offset, is to state, express or make a relation or condition of equilibrium, equity or equivalence. It is a fact the noun, offset, means a balance, compensation or counterweight. **It is a fact that the words offset and reduce are not synonyms. It is a fact that, in practice, an offset is made or applied by adding or subtracting a compensation, counterbalance or counterweight. It is a fact that the verb to offset is commonly used to mean to pay or to add a compensation, balance or counterweight. See the definitions in Merriam-Webster for the word, offset.** It is a fact that the expression, **the offset, (2/3)xPIA), subtracted from 0.45xAME**, means exactly the same thing as the expression, **0.45xAME reduced by (2/3)xPIA or 0.45xAME offset by minus (2/3)xPIA.**

*<u>It is just as irrefutably true that the expressions, the offset, (2/3)xPIA, added to or in addition to or plus 0.45xAME, conveys exactly the same meaning as the expression, 0.45xAME offset, balanced, compensated or made offset by( the addition of )(2/3)xPIA. Therefore, the phrase, offset by, does, in fact, translate to mean plus</u>*.

Logically, the phrase, offset by, as used, must translate to either plus or minus. But the phrase, offset by, does not mean minus or any equivalent expressions for minus (e.g. less or reduced by). Consequently, the phrase, offset by, as used, must translate to plus.

Thus, in accord with the common understanding of the standards of meaning and conventions of usage in the English language, whenever **the phrasing, offset by,** is used, in an algebraic or arithmetic statement in the form, **A equals B offset by C**, the **intended sign (e.g. + or -) of the offset, the object of the preposition, by,** must be unambiguously specified. Thus, if a positive offset is **intended** to be applied and the value of that offset is intrinsically positive, a positive sign may be assigned but no specific designation of sign is required. **By established convention, unsigned factors are taken to be positive.** On the other hand, if a negative offset or reduction is **intended**, and the value of the offset is intrinsically positive, then the negative sign must be explicitly identified. But if the value of the offset is intrinsically negative and a negative offset or reduction is **intended,** no specific designation of sign need be applied. On the other hand, if the value of the offset is intrinsically negative and a positive offset is **intended** then a negative sign must be specifically defined. **This follows from common understanding and usage that the verb, to offset, means to add a balance, compensation or counterweight and that a balance, compensation or counterweight can be applied to make an increase or decrease.** Also, according to arithmetic rules, the addition of two positives values is a sum; the

10

Thus, not all offsets are reductions; an offset can be positive or negative. In fact, compensations or offsets consist of two, distinct class-types, namely: type (1): offsets or raises in compensation made by an addition of specified, positive amounts and type (2): offsets or reductions in compensation made either by the subtraction of specified positives or by the addition of specified, negative amounts.

In practice, something is made offset by adding or making or applying a specified compensation, counterbalance, or counterweight. See definition (2) for the definition of the verb, to offset, in Merriam-Webster. In the given usage, the past participle of the verb, to offset, modifies the factor 0.45xAME; thus 0.45xAME is made offset (balanced, compensated or counterbalanced). The offset or amount by which the factor, 0.45xAME, is made offset is defined by the adverbial phrase, by (2/3)xPIA. The amount is (2/3)xPIA, a positive factor.

The definition of Normal Retirement Benefit (NRB) in the Adoption Agreement (1984) is a simple, declarative sentence written in simple, direct terms in ordinary English. The sentence defines a relation between a dependent variable, NRB, and two, independent variables, the AME and the PIA. All three variables are intrinsically positive. The sentence states that the NRB is equal to 0.45xAME ( *made* ) offset (balanced, compensated or counterbalanced) by ( *the addition of* ) (2/3)xPIA. This means that the NRB equals 0.45xAME plus (2/3)xPIA.

Thus: NRB = 0.45xAME + (2/3)xPIA . With T*ype (1) , the benefit is raised or offset*.

Had a reduction of benefit benefit been intended, the definition of benefit would have had to state that the NRB equals 0.45xAME ( *made* ) offset by ( *the addition of* ) minus (2/3)xPIA . Thus, with a reduction intended: NRB equals 0.45xAME minus (2/3)xPIA

*With Type (2) , the benefit is reduced or offset.*

By this analysis of the statement of benefit, it has been irrefutably and conclusively proved, without any exception or contradiction, that, in full accord with standard definition of meaning and the rules of English grammar, the phrase , offset by, in the statement of benefit in the Adoption Agreement (1984) unambiguously translates to mean plus. This interpretation of the statement of benefit is fully consistent with Article I, 1.1, 1.4, 1.5 (d, e, f) and Article V, 5.1 of the Adoption Agreement (1984) ; it is entirely consistent with the provisions of ERISA 1974 ( 29 USCS 1001 et seq. ).

*This analysis of the meaning and intent of the statement of benefit is entirely consistent with the facts, common sense, simple logic and the scrupulous application of the standard of the common understanding of meanings and the conventions of usage in the English language;* it completely repudiates the absurdity that offset means reduce. There is no legitimate basis for the statement of benefit in the HHA Plan (1984) to be interpreted to mean or be assumed to mean to provide a reduction of benefit.

*Indeed, in accordance with the Adoption Agreement, Article I, p.1.4, 1.5 (d, e, f) the total, taxable, actually paid or paid and accrued compensation of a Participant is the sum of the Participant's average earnings and his Social Security Retirement Benefit. Thus, in the context of the formulation for the monthly benefit in the HHA Defined Benefit Plan (1984) , the factors, (2/3)xPIA and 0.45xAME are simply positive "units of measure" chosen by the employer to define the Plan's retirement benefit as the balanced total of a factored component of employment earnings and a factored component of accrued Social Security Benefits. No other meaning of the term, PIA, should or need be inferred or applied.*

12

*Defined Benefit Plans are not Social Security Plans. The Defined Benefit Plans, were established to provide employees in private employment the option to establish private, insured retirement benefits through plans set up and administered by their employers and the PBGC.*. Accordingly, **the benefit provided by the HHA Plan, is not an additional Social Security Benefit**. The Defined Benefit Plan Fund is based on employer insurance premiums. *The employer is the sole contributor to the Plan.* The Benefit Fund is derived from PBGC's investment of the employers' insurance premiums. The individual, monthly benefit payments are drawn from that Benefit Fund. Thus, funding of the HHA Defined Benefit Plan is independent of federal revenues.

3.0 Summary Review

PBGC has not disproved the claims under appeal. The rationale for the denial is entirely fallacious. The plaintiff's claims are, in fact, fully supported by the authoritative provisions of the Adoption Agreement $_{(1984)}$, Article I, p 1.4, 1.5 (d, e, f) of the HHA Plan $_{(1984)}$. *The denial should be reversed. The appeal should be fully approved.*

3.1 *Estimation of the My Average Monthly Earnings*

*The Plan $_{(1984)}$ defines compensation for estimating average monthly earnings to be the total, taxable compensation actually paid or paid and accrued.* . See Reference (2b), Article I, p. 1.4, 1.5 (d, e, f). PBGC insinuates that compensation, as defined by the 1984 Plan, means total, taxable compensation *actually paid only*. PBGC used W-2 data to estimate the average monthly earnings. The W-2 data reports only wages **actually paid**. Under the Adoption Agreement Article I, 1.5b, W-2 earnings are not the option selected in the Plan for determining compensation for estimating average monthly earnings. Therefore, the PBGC's estimate is incorrect and violates the provisions of the HHA Plan $_{(1984)}$.

The payroll data which submitted in support of the plaintiff's appeal is an authentic record of his *total, taxable compensation, actually paid or paid and accrued.* The estimate of his average earnings, for full conformance with the provisions of the Plan $_{(1984)}$, should be based on these data, as claimed and shown. .

3.2 *Determination of the Accrued Monthly Benefit*

PBGC's determination is based solely on the false counterclaim that **offset by** means **reduced by or minus.** *This rationale for denial is completely fallacious and invalid*. It distorts and misconstrues common understanding of meaning and usage. Consequently, the denial is based on gross misrepresentations of the provisions of the Adoption Agreement $_{(1984)}$. The cited federal statutes adduced to support the sole, counterclaim are categorically and substantively invalid. They are irrelevant and immaterial.

(1) PBGC *infers*, from the phrase, **reduced or offset**, referred in *IRS Revenue Ruling 71-446, Section 2.07*, that **offset means reduce**. In English usage, *the conjunction, or, is used to introduce an alternative or equivalent expression but its usage does not require or make any pair of connected alternatives equal ;(e.g. up or down; black or white ..etc.). The inference that offset means reduced is obviously false ; offset does not mean reduced or any of its synonyms. Certainly, the correct inference is that if the benefit is reduced, it is reduced by a specified amount or it is offset by minus a specified amount; i.e. the phrase, offset by minus, means reduced by. Thus, the cited Ruling does not specify or stipulate that offset means reduce. It is a fact that reductions are offsets but not all offsets are reductions.*

(2) PBGC **misconstrues** the illustrative examples provided with the Merriam-Webster definition of offset. PBGC **falsely** infers that **offset means reduce. Actually, the definitions**

13

confirm that offset and reduce are not synonyms. The examples show usage of the verb, offset, involving opposite terms (e.g. credits vs. debits; ..etc.), which, because they are intrinsically and equivalently opposite, they, naturally, offset, balance, counterbalance and compensate one another. That is to say that states of equilibrium or balance between such cofactors is measured by the difference between them. The difference can be reduced or increased by applying the offset of their separate addition and subtraction.

(3) PBGC misrepresents the *IRS Code, Section 401(1) (4) (D)* implying that the Code, by definition, supports the **false inference** that offset means reduce and that the phrase, offset by, means reduced by or minus. *The Code stipulates that an 'Offset Plan' is an offset plan if and only if the benefit is the difference between the contribution attributable to the employer and a specified amount. But in the HHA Plan(1984), the offset, (2/3)xPIA, is actually applied or added to the factor, 0.45xAME. In the HHA Plan (1984), the NRB is the sum of specified, intrinsically positive factors and not the difference.* Thus the HHA Plan (1984) does not fit the definition. Accordingly, IRS Code, Section 401(1) (4) (D) does not apply; furthermore the benefit provided by the HHA Plan is not funded by Social Security.

(4) In Article V, 5.1 of the Adoption Agreement $_{(1984)}$ the definition of the Normal Retirement Benefit is: The Normal retirement benefit is equal to 0.45 times the average monthly earnings offset by (2/3) times the estimated social security benefit

*It is irrefutably true that the phrase, 0.45xAME offset by (2/3)xPIA, as used in the statement of benefit in the Adoption Agreement $_{(1984)}$, means exactly the same thing as the phrase, the offset ,(2/3)xPIA , added to 0.45xAME . Consequently, the phrase, offset by , as used , does , in fact , translate to mean " in addition to or plus ", not minus. This conclusion is fully consistent with the alternative definition (2) in Merriam-Webster for the verb, to offset.*

Logically, the phrase, offset by, as used, must translate to either plus or minus. But it cannot be minus because the phrase, offset by, as used, does not, by any valid definition, signify minus or any equivalent expression for minus (e.g. less or reduced by). Therefore, it is irrefutably true that the phrase, offset by, as used, must translate to plus. Therefore, the proper formulation for the Accrued Monthly Benefit, in conformance with the Adoption Agreement $_{(1984)}$, is:

$AMB_{(1984)} = [0.45 \times AME + (2/3) \times PIA] \times PAF_{(1984)}$.

Thereby, the plaintiff's claim has been proved that PBGC 's formulation of the monthly benefit is incorrect. The determination of the plaintiff's monthly benefit should be corrected as appealed.

This conclusion is directly supported by provisions of the Adoption Agreement $_{(1984)}$, Article I, p.1.4, 1.5 (d, e, f) which define the covered Compensation under the Plan to be the total, taxable compensation actually paid or paid and accrued. In Article V., 5.1 of the Adoption Agreement $_{(1984)}$, the Plan provides that the monthly benefit is based on the balanced sum of an average earnings component and a social Security Benefit component.

3.3 *Remarks*

3.1 Proof of Claim for Correction of Average Monthly Earnings

Article I, 1.4, 1.5(d, e, f) fully support the claim for correction of estimated monthly earnings. Valid and verifiable records of total, taxable, paid and paid or accrued compensation have been provided..

3.2 Proof of Claim for Correction to Formula for Monthly Benefit

The Proof of claim for Correction to Formula is fully consistent with the Adoption Agreement $_{(1984)}$, Article I, 1.1,1.4, 1.5(d, e, f)., and Article V., 5.1. and cited provisions under

14

ERISA 1974. It is fully consistent with definition (2) for the verb, to offset, shown in Merriam-Webster.

Proof of claim has been derived in three ways:

(1) first proof of claim is based on a careful and exhaustive analysis of the structure and content of the statement of benefit provided in the Adoption Agreemen$t_{(1984)}$ of the HHA Defined Benefit Plan $_{(1984)}$. This analysis is in terms of common understanding of meaning and usage. The conclusion is fully consistent with the provisions of the HHA Plan $_{(1984)}$.

(2) the 2nd proof by arithmetic and algebraic analysis

(3) the 3rd proof is based on simple but rigorous logic

A cogent example of the meaning and usage of the word offset is the process of weighing something on a set of scales. In the process, the weight of the unknown is offset, balanced compensated, counterweighed or counterbalanced by systematically adding and subtracting offsets of selected known weights in the other pan of the scales until the pan holding the unknown and the pan holding the known weights are in balance; i.e. the pans rest even with ground. The process of systematically adding and subtracting offsets of known weight systematically reduces **the difference** in weight between the unknown and the known weight of the sum of the retained offsets. When the scales become evenly balanced, the unknown weight is equal to the sum of the weights of the remaining, applied offsets.

In the HHA instance, the benefit provided solely by the paid and accrued earnings factor is so low measured against known business and government standards that, as provided by the amended Adoption Agreement $_{(1984)}$, it is offset by the addition of an accrued benefit factor. The offset does not equalize the balance betwween the known standard and the HHA situation but it does, a little bit, make up for or compensate for the **difference**. .

*__The proofs of claim mutually conclude that the phrase, offset by, must translate to mean plus.__* **This obvious conclusion is the complete, necessary and sufficient basis for the determination that the correct equation for the Accrued Monthy Benefit is: For**

NRB = 0.45xAME + (2/3)x PIA, the Accrued Monthly Benefit (AMB) is:

AMB = [0.45xAME + (2/3)xPIA]xPAF (Plan Accrual Factor ) .

It has thus been irrefutably confirmed, that the plaintiff's claims are fully and unequivocally supported by the authoritative and determinative provisions of the HHA Plan$_{(1984)}$. .

PBGC has insinuated in its denials that offsets made by the addition of an offset are illegal. It is remarked in the denial that such use would disadvantage the employer. But by provisions of ERISA 1974, the content of the plan is solely the prerogative of the employer or creator of the plan. It is a matter of the employer's free choice as to how he may wish to define the plan including use of offsets. The use of **Offsets**, in general, in pension plans is held to be lawful. **Furthermore, Congress has made no laws mandating methods by means of which benefits may be calculated.** The law does not prohibit " integration " in which "pension benefit levels are determined by combining pension funds with other income streams available to the retired employees ".

If an adjudication is made based on ruling that the case is an exception to the normal standard of practice or usage, the nature and condition of the exception for any given case must be explicitly defined. There may be rulings involving exception to interpretation of the word, offset. The principal problem with the word, offset, is ambiguous usage. Ambiguous usage occurs whenever the specific sign, orientation, direction, polarity or value of an offset is not specifically designated. In these instances of usage, the intended meaning may be implied and left

15

to inferences and inferences may be disputed. Implied meaning and intent are often but not always cause for dispute and resolution by adjudication. But such rulings, as they are made, must, certainly, be supported for any given case under the ruling by the defined, specific, special, persuasive, extenuating circumstances of the dispute. Therefore, for the ruling to apply to any other case, it must first be shown that the disputed specific, special, persuasive extenuating circumstances validly obtain. Therefore such rulings based on the adjudication of an exception or ambiguity may apply to any other case if an only if the given case involves exceptional or ambiguous usage. **However, it is wrongfully inappropriate to resort to ruling or precedent just because the term, offset, is used. First and foremost, one must determine whether or not the given usage is, in fact, ambiguous. If it is not, there is absolutely no need to apply the ruling. Not all Offsets are reductions.**

The Courts have consistently ruled that the use of offsets in definitions of payments in pension benefits are, in general, legal. It follows that offsets made both by the addition of positive and negative offsets are equally legal. These uses all involve methods of calculation i.e. additions and subtractions. In determinations of payments of compensation or benefit, an offset is made by the addition of a specified amount. The offset of specified amount may be assigned a positive or negative value. Consequently, if the offset is positive, the benefit is **raised or offset**. If the offset is negative, the benefit is **reduced or offset**. Thus the benefit may be **raised or offset** by the addition of a positive amount or offset; likewise the benefit may be **reduced or offset** by the addition of a negative amount or by subtraction of a positive amount.

**It has been irrefutably, directly and conclusively proved without any exception or contradiction that, in accord with the provisions of the Plan (1984) and the standard definitions and rules of English grammar, that the statement of benefit in the Adoption Agreement (1984) unambiguously translates to mean that the _Normal Retirement Benefit is raised or offset and equals 0.45x the Average Monthly Earnings plus (2/3)xPIA._**

Thus PBGC's determination that the benefit is _reduced or offset by_ (2/3)xPIA **contradicts and misconstrues comon sense and common understanding of meaning and usage in the English language. Thereby, PBGC totally misinterprets the provisions of the Plan's Adoption Agreement (1984)**. It is known and has been shown that the federal laws cited by PBGC to support its case, for denial, in fact, neither establish nor support the completely fallacious claim that offset means reduce. Indeed cited definitions in Merriam-Webster dictionary contradict and refute this false assertion. .

The rationale which PBGC has contrived to justify the denial of the plaintiff's appeal is rife with false inference, flagrant distortion, contradiction and misinterpretation of the provisions of the HHA Plan (1984), the law, and irrefutable proof of claim provided by the claimant. PBGC is legally charged to scrupulously and faithfully administer the HHA Defined Benefit Plan for the best interests of the beneficiaries. Indeed, if there were reasonable doubt or unresolvable ambiguity regarding the meaning of the phrase, offset by, as used, PBGC is legally required to resolve the matter favorable to the interests of the beneficiaries..The beneficiaries should not be penalised by detrimental interpretations of ambiguous provisions. But on the face of it and in accord with common understanding of meaning and usage, there is no ambiguity or doubt. Either way, The PBGC's decisions for denial are false and wrongful; the decisions should be reversed. Our appeal merits full approval

## COUNT I

### RECOVERY OF BENEFITS DUE

16. The Plaintiff repeats, realleges and incorporates herein Paragraphs 1 through 15., inclusive, together with the entire section titled " **FACTUAL ALLEGATIONS** " .

  1. Pursuant t0 29 U.S.C. Para.1132(a)(1)(B), Mr. McCree seeks to recover benefits due him under the plan.
  2. Mr. McCree seeks to enforce the Plan's provisions which determine his Average Monthly Earnings under the Plan.
  3. Mr. McCree seeks recovery of benefits unjustly denied due to him due to a misinterpretation of the statement of benefit .causing, thereby, the determination of monthly benefit to provide that the benefit is reduced or offset by a subtraction of a specified amount instead of being increased or offset by the addition of a specified amount as specified by the authoritative provisions of the Plan..
  4. Mr. McCree's Average Monthly Earnings, as determined by PBGC, were based on the amounts from his W-2 forms instead of on his total, taxable compensation actually paid or paid and accrued as specified by the Plan. .The Average Monthly Earnings are a key factor in the Plan's statetment for the determination of benefit. The unauthorized use of the W-2 data has caused the amount of Mr. McCree's monthly benefit to be less than it should otherwise be.

## COUNT II

### BREACH OF CONTRACT - PBGC

17. The Plaintiff repeats, realleges and incorporates herein Paragraphs 1 through 16., inclusive, together with the entire section titled " **FACTUAL ALLEGATIONS** "

  PBGC, as the administrator of the Plan, has failed to fulfill all the terms and conditions of the guarantee and is responsible to the plaintiff for all monthly underpayments from the date Mr. McCree began collecting under the Plan until the present.

## COUNT III

### UNJUST ENRICHMENT

18. The Plaintiff repeats, realleges and incorporates herein Paragraphs 1 through 17., inclusive, together with the entire section titled " **FACTUAL ALLEGATIONS** "

  By underpaying the plaintiff his rightful retirement benefit, PBGC has been unjustly enriched.

## PRAYERS FOR RELIEF

WHEREFORE, Mr. McCree prays that this Court enter judgement as follows:
Recovery of all benefits due to Mr. McCree pursuant to the Plan which has he has not yet received from the PBGC. Recovery of attorney's fees and costs that Mr. McCree has incurred as a result of having to institute this civil action.

## JUDICIAL HEARING

Plaintiff respectfully requests a judicial hearing.

Respectfully submitted,
Paul W. McCree, Jr.
173 Goodman's Hill Road
P.O. Box 77
Sudbury, MA 01776