# EXHIBITS

Original Plan Document

Succeeding Plan Document

# Original Plan Document

### ADOPTION AGREEMENT TO

### THE GUARDIAN (ERISA) DEFINED BENEFIT PROTOTYPE PENSION PLAN AND TRUST AGREEMENT

### FOR AN OFFSET PLAN

**NAME OF EMPLOYER** H. H. Aerospace Design Co., Inc.

**ADDRESS** 45 Lincoln Street
(Number and Street)
Lexington                                MA      02173
(City)                                          (State and Zip Code)

**NAME OF PLAN** H. H. Aerospace Design Co., Inc. Defined Benefit Plan

**NAMES OF TRUSTEES** Alfred C.W. Daniels, Robert G. Stern,

Richard L. Baltimore, Jr.

**ADDRESS OF TRUSTEES** 45 Lincoln Street
(Number and Street)
Lexington                                MA      02173
(City)                                          (State and Zip Code)

### INTRODUCTION

This Adoption Agreement and the provisions of The Guardian (ERISA) Defined Benefit Prototype Pension Plan and Trust Agreement of which this Agreement is a part, are hereby adopted by the Employer for the benefit of his Employees and their Beneficiaries.

Complete (A), (B), or (C) below:

**(A)**   If this Adoption Agreement is part of the initial adoption of this Plan, check here . . . . [X]

**(B)**   If this Adoption Agreement is an amendment to this GUARDIAN (ERISA) DEFINED BENEFIT PROTOTYPE PENSION PLAN, previously adopted, as provided in Section 9.02 (and following) check here . . . [ ]   and insert date and serial # of latest approval letter. Date_____ Serial #_____

**(C)**   If this Adoption Agreement is a restatement of a previously adopted Plan other than this GUARDIAN (ERISA) DEFINED BENEFIT PROTOTYPE PENSION PLAN, as provided in Section 9.06, check here . . . [ ]   and insert date and serial # of latest approval letter. Date_____ Serial #_____.

In case of (A) or (C) complete all items.

In case of (B) complete only those provisions which are to be amended. Such provisions are numbers _____ (indicate numbers of amended Items and/or Sections).

## DEFINITIONS AND ELECTIONS

<u>Instructions</u>

Check (A) or (B).

1.  EMPLOYEE shall mean

    [X]  (A)  Each Employee

If (B) has been checked, check one or more applicable boxes.

    [ ]  (B)  Each Employee except those who are

             [ ]  salaried

             [ ]  hourly

             [ ]  covered by a collective bargaining agreement
                  under which retirement benefits were a sub-
                  ject of good faith bargaining.

Insert date in all cases. If (A) of INTRODUCTION is checked, the date must be the first day of any month. If (B) or (C) of INTRODUCTION is checked, insert original effective date of Plan.

2.  (A)  EFFECTIVE DATE OF THE PLAN shall be

         <u>April 1, 1979</u>

Insert date if (B) of INTRODUCTION is checked. The date must be the first day of any month.

    (B)  EFFECTIVE DATE OF THIS AMENDMENT shall be

         _____

Insert date if (C) of INTRODUCTION is checked. The date must be the first day of the Plan Year.

    (C)  EFFECTIVE DATE OF THE RESTATEMENT shall be

         _____

Check applicable boxes.

3.  REQUIREMENTS FOR ELIGIBILITY FOR PARTICIPATION

    Any Employee is eligible on the earlier of the Effective Date or the first Anniversary Date nearest his/her satisfaction of the following requirements:

    [ ]  (A)  No other requirements

Insert age no higher than 25.

    [X]  (B)  He/she is at least age ___25___ .

Insert number of years not in excess of three; must be no more than one year if Item 13(A) is not checked.

    [ ]  (C)  He/she has completed_____ year(s) of Service as
              defined in Section 1.16(a).

Insert age no lower than the higher of 5 years before the maximum retirement age selected in Item 5. No maximum age for eligibility may be inserted if no maximum Normal Retirement Age has been inserted in the second paragraph of Item 5.

    [ ]  (D)  He/she is not more than age _____ on the date of
              his/her employment.

A Participant who satisfies the requirements for participation shall become a Participant no later than six (6) months after he/she has satisfied such requirements. It is intended that an Employee shall become a Participant on the Effective Date or Anniversary Date nearest his/her satisfaction of the requirements for participation even if such date precedes his/her satisfaction of the requirements for participation.

$I A$



Only one method may be selected. Such method shall be applied to all Employees covered under the Plan. Check (A) or (B) or (C) or (D).

Hours of Service shall be determined

[X] (A)   On the basis of actual hours for which an Employee is paid or entitled to payment.

[ ] (B)   On the basis of days worked, an Employee shall be credited with ten (10) Hours of Service if under Section 1.16 of the Plan such Employee would be credited with at least one (1) Hour of Service during the day.

[ ] (C)   On the basis of weeks worked, an Employee shall be credited with forty-five (45) Hours of Service if under Section 1.16 of the Plan such Employee would be credited with at least one (1) Hour of Service during the week.

[ ] (D)   On the basis of months worked, an Employee shall be credited with one hundred ninety (190) Hours of Service if under Section 1.16 of the Plan such Employee would be credited with at least one (1) Hour of Service during the month.

4.   COMPENSATION FOR ANY PLAN YEAR OR LIMITATION YEAR shall mean

All of each Participant's Compensation

Check either (A) or (B)

[X] (A)   actually paid

[ ] (B)   accrued

within such year that is subject to tax under Section 3101(a) of the Internal Revenue Code without the dollar limitation of Section 3121(a).

5.   NORMAL RETIREMENT DATE shall be the day and month of the Participant's 65th birthday

Insert N/A if not applicable, otherwise insert number of years between 5 and 10.
Insert N/A if not applicable, otherwise insert an age between 65 and 75.

[X]   subject to a minimum of __10__ Years of Participation but not later than the Anniversary Date nearest the Participant's age __N/A__.

Check applicable box.

6.   DISABILITY PROVISION

[ ] (A)   The Plan will include the Standard Disability Provision.

[ ] (B)   The Plan will include the Deferred Payment Disability Provision.

[X] (C)   The Plan will include no Disability Provisions and benefits on disability will be the same as the benefits on termination of employment (Item 13).

7. **RETIREMENT BENEFITS**

I. The amount of Monthly Retirement Benefit on the Normal Form shall be

Insert a percentage up to 100%.

    (A) __45__% of the Participant's Average Monthly Compensation less

This percentage must not exceed the applicable percentage shown in the Maximum Offset Table following for the Social Security Benefit scale selected.

    (B) 66__.7__% of the Monthly Primary Social Security Benefit in accordance with the Social Security Act selected below.

Check box to indicate Social Security Benefit scale. If box (i) is checked, fill in year of Social Security Act to be used. Must be one of 1967 or 1969.

    ☐ (i) _____ Social Security Act.

    ☒ (ii) Social Security Act in effect at the time of the Participant's retirement (current).

Insert N/A or at least 10 but not more than 35. Reduction for Years of Service is not mandatory in an integrated offset plan.

If a Participant has less than _____ Years of Service, as defined in Section 1.16(a) to his/her Normal Retirement Date (minimum Service for full benefit) the Benefit shall be reduced by multiplying it by a fraction, not to exceed 1, the numerator of which is the Participant's Years of Service and the denominator the minimum years stated above.

### MAXIMUM OFFSET PERCENTAGE TABLE

| Disability Provision selected | 1967 Scale | | 1969 Scale | | 1972 and later Scales | |
|---|---|---|---|---|---|---|
| | 10 C&L Pension | Life Only Pension | 10 C&L Pension | Life Only Pension | 10 C&L Pension | Life Only Pension |
| Box 6(A) or 6(B) has been checked. | 75.60% | 84.00% | 66.24% | 73.60% | 60.00% | 66.67% |
| Box 6(C) has been checked. | 84.00% | 93.33% | 73.60% | 81.77% | 66.67% | 74.07% |

II. The Normal Retirement Benefit for a Participant shall be based on the average of his/her Compensation for the highest five (5) consecutive years within a period of ten years preceding: (Check one of the following)

    ☒ (i) his/her Normal Retirement Date.

Must be checked if a Fully Insured Plan is chosen in Item 10.

    ☐ (ii) the fifth anniversary prior to his/her Normal Retirement Date.

Under either choice, there will be no insurance increases in the last five years before retirment.

III. Unless the Participant has elected otherwise under Section 1.23 of the Plan, his/her survivor's annuity shall be __50__ % of the amount of the annuity payable during the joint lives of the Participant and his/her spouse.

Insert at least 50% but no more than 100%.

IA

8.  **MINIMUM AND MAXIMUM**

No Monthly Retirement Benefit on the Normal Form, after appropriate reduction as required under the Plan, shall be

*Insert at least $20 but no more than $100.*

Less than $ __ 20.00 _____ .

*Insert an amount if a maximum Benefit other than that mandated by Law is to be provided.*

Greater than $ _____ .

The maximum Monthly Retirement Benefit shall be subject to the special maximum set forth in Section 4.02.

9.  **NORMAL FORM OF RETIREMENT BENEFIT** shall mean

The Retirement Benefit will be payable as follows:

*Check if 10 C&L Pension applies.*

[X] For the life of the Retired Participant and, if 120 monthly installments have not been paid prior to his/her death, continuing thereafter to his/her Beneficiary until the total number of installments paid to him/her and his/her Beneficiary equals 120.

*Check if Life Only Pension applies.*

[ ] Solely for the life of the Retired Participant. No further payments shall be made after his/her death.

The above election is subject to the provisions of Sections 3.04 and 5.06.

*Check applicable box.*

10. **METHOD OF FUNDING** shall be

[ ] Fully Insured Plan.

[X] Combination Plan with Whole Life type insurance.

*Insert number of years not in excess of 5.*

[ ] Combination Plan with Term insurance during Participant's first _____ Years of Service, then Whole Life type insurance.

*Omit if Fully Insured Plan is selected under Item 10.*

11. **PRE-RETIREMENT DEATH BENEFIT — COMBINATION PLAN**

*Check (A) or (B)*

In the event a Participant is entitled on initial entry to less than $2,000 of insurance, until the Participant is entitled to $2,000 of insurance no Policy shall be issued and the Death Benefit shall be equal to the amount determined under Item (B) (ii). In the event that a Participant is entitled to an increase in insurance of less than $1,000, no Policy shall be issued until the Participant is entitled to at least $1,000 of additional insurance.

*Insert factor between 33-1/3 and 100.*

[ ] (A) The Death Benefit under the Policy shall be _____ times the anticipated Monthly Retirement Benefit, and shall be the total Death Benefit under the Plan.

Insert factor between 33-1/3 and 100.

☒ (B) The Death Benefit shall be the sum of (i) and (ii) below.

    (i) __100__ times the anticipated Monthly Retirement Benefit to be payable under the Policy, plus

    (ii) the Participant's Actuarially Adjusted Allocable Portion of the Auxiliary Investment Fund.

In no event shall the total Death Benefit under (i) and (ii) exceed the greater of 100 times the anticipated Monthly Retirement Benefit or the cash value of a Retirement Income Contract had the Plan been funded on that basis.

☐ (C) If for any individual the premiums for life insurance (less dividends) are less than the level annual deposits calculated for the initial benefit as well as for increment and decrements, then the total death benefit will equal the sum of (i) and (ii) below:

Insert factor between 33-1/3 and 100.

    (i) _____ times the anticipated monthly Retirement Benefit to be payable under the Policy, plus

    (ii) The Participant's Actuarially Adjusted Allocable Portion of the Auxiliary Investment Fund.

If the premium for life insurance (less dividends) is greater, then the death benefit shall not exceed the greater of 100 times the anticipated monthly Retirement Benefit, or the cash value of a Retirement Income Contract had the Plan been funded on that basis.

Check applicable box.

12. CONTRIBUTIONS BY PARTICIPANTS

☒ None required.

Insert percentage if applicable (not over 6%).
Insert percentage not over 50%.

☐ The annual amount of each Participant's contribution is to be _____ % of his/her annual Compensation, but not to exceed _____ % of the total contribution required for his/her Benefit.

Check appropriate box. Box (A), (B), (C), (D), (E), or (F) must be checked.

13. TERMINATION OF EMPLOYMENT AND VESTING

☒ (A) Vesting in the Accrued Benefit shall be 100% at all times.

☐ (B) Vesting in the Accrued Benefit shall be 100% after 10 Years of Service, as defined in Section 1.16(b).

JA

Insert at least 0% but no more than 100%.

☐ (C)  Vesting in the Accrued Benefit shall be_____%
for each Year of Service, as defined in Section 1.16(b
up to a maximum of 100%, with full vesting in the
Accrued Benefit no later than upon completion of
10 years of such Service.

☐ (D)  Vesting in the Accrued Benefit shall be 25% after
5 Years of Service, as defined in Section 1.16(b), wit
an additional 5% vesting for each additional Year of
such Service through the tenth year, and an
additional 10% vesting for each Year of such Service
after the tenth year, up to a maximum vesting in the
Accrued Benefit of 100%.

☐ (E)  Vesting in the Accrued Benefit from Employer
contributions shall be the greater of (i) or (ii)
below.

(i)  50% when, after the completion of 5 Years of
Service, as defined in Section 1.16(b), the
sum of a Participant's age and Service equals
45 with such additional amount determined
under the following table.

| Years of Service | Sum of Age and Service | Nonforfeitable Percentage |
|---|---|---|
| 5 | 45 | 50% |
| 6 | 47 | 60% |
| 7 | 49 | 70% |
| 8 | 51 | 80% |
| 9 | 53 | 90% |
| 10 | 55 | 100% |

(ii)  50% after the completion of 10 Years of
Service, as defined in Section 1.16(b), with
an additional 10% vesting for each Year of
such Service thereafter, up to a maximum
vesting in the Accrued Benefit of 100%.

☐ (F)  Vesting in the Accrued Benefit shall be 40% after
4 Years of Service, as defined in Section 1.16(b),
with an additional 5% vesting for each additional
Year of Service through the sixth year, and an
additional 10% vesting for each additional Year of
such Service after the sixth year up to a maximum
vesting in the Accrued Benefit of 100%.

Check if applicable.

☐  If any of the above paragraphs is to be used to satisfy
the 4-40 vesting test (Item 13(F)), all the Participant's
Years of Service shall count.

JA

Check (A) or (B).

14.  **PLAN YEAR** shall mean

[X]  (A)  the 12-consecutive month period which coincides with the Limitation Year.

[ ]  (B)  the 12-consecutive month period commencing on _____ and each anniversary thereof.

15.  **LIMITATION ON BENEFITS**

Complete this section only if you maintain, in addition to this Plan one or more plans which are either qualified defined benefit plans or qualified defined contribution plans. If you maintain such a plan or plans, failure to complete this section may adversely affect the qualification of the plans you maintain.

The annual benefit payable under this Plan to a Participant at any time shall be limited as follows:

Insert Provisions

$\mathcal{IA}$

This Adoption Agreement shall take effect when executed by the Employer and the Trustees but not earlier than the Effective Date of the Plan or Amendment of the Plan.

IN WITNESS WHEREOF, the Employer and the Trustees, respectively, have caused these presents to be signed by their duly authorized officers and have caused their respective corporate seals where required to be hereunto affixed, the day and year written below.

BY: _H. H. AERO SPACE Design Co._
                                           Employer

BY: _Alfred C W Daniels, Vice Pres. NE_
                                           Title

_Alfred C W Daniels_
                                           Trustee

ATTEST:

_____
Seal                          Title

_____
                                           Trustee

_____
                                           Trustee

I A

# The Guardian (ERISA) Defined Benefit Prototype Pension Plan and Trust Agreement

ORIGINAL PLAN

PRE TEFRA

TR

## NOTICE

Guardian Life has designed this (ERISA) Defined Benefit Prototype Pension Plan and Trust Agreement for the purpose of assisting employers and their legal counsel in the installation or restatement of a retirement plan designed to comply with the requirements of Sections 401 and 501 of the Internal Revenue Code of 1954 as amended and The Employee Retirement Income Security Act of 1974. This Plan and Trust Agreement has been approved by the Internal Revenue Service as to form under Serial Number C7802980 in a letter dated March 20, 1978.

An employer may adopt The Guardian (ERISA) Defined Benefit Prototype Pension Plan and Trust Agreement by executing the applicable Adoption Agreement attached. A copy of the executed Adoption Agreement must be filed by the employer with the Internal Revenue Service in the district in which the employer has his principal place of business. I.R.S. Form 5307 should be used for this filing.

Each employer must act upon the advice of his own legal counsel in making application for, and adopting this Plan. The factual background of each employer and his employees will determine whether the Plan as adopted complies with Internal Revenue Service Regulations for qualification and favorable tax treatment.

Each employer must realize that neither The Guardian Life Insurance Company of America nor its representatives can give legal advice as to the Internal Revenue Code or this form and that the establishment and qualification of a retirement plan and related tax consequences are the sole responsibility of the employer aided by his own legal advisor.

ARTICLE I

DEFINITIONS

The following words and terms, as used in this Plan, shall have the meanings set forth below:

1.01    "Plan" shall mean The Guardian (ERISA) Defined Benefit Prototype Pension Plan and Trust Agreement as set forth herein, and as named in the Adoption Agreement.

1.02    "Adoption Agreement" shall mean the Adoption Agreement executed by the Employer and the Trustees named therein, attached hereto, and made a part hereof as more fully set forth herein.

1.03    "Employer" shall mean the Employer named in the Adoption Agreement. An Employer's adoption of this Plan shall not imply or include its adoption by affiliates, subsidiaries, or any other employer, and each such employer who wishes to do so shall adopt this Plan and establish a separate trust independent of other employers.

1.04    "Employee" shall be as defined and selected by the Employer in the Adoption Agreement (Item 1). "Employee" shall not include an Employee who is a non-resident alien receiving no earned income from sources within the United States (within the meaning of Section 861(a)(3) of the Internal Revenue Code).

1.05    "Participant" in a non-contributory plan, shall mean an Employee who has satisfied all the eligibility requirements of Article II.

"Participant" in a contributory plan, in accordance with the Adoption Agreement (Item 12), shall mean an Employee who has satisfied all the eligibility requirements of Article II and who has not declined to make the contributions required. An Employee who declines to contribute must sign a waiver notice stating that he has been advised by his Employer that a benefit is made available to him and he so knowing waives his right to such benefit. Should the Employee elect at a later date to rescind his waiver and commence contributing to the Plan, he may do so provided he meets the eligibility requirements in effect on the date of such rescission and further provided that entry shall be as of the Anniversary Date next following the rescission. Benefits for an Employee who rescinds a waiver shall be those otherwise set forth in this Plan multiplied by a fraction, the numerator of which is the number of full years of participation until Normal Retirement Date and the denominator the number of full years of participation until Normal Retirement Date which the Participant could have had if he had not waived.

1.06    "Retired Participant" shall mean a former Participant who retired under the retirement provisions of this Plan.

1.07    "Trustees" shall mean the persons named as Trustees in the Adoption Agreement and their duly appointed successors.

1.08    "Insurer" shall mean The Guardian Life Insurance Company of America, 201 Park Avenue South, New York, New York 10003 or any of its wholly owned subsidiary insurance companies.

1.09    "Plan Year" shall mean the 12-consecutive month period designated by the Employer in the Adoption Agreement (Item 14).

1.10    "Effective Date" shall be as stated in the Adoption Agreement (Item 2).

1.11    "Anniversary Date" shall mean the Effective Date and the first day of each Plan Year.

1.12    "Age" shall mean an Employee's age at his nearest birthday.

1.13    "Policy" shall mean a life insurance or annuity contract issued by the Insurer.

1.14    "Beneficiary" shall mean any person, estate, trust or organization entitled to receive a payment under the Plan on the death of a Participant.

1.15    "Normal Retirement Date" shall mean the date specified in the Adoption Agreement (Item 5).

1.16    (a)  "Service" for the purpose of determining eligibility:

        ( i)  "Year of Service" shall mean the 12-consecutive month period during which the Employee completes at least 1000 Hours of Service.

        ( ii)  "Hour of Service" shall mean –

            (1)  Each hour for which an Employee is paid, or entitled to payment, for the performance of duties for the Employer.  These hours shall be credited to the Employee for the computation period or periods in which the duties are performed; and

            (2)  Each hour for which an Employee is paid, or entitled to payment by the Employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of

- 2 -

absence.  No more than 501 Hours of Service shall be credited under this Subsection for any single continuous period (whether or not such period occurs in a single computation period).  Hours under this Subsection shall be calculated and credited pursuant to Section 2530.200b-2 of the Department of Labor Regulations which are incorporated herein by this reference; and

(3)  Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer.  The same Hours of Service shall not be credited both under Subsection (1) or Subsection (2), as the case may be, and under this Subsection (3).  These hours shall be credited to the Employee for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement or payment is made.

(4)  Hours of Service shall be determined on the basis of the method selected in the Adoption Agreement (Item 3).

(iii)  Where the Employer maintains the plan of a predecessor employer, service for such predecessor employer shall be treated as service for the Employer.

( iv)  "Break in Service" shall mean a 12-consecutive month period during which the Participant does not complete more than 500 Hours of Service with the Employer.

(b)  "Years of Service" for the purposes of determining a Participant's nonforfeitable vesting in his Accrued Benefit shall include all Years of Service included in Subsection (a), except

( i)  Service before age 22 (unless Item 13(E) or (13F) of the Adoption Agreement is checked, in which event Service before age 22 must be included);

( ii)  If Employee contributions are required in Item 12 of the Adoption Agreement, Years of Service during a period for which the Employee declines to make such contributions unless Item 13(F) of the Adoption Agreement is checked;

(iii)  Years of Service with the Employer during any period for which the Employer did not maintain the Plan unless Item 13(F) of the Adoption Agreement is checked;

- 3 -

( iv) Years of Service prior to January 1, 1971, unless the Employee has completed at least three Years of Service as otherwise defined in this Subsection (b) after December 31, 1970.  This Subsection does not apply if Item 13(F) of the Adoption Agreement is checked.

(c)  Notwithstanding the foregoing, if Item 13(A) of the Adoption Agreement is checked, Service prior to termination of employment shall not be credited for any purpose under this Plan if termination of employment occurred prior to the satisfaction of the eligibility requirements selected in Item 3 of the Adoption Agreement.

(d)  For purposes of determining Years of Service and Breaks in Service for eligibility, the 12-month period shall commence on the date the Employee first performs an Hour of Service for the Employer and each anniversary thereof.

For purposes of determining Years of Service and Breaks in Service for computing a Participant's nonforfeitable right to his Accrued Benefit derived from Employer contributions, the initial 12-month period shall commence on the date the Employee first performs an Hour of Service for the Employer and each anniversary thereof.

(e)  Service in all cases shall include periods during which the Employee is on a leave of absence with the approval of or at the direction of the Employer by reason of sickness, disability, maternity, death in the family or for educational purposes or other reasons agreed to by the Employer.  Leave of absence shall also include periods of absence in connection with military service during which the Employee's reemployment rights are legally protected.  Except for absence by reason of military service, leaves of absence shall be for a maximum period of two years.  Leaves of absence shall be granted on a uniform and nondiscriminatory basis.  An Employee shall not become a Participant during such leave.

(f)  The following Years of Service will be counted for participation and vesting.

( i)  Years of Service with a predecessor employer who maintained the Plan.

( ii)  Years of Service with other members of a controlled group.

(iii)  Years of Service with a predecessor plan.

(g)  "Year of Participation" shall mean a Plan Year during which a Participant completes 1,000 Hours of Service.

However, service as a sole proprietor or partnership shall not be taken into account for any purpose under this Plan.

- 4 -

1.17    "Compensation" shall be as defined by the Employer in the Adoption Agreement (Item 4). "Average Monthly Compensation" shall mean one-twelfth of such Compensation.

For a newly established Employer, where the Compensation actually paid to Participants as of the Effective Date of the Plan would be for a period of less than twelve (12) months, Compensation shall be averaged over such shorter period of months.

Compensation for each new Participant shall be averaged over the twelve (12) months preceding his date of participation or his period of employment if less than twelve (12) months.

Compensation during a period of leave of absence shall be the Compensation paid during the Plan Year immediately preceding the commencement of such leave of absence.

1.18    "Method of Funding" shall be as selected in the Adoption Agreement (Item 10).

1.19    "Fully Insured Plan" shall mean a Plan under which full benefits are provided by Policies acquired on the life of each Participant.

1.20    "Combination Plan" shall mean a Plan under which the Employer shall fund benefits by the purchase of Whole Life type Policies on the lives of Participants and by contributions to be invested as part of an Auxiliary Investment Fund.

1.21    (a)  "Accrued Benefit" of a Participant in a Fully Insured Plan shall not be less than the cash surrender value his insurance contracts would have on such applicable date provided that the Plan is funded exclusively by the purchase of individual insurance contracts; such contracts provide for level annual premium payments to be paid extending not later than the retirement age for each individual participating in the Plan, and commencing with the date the individual became a Participant in the Plan (or, in the case of an increase in benefits, commencing at the time such increase becomes effective); benefits provided by the Plan are equal to the benefits provided under each contract at Normal Retirement Age under the Plan and are guaranteed by an insurance carrier (licensed under the laws of a State to do business with the Plan) to the extent premiums have been paid; and premiums payable for the Plan Year, and all prior Plan Years, under such contracts have been paid before lapse or there is reinstatement of the policy.

    (b)  "Accrued Benefit" of a Participant in a Combination Plan shall be equal to the annual benefit commencing on the Normal Retirement Date payable in the Normal Form, determined by multiplying the Normal Retirement Benefit by a fraction. Such fraction shall be determined by using as a numerator the Participant's total number of full Years of Participation

- 5 -

calculated as of the beginning of the Plan Year in which he/
she terminates employment, and as a denominator the Partici-
pant's total number of Years of Participation assuming he/she
remained in the employment of the Employer until his/her
Normal Retirement Date.  The denominator shall in no event
be less than the numerator in the reduction fraction.

For purposes of this paragraph, Compensation shall be computed
on the basis of Compensation taken into account under the Plan
(but if the Plan defines Compensation to cover a period of
more than 10 years, only Compensation for the 10 years of Ser-
vice immediately preceding the termination of benefits shall
be taken into account).

(c)  "Accrued Benefit" attributable to an Employee's mandatory
     contributions shall be determined by

     (  i)  accumulating the contributions at 5% interest to the
            Participant's Normal Retirement Date.

     ( ii)  This account shall then be multiplied by the appro-
            priate factor in the table below for the Participant's
            age at his or her Normal Retirement Date.

| Age at Normal Retirement Date | Factor |
|---|---|
| 44 and under | 6% |
| 45 through 53 | 7% |
| 54 through 59 | 8% |
| 60 through 63 | 9% |
| 64 through 66 | 10% |
| 67 through 68 | 11% |
| 69 through 71 | 12% |
| 72 through 73 | 13% |
| 74 through 75 | 14% |
| 76 and above | 15% |

            If the Normal Form elected in Item 9 of the Adoption
            Agreement is Life Only, the monthly Accrued Benefit
            attributable to an Employee's mandatory contributions
            shall be one-twelfth (1/12th) of the amount determined
            above.

     (iii)  If the Normal Form elected in Item 9 of the Adoption
            Agreement is 10 C&L, the monthly Accrued Benefit
            attributable to an Employee's mandatory contributions
            shall be that computed in (c)(ii) multiplied by .91.

     ( iv)  If the monthly Accrued Benefit attributable to an
            Employee's mandatory contributions is not determinable
            by the steps above, it shall be computed in accordance
            with factors and assumptions prescribed by the Secretary
            of the Treasury or his delegate.

(d)  For Plan Years beginning before Section 411 of the Internal
     Revenue Code is applicable hereto the Participant's Accrued

Benefit shall be the greater of that provided by the Plan,
or one-half (1/2) of the benefit which would have accrued
had the provisions of this Section 1.21 (b) been in effect.

1.22    "Actuarially Adjusted Allocable Portion of the Auxiliary Investment
        Fund" for a Participant shall be the accumulated value of the level
        annual deposits based on the same funding methods and assumptions
        used in the valuation by the enrolled actuary on the Anniversary
        Date immediately preceding the date of the Participant's death and
        assuming that such assumptions were met.

1.23    "Joint and Survivor Annuity" shall mean an annuity for the life
        of the Participant with a survivor annuity for the life of his/
        her spouse which is not less than one-half, or greater than the
        amount of the annuity payable during the joint lives of the
        Participant and his/her spouse and which is the actuarial equi-
        valent of a single life annuity for the life of the Participant.
        The percentage of the survivor annuity shall be as elected by
        the Participant. However, if no election has been made the per-
        centage shall be as specified in the Adoption Agreement.

1.24    "Definite Benefit" — any benefit which, under the terms of this
        Plan, is the actuarial equivalent of a stated benefit shall
        have the same present value on the date payment commences as
        such stated benefit. For purposes of establishing actuarial
        equivalence, present value shall be determined by discounting
        all future payments using the same interest and mortality
        assumptions specified in the latest actuarial report.

1.25    "Level Annual Deposit" is the contribution to the Investment
        Fund calculated for the initial benefit based on aggregate
        level funding. This deposit is adjusted for any increases or
        decreases in benefit.

## ARTICLE II

ELIGIBILITY AND MEMBERSHIP

2.01    Each Employee shall be eligible to become a Participant pursuant
        to the provisions selected by the Employer in the Adoption Agree-
        ment (Item 3).

2.02    Each Employee shall be notified by the Trustees of the existence
        of the Plan and of its principal provisions. In addition, each
        Employee shall be advised of his/her right to participate no later
        than twenty (20) days prior to the Anniversary Date on which he/
        she is first eligible to participate.

2.03    To become a Participant with insurance or an annuity Policy, an
        eligible Employee must execute the required application form or
        forms. He/she must make available to the Insurer such information
        as it may require in connection with the issuance of any Policy on

his/her life.  Such Participant must perform all acts required of him/her within ninety (90) days of the date on which he/she is notified of his/her eligibility.

If the Method of Funding is a Combination Plan and the Employee fails to perform all required acts, Employer contributions for his/her benefit will be deposited in the Auxiliary Investment Fund and no Death Benefit will be provided for him/her.  An insurance or annuity Policy may be provided for such Participant on a later Anniversary Date when he/she does comply with the conditions in the first paragraph of this Section 2.03.

If the Method of Funding is a Fully Insured Plan and the Employee fails to perform all required acts for a Policy, no retirement benefit shall be purchased for him/her.  He/she may subsequently become a Participant on such later Anniversary Date when he/she does comply with the conditions in the first paragraph of this Section 2.03.  However, the benefits for such Employee shall be those otherwise set forth in this Plan multiplied by a fraction, the numerator of which is the number of full Years of Participation until Normal Retirement Date and the denominator the number of full Years of Participation until Normal Retirement Date which the Participant could have had if he/she had become a Participant when first eligible.

2.04    A former Participant shall become a Participant immediately upon his/her return to the employ of the Employer if such former Participant has a nonforfeitable right to all or a portion of his/her Accrued Benefit derived from Employer contributions at the time of his/her termination.

The Employee's Retirement Benefit shall be reduced by the amount of income which would have been provided by a nonforfeitable interest received by the Employee when he/she terminated his/her employment on the assumption that this vested value has remained in the Investment Fund until his/her Normal Retirement Date.

A former Participant who did not have a nonforfeitable right to any portion of his/her Accrued Benefit derived from Employer contributions at the time of his/her termination shall be considered a new Employee for eligibility purposes if the number of consecutive one year Breaks in Service equal or exceed the aggregate number of Years of Service before such Break.  If such former Participant's Years of Service before his/her termination exceeds the number of consecutive one year Breaks in Service after such termination, such Participant shall participate immediately.

In the event a Participant becomes ineligible to participate because he/she is no longer a member of an eligible class of Employees, but has not incurred a Break in Service, such Employee shall participate immediately upon his/her return to an eligible class of Employees.  If such Participant incurs a Break in Service, his/her eligibility to participate shall be determined pursuant to the two preceding paragraphs.

In the event an Employee who is not a member of the eligible class of Employees becomes a member of the eligible class, such Employee shall participate immediately if such Employee has satisfied the minimum age and service requirements and would have previously become a Participant·had he/she been in the eligible class.

## ARTICLE III

POLICIES

3.01    Benefits under the Plan shall be provided by a Retirement Income type Policy, a Retirement Annuity type Policy, or a Whole Life type Policy with an Auxiliary Investment Fund. Such Whole Life type Policy shall contain an income purchase option which will, upon exercise of such option and payment to the Insurer of the additional amount not in excess of the amount specified therein, provide the required amount of Retirement Benefit. Such Policies shall be applied for by the Trustees on a nondiscriminatory basis upon applications signed by any one Trustee, and shall provide for level annual premiums. Each Policy shall be a contract between the Trustees and the Insurer.

3.02    Each Policy shall provide for the following:

(a)    Income shall be payable on or after the Participant's retirement date as directed by the Trustees prior to commencement of payment.

(b)    The right to name and change the designation of Beneficiaries and to select the settlement option shall be exercised by the Trustees, subject, however, to the direction of the Participant and the provisions of Section 5.06. The Participant may be required to execute appropriate documents directing the Trustees as to such provisions.

(c)    All rights, options and benefits provided by the Policy, or permitted by the Insurer shall be reserved to the Trustees and may be exercised upon the signature of any one Trustee. The signature of the Participant shall not be necessary for the exercise of any right except in accordance with the provisions of the Plan.

(d)    The Policy, when owned by other than the Trustees hereunder, shall not be sold, assigned, discounted or pledged as collateral for a loan or as security for the performance of an obligation or for any other purpose to any person other than the Insurer. In a Fully Insured Plan no rights under the Policy can be subject to a security interest at any time during the Plan Year and no policy loans can be outstanding at any time during the Plan Year.

3.03    Any dividend payable while the Policy is premium-paying shall be used to reduce subsequent year premiums. Any dividend payable when there is no further premium to be paid by the Trustees shall be used to increase the proceeds of the Policy.

- 9 -

In the event an Employee who is not a member of the eligible class
of Employees becomes a member of the eligible class, such Employee
shall participate immediately if such Employee has satisfied the
minimum age and service requirements and would have previously
become a Participant had he/she been in the eligible class.

## ARTICLE III

POLICIES

3.01    Benefits under the Plan shall be provided by a Retirement Income
        type Policy, a Retirement Annuity type Policy, or a Whole Life
        type Policy with an Auxiliary Investment Fund. Such Whole Life
        type Policy shall contain an income purchase option which will,
        upon exercise of such option and payment to the Insurer of the
        additional amount not in excess of the amount specified therein,
        provide the required amount of Retirement Benefit. Such Policies
        shall be applied for by the Trustees on a nondiscriminatory basis
        upon applications signed by any one Trustee, and shall provide
        for level annual premiums. Each Policy shall be a contract
        between the Trustees and the Insurer.

3.02    Each Policy shall provide for the following:

        (a)  Income shall be payable on or after the Participant's retire-
             ment date as directed by the Trustees prior to commencement
             of payment.

        (b)  The right to name and change the designation of Beneficiaries
             and to select the settlement option shall be exercised by
             the Trustees, subject, however, to the direction of the Par-
             ticipant and the provisions of Section 5.06. The Participant
             may be required to execute appropriate documents directing
             the Trustees as to such provisions.

        (c)  All rights, options and benefits provided by the Policy, or
             permitted by the Insurer shall be reserved to the Trustees
             and may be exercised upon the signature of any one Trustee.
             The signature of the Participant shall not be necessary for
             the exercise of any right except in accordance with the
             provisions of the Plan.

        (d)  The Policy, when owned by other than the Trustees hereunder,
             shall not be sold, assigned, discounted or pledged as
             collateral for a loan or as security for the performance
             of an obligation or for any other purpose to any person
             other than the Insurer. In a Fully Insured Plan no rights
             under the Policy can be subject to a security interest at
             any time during the Plan Year and no policy loans can be
             outstanding at any time during the Plan Year.

3.03    Any dividend payable while the Policy is premium-paying shall be
        used to reduce subsequent year premiums. Any dividend payable
        when there is no further premium to be paid by the Trustees
        shall be used to increase the proceeds of the Policy.

- 9 -

3.04    No election shall be made by the Trustees, the effect of which
would be to have all or part of a Participant's Retirement Benefit
paid only to his/her designated Beneficiary after his/her death,
if such benefit would otherwise have been payable during the Par-
ticipant's lifetime.  However, subject to the Policy provisions,
the Trustees may select a single sum settlement or any optional
settlement, except the interest option, available for payment of
Retirement Benefits set forth in the Policy.  Optional settle-
ments shall be calculated on the basis of the rates (guaranteed
or modified) in effect at the time of election for the Policy on
the Participant's life.  Single sum settlements shall be the
cash equivalent of the benefit due the Participant based on such
settlement rates.  No election shall be made which provides that
such benefits be payable over a period which exceeds the life
expectancy of the Participant or the life expectancies of the
Participant and his/her spouse, calculated as of the end of the
taxable year in which a Participant's benefits commence, unless
the present value of the payments to be made to the Participant
is more than fifty percent of the present value of the payment
to be made to the Participant and his/her Beneficiaries.  Each
periodic payment to a Beneficiary shall be no greater than the
periodic payments to the Participant during his/her lifetime.

3.05    All Policies purchased pursuant to the Plan must be purchased in
a nondiscriminatory manner.  All Policies must be on the same
plan, bear an issue date coincident with the first day of a Plan
Year, have each premium payment cover the same period, and
contain the same features, if any, unless contrary to the under-
writing rules of the Insurer.  Otherwise, the closest plan in
the opinion of the Trustees shall be adopted, including an insur-
ance policy issued by another life insurance company licensed to
do business in the state in which the Employer is domiciled.  All
policies may contain a variable annuity option and the Trustees
may elect that all Retirement Benefits shall be paid in the form
of a variable annuity.

3.06    At the actual retirement date of the Participant, the Trustees
shall convert the entire value of any life insurance contracts
into cash, or to provide periodic income so that no portion of
such value may be used to continue life insurance protection
beyond actual retirement, or shall distribute the contract to
the Participant.

3.07    In the event of any conflict between the provisions of the Plan
and the terms of any Policy, the Trustee shall not exercise
any Policy rights which would be in conflict with the provisions
of the Plan.

ARTICLE IV

RETIREMENT AND DEATH BENEFITS

4.01    Each Participant shall be entitled to receive a Retirement Benefit
on his/her Normal Retirement Date as selected in the Adoption
Agreement.  All monthly Retirement Benefits shall be computed to
the nearest dollar (Item 7).

Benefits under the Plan shall commence, unless otherwise elected, no later than the 60th day after the latest of the close of the Plan Year in which:

(a)  the Participant attained the earlier of age 65 or the Plan's Normal Retirement Age;

(b)  occurs the tenth (10th) anniversary of the year in which the Participant commenced participation under the Plan; or

(c)  the Participant terminates employment with the Employer.

4.02  The minimum and maximum monthly benefit shall be selected by the Employer in the Adoption Agreement (Item 8), except that the maximum monthly benefit shall not exceed $562.50 for each Year of Service not in excess of ten (10) years if the Normal Form selected in Item 9 of the Adoption Agreement is 10 C&L or $625.00 for each Year of Service not in excess of ten (10) years if the Normal Form selected in Item 9 of the Adoption Agreement is Life Only, or such increased amounts as may be prescribed by the Secretary of the Treasury or his delegate.  For purposes of this Section, Service shall be as defined in Section 1.16(a).

4.03  The monthly benefit shall be paid on the Normal Form as selected in the Adoption Agreement (Item 9), unless another option has been selected.

4.04  The Participant's benefit at his Normal Retirement Date shall be based on the average of his/her Compensation for the period selected in the Adoption Agreement (Item 7).

4.05  Approximately 60 days prior to each Anniversary Date, the Trustees shall review the Compensation of all Participants.  If the Compensation of a Participant as of such Anniversary Date has increased or decreased since the last adjustment of his/her benefits, or if there has been no previous adjustment of his/her benefits since his/her entry into the Plan, the amount of Retirement Benefit to which he/she shall be considered entitled shall be increased or reduced in accordance with the formula selected in the Adoption Agreement.  However, no such increase or decrease in benefit shall be given effect until the anniversary on which such change in Compensation shall be sufficient, upon application of the formula selected in the Adoption Agreement, to cause an increase or decrease in the monthly Retirement Benefit of at least $10.00, or the purchase of a $1,000 life insurance policy.  Notwithstanding the foregoing provisions, there shall be no change in the death benefit by reason of an increase or decrease in Compensation made within five (5) years immediately preceding the Normal Retirement Date of a Participant.

4.06  The amount of pre-retirement Death Benefit for a Participant found by the Insurer to be insurable at standard rates shall be (a) under a Fully Insured Plan:  100 times the anticipated monthly Retirement Benefit, or the cash value under the Policy, whichever is greater; (b) under a Combination Plan:  as stated in the Adoption Agreement (Item 11).

4.07    The amount of insurance for a Participant who is found to be insur-
able only at substandard rates shall, in all respects, be similar
to that described in the Adoption Agreement, if the Participant, in
his sole discretion, irrevocably agrees, on the date of the Policy
and for the duration of the Policy to pay the additional premiums
required to obtain the full amount of the Death Benefit as provided
in the Adoption Agreement.  Otherwise, a Policy shall be issued in
the face amount which can be purchased for an annual premium equal
to the sum that would have been used to provide a Policy as
described in the Adoption Agreement were the Participant insurable
at standard rates.

4.08    For a Participant who is uninsurable, the Policy to be issued shall
be a Retirement Annuity with a Death Benefit of the greater of the
return of premiums or the cash value.  If the Method of Funding is
a Fully Insured Plan, the Retirement Annuity shall be equal to the
pension benefit.  If the Method of Funding is a Combination Plan,
the Retirement Annuity shall be of such amount that can be purchased
for an annual premium equal to the sum that would have been used to
provide a Policy as described in the Adoption Agreement were the
Participant insurable at standard rates.

## ARTICLE V

RETIREMENT

5.01    If a Participant shall retire as of his/her Normal Retirement Date,
he/she shall be fully vested in all Policy values and such vesting
shall be nonforfeitable.  For Combination Plans he/she will be
fully vested in the additional amount required by the Insurer to
provide the necessary Retirement Benefit and such vesting shall be
nonforfeitable.  Trustees shall take all necessary steps and execute
all required documents to have the Insurer pay such Retirement
Benefits as are available under such Policies on the life of such
Participant and shall release such Auxiliary Investment Funds as
are required for this purpose.

5.02    This Section will apply only if a Standard Disability Provision
in Item 6A of the Adoption Agreement was selected.  A Participant,
after having been certified by the Employer upon competent medical
evidence, as permanently and totally disabled, shall be retired
immediately provided he/she is eligible to receive, and is
receiving, Social Security disability benefits.  The disability
benefit, however, may be paid pending disposition of the applica-
tion for Social Security disability benefits.  The Trustees shall
take all necessary steps and execute all required documents to
make the benefit available upon such disability retirement.

(a)    In the case of a Fully Insured Plan, the benefit shall be
equal to the Accrued Benefit as defined in Section 1.21(a).

(b)    In the case of a Nonintegrated Combination Plan, the benefit
shall be equal to the Accrued Benefit as defined in Section
1.21(b), reduced actuarially to reflect the earlier commence-
ment of Retirement Benefits.

IB

- 12 -

4.07    The amount or insurance for a Participant who is found to be insur-
able only at substandard rates shall, in all respects, be similar
to that described in the Adoption Agreement, if the Participant, in
his sole discretion, irrevocably agrees, on the date of the Policy
and for the duration of the Policy to pay the additional premiums
required to obtain the full amount of the Death Benefit as provided
in the Adoption Agreement.  Otherwise, a Policy shall be issued in
the face amount which can be purchased for an annual premium equal
to the sum that would have been used to provide a Policy as
described in the Adoption Agreement were the Participant insurable
at standard rates.

4.08    For a Participant who is uninsurable, the Policy to be issued shall
be a Retirement Annuity with a Death Benefit of the greater of the
return of premiums or the cash value.  If the Method of Funding is
a Fully Insured Plan, the Retirement Annuity shall be equal to the
pension benefit.  If the Method of Funding is a Combination Plan,
the Retirement Annuity shall be of such amount that can be purchased
for an annual premium equal to the sum that would have been used to
provide a Policy as described in the Adoption Agreement were the
Participant insurable at standard rates.

ARTICLE V

RETIREMENT

5.01    If a Participant shall retire as of his/her Normal Retirement Date,
he/she shall be fully vested in all Policy values and such vesting
shall be nonforfeitable.  For Combination Plans he/she will be
fully vested in the additional amount required by the Insurer to
provide the necessary Retirement Benefit and such vesting shall be
nonforfeitable.  Trustees shall take all necessary steps and execute
all required documents to have the Insurer pay such Retirement
Benefits as are available under such Policies on the life of such
Participant and shall release such Auxiliary Investment Funds as
are required for this purpose.

5.02    This Section will apply only if a Standard Disability Provision
in Item 6A of the Adoption Agreement was selected.  A Participant,
after having been certified by the Employer upon competent medical
evidence, as permanently and totally disabled, shall be retired
immediately provided he/she is eligible to receive, and is
receiving, Social Security disability benefits.  The disability
benefit, however, may be paid pending disposition of the applica-
tion for Social Security disability benefits.  The Trustees shall
take all necessary steps and execute all required documents to
make the benefit available upon such disability retirement.

(a)    In the case of a Fully Insured Plan, the benefit shall be
equal to the Accrued Benefit as defined in Section 1.21(a).

(b)    In the case of a Nonintegrated Combination Plan, the benefit
shall be equal to the Accrued Benefit as defined in Section
1.21(b), reduced actuarially to reflect the earlier commence-
ment of Retirement Benefits.

IB - 12 -

(c)  In the case of an Integrated Combination Plan, the following applies:

The benefit shall be equal to the Participant's Accrued Benefit as defined in Section 1.21(b) reduced actuarially to reflect the earlier commencement of benefits.  In no event shall the benefit exceed the following maximum:

The benefit to be determined as of the Normal Retirement Date (assuming that until then he/she continued to receive the same Compensation he/she was receiving on the disability retirement date) multiplied by the greater of (a) or (b), as follows:  (a) seven-tenths; (b) a fraction, the numerator of which is the Participant's number of Years of Service as defined in Section 1.16(a) to the disability retirement date and the denominator of which is his/her number of Years of Service as defined in Section 1.16(a) to the Normal Retirement Date.  However, if an Integrated Offset Plan is selected the offset shall not exceed 64% of the Participant's actual disability benefit under the Social Security Act as in effect at the time of his/her retirement for disability.

5.03    This Section will apply only if a Deferred Payment Disability Provision in Item 6(B) of the Adoption Agreement for a Nonintegrated Plan or an Offset Plan was selected.

(a)  If the Plan is a Fully Insured Plan, the Trustees shall apply for waiver of premium for the Policies issued on the lives of all Participants.  If the Plan is a Combination Plan, the Trustees shall apply for disability policies providing a benefit, payable to the Trustees equal to the annual level deposit required to pay the insurance premiums plus the Auxiliary Investment Fund deposit for the Participant based on the tables of interest, mortality, and turnover used in calculating the deposits to the Auxiliary Fund.

(b)  A Participant who terminates employment by reason of permanent and total disability as certified to by the Employer upon competent medical evidence, and who is eligible to receive Social Security disability benefits, shall be continued as a Participant although no further contributions shall be made for his/her benefit by the Employer.  The Trustees may segregate his/her Actuarially Adjusted Allocable Portion of the Auxiliary Investment Fund and use it to purchase a single premium deferred annuity, or may leave such amounts in the Auxiliary Fund and invest same in the same manner as other Trust assets.  Monies received under any disability policies shall be used to fund the benefit of the disabled Participant in the same manner as Employer contributions were so used during his Participation prior to disability.

(c)  Upon his/her attainment of age sixty, the disabled Participant shall be entitled to receive a pension benefit, determined (i) in the case of a Fully Insured Plan, as the benefit which can be purchased under any of the options of Section 5.06 by his/

- 13 -

her Accrued Benefit as defined in Section 1.21(a); (ii) in the case of a Nonintegrated Combination Plan, as the benefit which can be purchased under any of the options set forth in Section 3.04 (subject to the provisions of Section 5.06 by the Policy cash values and Actuarially Adjusted Allocable Portion of the Auxiliary Investment Fund) determined as if the disabled Participant remained a Participant until his/her sixtieth birthday. In the case of an Integrated Offset Combination Plan, the disability benefit shall be limited in the manner set forth in the last paragraph of Section 6.01(c).

(d)  In the event that the Trustees are unable to obtain a disability policy to insure any portion of the deposits, the disability pension payable at age sixty shall be reduced by the cash values of Auxiliary Investment Fund values unavailable as a result of the inability to obtain such coverage.

(e)  In the event that a Participant for whom no disability policies are available is disabled as set forth in subsection (b), his/her disability benefit shall be determined and shall commence in accordance with the provisions of Section 5.02.

(f)  If a Participant shall cease to be disabled prior to attaining age sixty and is reemployed by the Employer, Employer contributions shall resume for his/her benefit and he/she shall be treated for all purposes as if he/she had never terminated employment.

(g)  If a Participant shall cease to be disabled prior to attaining age sixty and is not reemployed by the Employer, he/she shall be treated as if he/she terminated employment on the date he/she ceased to be disabled, and his/her vested percentage shall include credit for service during his/her period of disability.

(h)  If a disabled Participant shall die prior to attaining age sixty, his/her death benefit shall be the same as it would have been if he/she had been a nondisabled Participant on the date of his/her death, subject to reduction by amounts which were not covered by disability policies during the period of disability.

5.04  If a Participant shall, with the consent of the Employer, remain in its employ after his/her Normal Retirement Date, no further contributions shall be made for his/her benefit, and the Trustees shall take whatever steps may be necessary and execute all required documents in order to have the Insurer pay such Retirement Benefits as are available under any contract or contracts on the life of such Participant and from such Auxiliary Investment Funds as are held on his/her behalf, and to the extent permitted by the terms of the respective contract and the rules of the Insurer, to have payment of such Retirement Benefits deferred.  However, distribution must commence no later than five (5) years after Normal Retirement Date.

5.05  While payments are being made under any Policy, it shall remain subject to the Plan and in the possession of the Trustees, unless the Trustees, in their sole discretion, deliver it to a Retired

- 14 -

Participant, with such endorsements and restrictions including nontransferability as may be necessary to carry out the purposes of this Plan.

5.06    The Participant, with the approval of the Trustees, may choose any method of distribution of benefits outlined in Section 3.04, except that benefits payable to a Participant who is married to the same spouse for at least one year prior to the date benefits commence must be in the form of a Joint and Survivor Annuity as defined in Section 1.23 unless he/she elects otherwise.

A Participant may elect, no less than thirty days prior to the date benefits commence and only after receiving from the Trustees a written explanation of the terms and conditions of the Joint and Survivor Annuity, not to take such Joint and Survivor Annuity.

## ARTICLE VI

TERMINATION OF EMPLOYMENT

6.01    A Participant whose employment with the Employer is terminated prior to his/her Normal Retirement Date for any reason other than death (or disability if the Standard or Deferred Payment Disability Provision was selected in Item 6 of the Adoption Agreement) shall be vested in a Retirement Benefit on the Normal Form as follows:

(a)    In the case of a Fully Insured Plan, the benefit shall be equal to the fraction indicated in Item 13 of the Adoption Agreement of the Accrued Benefit as defined in Section 1.21(a).

(b)    In the case of a Combination Plan, the benefit shall be equal to the fraction indicated in Item 13 of the Adoption Agreement of the Accrued Benefit as defined in Section 1.21(b).

(c)    No distribution of the vested benefit shall be made to a Participant prior to his/her death or Normal Retirement Date, whichever occurs first, unless its present value is not more than $1,750 or the Participant makes the special irrevocable election to have benefits commence in the form of income payments or as a lump sum payment (equal to the present value of the vested benefit) prior to his/her Normal Retirement Date and the Trustees agree to such election. The present value of the vested benefit shall be determined as of the Anniversary Date coincident with or preceding the Participant's date of termination unless the Participant requests as part of his/her irrevocable election that the distribution be made during a subsequent Plan Year. The special irrevocable election can be made no later than sixty (60) days after termination of employment and payments may be made no earlier than ninety (90) days after termination of employment. This provision is intended to preclude constructive receipt of any trust assets in the event the Participant fails to make the special irrevocable election within the prescribed time.

Participant, with such endorsements and restrictions including nontransferability as may be necessary to carry out the purposes of this Plan.

5.06     The Participant, with the approval of the Trustees, may choose any method of distribution of benefits outlined in Section 3.04, except that benefits payable to a Participant who is married to the same spouse for at least one year prior to the date benefits commence must be in the form of a Joint and Survivor Annuity as defined in Section 1.23 unless he/she elects otherwise.

A Participant may elect, no less than thirty days prior to the date benefits commence and only after receiving from the Trustees a written explanation of the terms and conditions of the Joint and Survivor Annuity, not to take such Joint and Survivor Annuity.

## ARTICLE VI

TERMINATION OF EMPLOYMENT

6.01     A Participant whose employment with the Employer is terminated prior to his/her Normal Retirement Date for any reason other than death (or disability if the Standard or Deferred Payment Disability Provision was selected in Item 6 of the Adoption Agreement) shall be vested in a Retirement Benefit on the Normal Form as follows:

(a)     In the case of a Fully Insured Plan, the benefit shall be equal to the fraction indicated in Item 13 of the Adoption Agreement of the Accrued Benefit as defined in Section 1.21(a).

(b)     In the case of a Combination Plan, the benefit shall be equal to the fraction indicated in Item 13 of the Adoption Agreement of the Accrued Benefit as defined in Section 1.21(b).

(c)     No distribution of the vested benefit shall be made to a Participant prior to his/her death or Normal Retirement Date, whichever occurs first, unless its present value is not more than $1,750 or the Participant makes the special irrevocable election to have benefits commence in the form of income payments or as a lump sum payment (equal to the present value of the vested benefit) prior to his/her Normal Retirement Date and the Trustees agree to such election. The present value of the vested benefit shall be determined as of the Anniversary Date coincident with or preceding the Participant's date of termination unless the Participant requests as part of his/her irrevocable election that the distribution be made during a subsequent Plan Year. The special irrevocable election can be made no later than sixty (60) days after termination of employment and payments may be made no earlier than ninety (90) days after termination of employment. This provision is intended to preclude constructive receipt of any trust assets in the event the Participant fails to make the special irrevocable election within the prescribed time.

If benefits are to commence prior to the Normal Retirement
Date, the benefit payable shall be equal to the benefit deter-
mined by applying Section 6.01(b) which would have been payable
on the Normal Retirement Date reduced actuarially to reflect
the earlier commencement of benefits.  In no event shall the
benefit exceed the following maximum:

The Accrued Benefit which would have been paid on the Normal
Retirement Date, reduced by one-fifteenth for each of the
first five years by which the date benefits commence precedes
the Normal Retirement Date, one-thirtieth for each of the next
five years, and actuarially reduced for each additional year
thereafter.

In the case of an Integrated Offset Plan, the reduction set
forth in the preceding paragraph shall be applied to the total
benefit.

(d)  Benefits will be paid only on death, disability, termination
of employment or at Normal Retirement Age.

6.02    (a)  Benefits may be distributed in any form as outlined in Section
3.04 in respect of the Policies on the Participant's life,
well as the portion of the Auxiliary Investment Fund, subject
to the provisions of Section 5.06.

(b)  No distribution of vested benefit shall be made to a Partici-
pant prior to his/her death, or Normal Retirement Date,
whichever occurs first, unless the Trustees on a uniform and
nondiscriminatory basis elect to distribute such vested benefit.

If such distribution is made by the Trustees prior to a
Participant's death or Normal Retirement, and the individual
is reemployed, then the distributed portion of the Accrued
Benefit may be repaid within two years of the Employees
resumption of employment.  Repayment of the Employee's Accrued
Benefit may be conditioned upon repayment of interest on the
full amount of the distribution.  Such interest shall be com-
puted on the amount of the distribution from the date of such
distribution to the date of repayment, compounded annually
from date of distribution, at the rate of 5%.

6.03    The rights of a Participant in the benefit set forth in Section 6.01
shall be nonforfeitable, unconditional and legally enforceable
against the Trustees to the extent of trust assets.  Benefits in
which the Participant has a nonforfeitable interest need not commence
until the Participant's Normal Retirement Date, but no later than
sixty (60) days after the last day of the Plan Year in which the
Participant attained his/her Normal Retirement Date.

6.04    The rights of a Participant in his/her Accrued Benefit resulting
from required Employee contributions shall be nonforfeitable at
all times.

TB

6.05    A leave of absence for reasons of military service or as authorized by the Employer in writing for a period not exceeding two years in duration shall not be considered a termination of employment, provided the Employee returns to the service of the Employer on or prior to the expiration date of such leave of absence or within 90 days of his/her original separation from such military service. If the Employee does not so return, he/she shall be deemed to have terminated his/her employment when the leave of absence so ended.

## ARTICLE VII

CONTRIBUTIONS TO THE TRUST

7.01    (a)  Subject to the provisions of Subsection (b) below and Section 8.01, the Employer agrees to pay to the Trustees the gross Policy premium reduced by all Policy dividends. In the event the Employer has selected a Combination Plan, the Employer also agrees to pay to the Trustees such additional amounts, to be invested as part of the Auxiliary Investment Fund, as may be determined to be necessary to provide the benefits specified hereunder.

    (b)  If a shareholder-employee is a Participant in a Plan maintained by a Subchapter S Corporation, only the first $100,000 of Compensation of each Employee shall be counted. Benefits for shareholder-employees shall not exceed the maximum benefits under Section 401(j) of the Code or regulations thereunder.

    (c)  Any payments by the Insurer on account of credits such as dividends, experience rating credits, or surrender or cancellation credits shall be applied, within the taxable year of the Employer in which received or within the next succeeding taxable year, toward the next premiums due before any further Employer contributions are so applied.

7.02    The Trustees shall pay the initial premium and subsequent premiums from funds made available by the Employer and from the General Fund. If funds are insufficient, the Trustees may borrow to pay the premiums, provided that if a loan is made on the Policies, it shall be proportional to the premium providing there is sufficient cash value. If there is insufficient cash value the deficiency shall be borrowed on the same proportional basis. Any repayment of loans shall also be made on the same proportional basis used in making the loans. The Trustees shall have no duty to pay premiums in excess of the available funds. The Trustees shall not pay premiums on Policies on the lives of Participants who have terminated employment unless it should be necessary to obtain equities for the Trust.

7.03    All amounts which are contributed by the Employer to the Trustees shall be irrevocable contributions to this Trust except under the circumstances set forth in Section 12.10.

- 17 -

6.05    A leave of absence for reasons of military service or as authorized by the Employer in writing for a period not exceeding two years in duration shall not be considered a termination of employment, provided the Employee returns to the service of the Employer on or prior to the expiration date of such leave of absence or within 90 days of his/her original separation from such military service.  If the Employee does not so return, he/she shall be deemed to have terminated his/her employment when the leave of absence so ended.


ARTICLE VII

CONTRIBUTIONS TO THE TRUST

7.01    (a)  Subject to the provisions of Subsection (b) below and Section 8.01, the Employer agrees to pay to the Trustees the gross Policy premium reduced by all Policy dividends.  In the event the Employer has selected a Combination Plan, the Employer also agrees to pay to the Trustees such additional amounts, to be invested as part of the Auxiliary Investment Fund, as may be determined to be necessary to provide the benefits specified hereunder.

        (b)  If a shareholder-employee is a Participant in a Plan maintained by a Subchapter S Corporation, only the first $100,000 of Compensation of each Employee shall be counted.  Benefits for shareholder-emplbyees shall not exceed the maximum benefits under Section 401(j) of the Code or regulations thereunder.

        (c)  Any payments by the Insurer on account of credits such as dividends, experience rating credits, or surrender or cancellation credits shall be applied, within the taxable year of the Employer in which received or within the next succeeding taxable year, toward the next premiums due before any further Employer contributions are so applied.

7.02    The Trustees shall pay the initial premium and subsequent premiums from funds made available by the Employer and from the General Fund.  If funds are insufficient, the Trustees may borrow to pay the premiums, provided that if a loan is made on the Policies, it shall be proportional to the premium providing there is sufficient cash value.  If there is insufficient cash value the deficiency shall be borrowed on the same proportional basis.  Any repayment of loans shall also be made on the same proportional basis used in making the loans.  The Trustees shall have no duty to pay premiums in excess of the available funds.  The Trustees shall not pay premiums on Policies on the lives of Participants who have terminated employment unless it should be necessary to obtain equities for the Trust.

7.03    All amounts which are contributed by the Employer to the Trustees shall be irrevocable contributions to this Trust except under the circumstances set forth in Section 12.10.


- 17 -

7.04     If so provided in the Adoption Agreement (Item 12), each Employee
shall contribute annually an amount as stated towards the cost of
the Plan. Such amount shall not be applied towards the cost of
the death benefit provided under the Policies.

7.05     The contribution of the Employer for any Plan Year shall be made
to, or for the account of, the Trustees on or before the date
(including any extensions thereof) the Employer is required to
file its Federal Income Tax Return for such year.

7.06     All forfeitures shall be used to reduce Employer contributions.


ARTICLE VIII

GENERAL FUND

8.01     The Trustees shall establish a Fund to be known as the General Fund.
All amounts received by the Trustees (other than contributions to
the Auxiliary Investment Fund) to which Participants, terminated
Participants, or their Beneficiaries are not entitled shall be
placed in the General Fund. Such Fund shall, to the extent avail-
able, be used by the Trustees for the next premium liability which
the Employer would otherwise have, whether for initial or renewal
premiums.


ARTICLE IX

AMENDMENT OF PLAN AND ADOPTION AGREEMENT

9.01     Subject to the provisions of Sections 9.04 and 9.05, the Employer
and the Trustees, as initially and subsequently designated, hereby
delegate authority to The Guardian Life Insurance Company of
America to amend this Plan and Adoption Agreement at any time and
such amendments are deemed made with the Employer's and the
Trustees' consent on their behalf. Such amendments by the Insurer
may be executed without the consent of any other party and shall
be stated in instruments executed by the Insurer in the same
manner and form as this Plan and Adoption Agreement, copies of
which shall be provided to each Employer who shall provide copies
of same to the Trustees. Such amendments by the Insurer shall
bind each Employer, Trustee, and all Participants and their Bene-
ficiaries hereunder. The Insurer shall limit its actions under
this Section to minor and procedural changes, and such changes
as may be advisable to maintain the qualification of the Plan
under the provisions of the Internal Revenue Code of 1954, as
amended, and of any other applicable statute. The power to amend
granted to the Insurer is in no way intended to, nor shall it be
deemed to grant the Insurer any discretionary power in the
operation or management of the Plan.

The amendments made by the Insurer are limited solely to the form
of the Plan and Adoption Agreement. The Insurer may not change
an election previously made by the Employer.

- 18 -

7.04   If so provided in the Adoption Agreement (Item 12), each Employee shall contribute annually an amount as stated towards the cost of the Plan. Such amount shall not be applied towards the cost of the death benefit provided under the Policies.

7.05   The contribution of the Employer for any Plan Year shall be made to, or for the account of, the Trustees on or before the date (including any extensions thereof) the Employer is required to file its Federal Income Tax Return for such year.

7.06   All forfeitures shall be used to reduce Employer contributions.


ARTICLE VIII

GENERAL FUND

8.01   The Trustees shall establish a Fund to be known as the General Fund. All amounts received by the Trustees (other than contributions to the Auxiliary Investment Fund) to which Participants, terminated Participants, or their Beneficiaries are not entitled shall be placed in the General Fund. Such Fund shall, to the extent available, be used by the Trustees for the next premium liability which the Employer would otherwise have, whether for initial or renewal premiums.


ARTICLE IX

AMENDMENT OF PLAN AND ADOPTION AGREEMENT

9.01   Subject to the provisions of Sections 9.04 and 9.05, the Employer and the Trustees, as initially and subsequently designated, hereby delegate authority to The Guardian Life Insurance Company of America to amend this Plan and Adoption Agreement at any time and such amendments are deemed made with the Employer's and the Trustees' consent on their behalf. Such amendments by the Insurer may be executed without the consent of any other party and shall be stated in instruments executed by the Insurer in the same manner and form as this Plan and Adoption Agreement, copies of which shall be provided to each Employer who shall provide copies of same to the Trustees. Such amendments by the Insurer shall bind each Employer, Trustee, and all Participants and their Beneficiaries hereunder. The Insurer shall limit its actions under this Section to minor and procedural changes, and such changes as may be advisable to maintain the qualification of the Plan under the provisions of the Internal Revenue Code of 1954, as amended, and of any other applicable statute. The power to amend granted to the Insurer is in no way intended to, nor shall it be deemed to grant the Insurer any discretionary power in the operation or management of the Plan.

The amendments made by the Insurer are limited solely to the form of the Plan and Adoption Agreement. The Insurer may not change an election previously made by the Employer.

7.04    If so provided in the Adoption Agreement (Item 12), each Employee shall contribute annually an amount as stated towards the cost of the Plan. Such amount shall not be applied towards the cost of the death benefit provided under the Policies.

7.05    The contribution of the Employer for any Plan Year shall be made to, or for the account of, the Trustees on or before the date (including any extensions thereof) the Employer is required to file its Federal Income Tax Return for such year.

7.06    All forfeitures shall be used to reduce Employer contributions.


ARTICLE VIII

GENERAL FUND

8.01    The Trustees shall establish a Fund to be known as the General Fund. All amounts received by the Trustees (other than contributions to the Auxiliary Investment Fund) to which Participants, terminated Participants, or their Beneficiaries are not entitled shall be placed in the General Fund. Such Fund shall, to the extent available, be used by the Trustees for the next premium liability which the Employer would otherwise have, whether for initial or renewal premiums.


ARTICLE IX

AMENDMENT OF PLAN AND ADOPTION AGREEMENT

9.01    Subject to the provisions of Sections 9.04 and 9.05, the Employer and the Trustees, as initially and subsequently designated, hereby delegate authority to The Guardian Life Insurance Company of America to amend this Plan and Adoption Agreement at any time and such amendments are deemed made with the Employer's and the Trustees' consent on their behalf. Such amendments by the Insurer may be executed without the consent of any other party and shall be stated in instruments executed by the Insurer in the same manner and form as this Plan and Adoption Agreement, copies of which shall be provided to each Employer who shall provide copies of same to the Trustees. Such amendments by the Insurer shall bind each Employer, Trustee, and all Participants and their Beneficiaries hereunder. The Insurer shall limit its actions under this Section to minor and procedural changes, and such changes as may be advisable to maintain the qualification of the Plan under the provisions of the Internal Revenue Code of 1954, as amended, and of any other applicable statute. The power to amend granted to the Insurer is in no way intended to, nor shall it be deemed to grant the Insurer any discretionary power in the operation or management of the Plan.

The amendments made by the Insurer are limited solely to the form of the Plan and Adoption Agreement. The Insurer may not change an election previously made by the Employer.

- 18 -

9.02    Subject to the provisions of Sections 9.04 and 9.05, the Employer shall have the right to amend the previously made elections of its Adoption Agreement, at any time, as it pertains solely to its adoption of the Plan, without the consent of any other party. Such amendment shall be stated in an instrument executed by the Employer in the same form as the Adoption Agreement, and copies of such amendment shall be provided to the Insurer.

9.03    Subject to the provisions of Sections 9.04 and 9.05, the Employer shall have the right to amend the Plan, at any time, without the consent of any other party. However, such amendment by the Employer shall apply solely to the Employer and to the Employer's Employees participating in the Plan. Such amendment by the Employer shall not apply to this Plan and Trust Agreement as it applies to other participating Employers, their Employees and Beneficiaries. Such amendment will cancel the pre-approved prototype status of the Plan and will cause the Plan to be considered by the Internal Revenue Service in its entirety as a Plan individually drawn and submitted by the Employer for approval.

9.04    No amendment shall vest in the Employer, directly or indirectly, any right, title interest, or control of any Policies purchased hereunder, or over trust funds subject to the terms of this Plan. No trust assets shall, by reason of any amendment, be used for, or diverted to, purposes other than for the exclusive benefit of Participants, Retired Participants and their Beneficiaries. No amendment shall reduce any vested right or interest to which any Participant, Retired Participant, or Beneficiary is then entitled hereunder. The Employer may, however, make such retroactive amendments as may be required by the Internal Revenue Service in order to qualify initially or maintain the qualification of the Plan under the appropriate provisions of the Internal Revenue Code of 1954, as amended, and of any other applicable statute.

9.05    No amendment shall, without the written consent of the Insurer, deprive the Insurer of any of its exemptions and immunities; nor shall such amendment change the duties, responsibilities, rights or privileges of the Insurer, or change any provisions of any Policy. If any amendment by the Employer affects the rights, duties, responsibilities, or obligations of the Trustees here-under, such amendment may be made only with the consent of the Trustees. Any amendment to the Plan providing for the issuance of Policies on a basis contrary to the Insurer's practice at that time will not obligate the Insurer to issue such Policies. Any amendment to the Plan made by the Employer in accordance with the provisions of this Section shall become effective when a signed copy has been delivered to the Insurer.

9.06    Subject to the provisions of Sections 9.04 and 9.05, an Employer may adopt this Plan and Trust and the Adoption Agreement as a restatement of a previously adopted pension plan other than this prototype. To do so, the Employer must check Item C in the Introduction of the Adoption Agreement and complete all items in the Adoption Agreement.

9.07    No amendment to the Vesting Schedule shall deprive a Participant
        of his/her nonforfeitable rights to benefits accrued to the
        date of the amendment.  Further, if the Vesting Schedule of the
        Plan is amended, each Participant with at least five (5) Years
        of Service with the Employer may elect, within a reasonable
        period after the adoption of the amendment, to have his/her non-
        forfeitable percentage computed under the Plan without regard
        to such amendment.  The period during which the election may be
        made shall commence with the date the amendment is adopted and
        shall end on the later of:

        (a)  60 days after the amendment is adopted;

        (b)  60 days after the amendment becomes effective; or

        (c)  60 days after the Participant is issued written notice of
             the amendment by the Employer or Plan Administrator.

ARTICLE X

EMPLOYER TERMINATION OF PARTICIPATION IN PLAN

10.01   The Employer reserves the right at any time to terminate the Plan
        and/or Trust, for any reason or for no reason.  The Employer shall
        notify the Trustees that it desires to terminate the Plan and/or
        Trust, and the Trustees shall immediately notify the Pension
        Benefit Guaranty Corporation.  The date of the proposed termina-
        tion shall be no earlier than ten days after notice of such ter-
        mination is filed with the Pension Benefit Guaranty Corporation,
        and no distribution shall be made to any Participant or Beneficiary
        prior to ninety days after the proposed date of termination.

10.02   The Employer's participation under the Plan shall terminate in the
        event of (a) a legal adjudication of the Employer as a bankrupt,
        (b) a general assignment by the Employer to or for the benefit of
        its creditors, (c) dissolution of the Employer, (d) sale or
        transfer of the Employer to another business organization, or
        (e) merger or consolidation of the Employer with another business
        organization, unless the Plan is continued by a successor to the
        Employer, by agreement with the Trustees assuming the liabilities
        of the Plan.  This Plan shall not merge or consolidate with, or
        transfer assets or liabilities to, any other plan unless each Par-
        ticipant in this Plan would (if the Plan terminated) receive a
        benefit immediately after the merger, consolidation or transfer
        which is equal to or greater than the benefit he would have been
        entitled to receive immediately before the merger, consolidation
        or transfer (if this Plan had been terminated).

10.03   In the event of the termination or partial termination of this
        Plan, the rights of all affected employees to benefits accrued
        to the date of such termination or partial termination (to the
        extent funded as of such date) shall be nonforfeitable.

9.07    No amendment to the Vesting Schedule shall deprive a Participant
of his/her nonforfeitable rights to benefits accrued to the
date of the amendment.  Further, if the Vesting Schedule of the
Plan is amended, each Participant with at least five (5) Years
of Service with the Employer may elect, within a reasonable
period after the adoption of the amendment, to have his/her non-
forfeitable percentage computed under the Plan without regard
to such amendment.  The period during which the election may be
made shall commence with the date the amendment is adopted and
shall end on the later of:

(a)  60 days after the amendment is adopted;

(b)  60 days after the amendment becomes effective; or

(c)  60 days after the Participant is issued written notice of
the amendment by the Employer or Plan Administrator.


ARTICLE X

EMPLOYER TERMINATION OF PARTICIPATION IN PLAN

10.01   The Employer reserves the right at any time to terminate the Plan
and/or Trust, for any reason or for no reason.  The Employer shall
notify the Trustees that it desires to terminate the Plan and/or
Trust, and the Trustees shall immediately notify the Pension
Benefit Guaranty Corporation.  The date of the proposed termina-
tion shall be no earlier than ten days after notice of such ter-
mination is filed with the Pension Benefit Guaranty Corporation,
and no distribution shall be made to any Participant or Beneficiary
prior to ninety days after the proposed date of termination.

10.02   The Employer's participation under the Plan shall terminate in the
event of (a) a legal adjudication of the Employer as a bankrupt,
(b) a general assignment by the Employer to or for the benefit of
its creditors, (c) dissolution of the Employer, (d) sale or
transfer of the Employer to another business organization, or
(e) merger or consolidation of the Employer with another business
organization, unless the Plan is continued by a successor to the
Employer, by agreement with the Trustees assuming the liabilities
of the Plan.  This Plan shall not merge or consolidate with, or
transfer assets or liabilities to, any other plan unless each Par-
ticipant in this Plan would (if the Plan terminated) receive a
benefit immediately after the merger, consolidation or transfer
which is equal to or greater than the benefit he would have been
entitled to receive immediately before the merger, consolidation
or transfer (if this Plan had been terminated).

10.03   In the event of the termination or partial termination of this
Plan, the rights of all affected employees to benefits accrued
to the date of such termination or partial termination (to the
extent funded as of such date) shall be nonforfeitable.


- 20 -

10.04    (a)    Upon termination of the Employer's participation as
described in Sections 10.01, 10.02, and 10.03, the assets
of the Trust, including Policy values and amounts held in
the Auxiliary Fund and General Fund, shall be used to
provide benefits in accordance with the following priorities.

( i)    The Trustees shall first pay to each Participant
his/her Accrued Benefit in any Employee contributions,
less withdrawals and benefits previously received by
him/her.

( ii)    To the extent possible with the remaining assets, the
Trustees shall pay to each Participant who has been
receiving benefits for at least 3 years prior to the
date of termination (or would have been receiving
benefits if he/she had retired 3 years before the
date of termination) based on the Plan as in effect
5 years prior to the date of termination, the present
value of his/her future benefits less amounts
allocated to him/her under Subsection (i) above, or
shall use such present value to purchase a nonassign-
able annuity subject to the limits of Section 3.04.

(iii)    To the extent possible with the remaining assets, the
Trustees shall pay to each Participant the present
value of benefits guaranteed under Title IV of the
Employee Retirement Income Security Act of 1974 in
the sequence set forth in Section 4044(a)(4) of said
Act, less amounts allocated to him/her under either
of the preceding Subsections of this Section 10.04(a),
or shall use such present value to purchase a non-
assignable annuity subject to the limits of Section
3.04.

( iv)    To the extent possible with the remaining assets, the
Trustees shall pay to each Participant the present
value of his/her nonforfeitable benefits less amounts
allocated to him/her under any of the preceding Sub-
sections of this Section 10.04(a), or shall use such
present value to purchase a nonassignable annuity
subject to the limits of Section 3.04.

( v)    To the extent possible with the remaining assets, the
Trustees shall pay to each Participant the present
value of his/her Accrued Benefit less amounts
allocated to him/her under any of the preceding Sub-
sections of this Section 10.04(a), or shall use such
present value to purchase a nonassignable annuity
subject to the limits of Section 3.04.

The Trustees shall pay to the Employer the remaining assets
after satisfaction of the liabilities pursuant to (i), (ii),
(iii), (iv) and (v) above.

- 21 -

(b)  Determination of nonforfeitable benefits and Accrued Benefits
under Section 10.04(a) shall be based on the lowest benefit
formula in effect during the 5 year period immediately
preceding the date of termination of the Plan.

(c)  Assets to be distributed in accordance with Section 10.04(a)
shall be those assets remaining after payment of all reason-
able administrative expenses incident to the operation of
the Plan or its termination.  Distribution may be in kind,
including Policies.

(d)  The distributions set forth in this Section 10.04 (a)(iii),
(a)(iv), and (a)(v) shall be subject to the limitations
set forth in Section 10.05.

10.05   Notwithstanding any provision in this Plan to the contrary the
benefits provided by the Employer's contributions for Participants
whose anticipated annual benefit provided by such contributions
will exceed $1,500, but applicable only to the twenty-five highest
paid Employees as of the time of the establishment of the Plan
(including any such highest paid Employees who are not Participants
at that time but may later become Participants) shall be subject to
the following conditions:

(a)  Such benefits shall be paid in full which have been provided
by the Employer's contributions not exceeding the larger of
the following amounts:

(1)  $20,000 or

(2)  An amount equal to 20% of the first $50,000 of the Partic-
ipant's average regular annual compensation multiplied by
the number of years between the date of the establishment
of this Plan and (i) the date that the Plan terminates, or
(ii) if benefits become payable to a Participant described
in the first paragraph of this Section, within ten years
after the date of the establishment of the Plan, the date
the benefits of such Participant first become payable  (if
before the date of termination of this Plan), or (iii) if
benefits become payable to a Participant described in the
first paragraph of this Section after the Plan has been
in effect for ten years and if the full current costs of
the Plan for the first ten years have not been met, or if
the full current costs have not been met on the dates
referred to in (i) or (ii) above, the date of the failure
to meet the full current costs.

(b)  If (1) this Plan is terminated within ten years after the
establishment of this Plan, or (2) the benefits of any of the
Participants described in the first paragraph of this Section
become payable within ten years after the establishment of
this Plan, or (3) the benefits of any of the Participants
described in the first paragraph of this Section become pay-
able after this Plan has been in effect for ten years, and at
the time such benefits become payable, the full current costs

- 22 -

for the first ten years have not been met, the benefits which
any of the Participants described in the first paragraph of
this Section may receive from the Employer's contributions
shall not exceed the benefits set forth in paragraph (a) of
this Section.  This limitation shall cease to be effective
at such time, at or after the expiration of ten years from
the date of the establishment of this Plan, as the full
current costs of the Plan have first been met.

(c)   If an Employer's Plan has been changed so as to increase
substantially the extent of possible discrimination as to
contributions and benefits payable in the event of a sub-
sequent termination of the Plan, the period of ten years
mentioned in Subsection (b) above will be counted from
the effective date of such change in respect to all benefits.

(d)   If a Participant described in the first paragraph of this
Section leaves the employ of the Employer or withdraws from
participation in this Plan, the benefits which he/she may
receive from the Employer's contributions shall not, at any
time, within the first ten years after the date of the
establishment of this Plan, exceed the benefits set forth
in (a) herein.  If, at the end of ten years after the date
of the establishment of this Plan, the full current costs
of the first ten years have not been met, the benefits
such Participant may receive from the Employer's contribu-
tions shall not exceed the benefits set forth in (a) herein
until the first time that the full current costs of this
Plan have been met.

(e)   These conditions shall not restrict the full payments of
any insurance, death or survivor's benefits on behalf of a
Participant who dies while this Plan is in full effect and
its full current costs have been met.

(f)   These conditions shall not restrict the current payment
under the Normal Form of full Retirement Benefits called
for by the Plan for any Retired Participant while this Plan
is in full effect and its full current costs have been met.

(g)   In the event of termination of this Plan within the period
during which paragraph (b) hereof is effective, distribu-
tion to then unretired Participants, including Participants
described in the first paragraph of this Section, shall
include an equitable apportionment among such Participants
of all excess benefits purchased by Employer contributions
for the Participants described in the first paragraph of
this Section, in the manner following:  to each such Partic-
ipant in the ratio that his/her Compensation since entering
the Plan bears to the Compensation since entering the Plan
of all such Participants.

(h) This Section is included in this agreement to conform to the requirements of Treasury Regulations Section 1.401-4 (c) and shall cease to be effective at such time as the provisions of Treasury Regulation Section 1.401-4(c) or any substitute therefor are no longer effective or applicable.

## ARTICLE XI

THE TRUSTEES

11.01    The Board of Directors shall appoint one or more Trustees who shall have powers necessary for the performance of their duties hereunder. The Trustees may, but need not be, officers or Employees of the Employer. The Trustees shall have the authority to establish a funding policy and method consistent with the purposes of the Plan. The Trustees shall be fiduciaries with the sole power to control and manage the operation and administration of the Plan and Trust. Except as provided in Sections 13.04 and 13.05, the Trustees shall not delegate any of the power and authority vested in them.

11.02    The Trustees shall serve at the pleasure of the Employer, who shall be the Administrator of the Plan, with such compensation as may be prescribed by such Employer. Any Trustee may resign by a written notice addressed to the Employer. The Employer shall fill any vacancy in the membership of the Trustees which may occur from time to time. The appointment of a Trustee shall become effective upon his acceptance, in writing, addressed to the Employer, and upon such acceptance such Trustee shall be vested with all the rights, powers, and duties of his predecessor. No Trustee who receives full-time compensation from the Employer shall be compensated for his services as Trustee.

11.03    The Trustees shall have the power and authority either alone or on advice of counsel to reconcile any inconsistencies and to construe and interpret the provisions of the Plan, and to determine all questions with respect to the individual rights of Participants, Retired Participants and their Beneficiaries.

11.04    The Trustees shall establish a funding policy and method consistent with the objectives of the Plan. The Trustees shall manage the assets of this Trust and otherwise discharge their duties solely in the interest of the Participants and their Beneficiaries. The assets of the Trust shall be used solely for the exclusive purpose of providing benefits to Participants and their Beneficiaries and defraying reasonable expenses of administering the Plan.

11.05    The Trustees shall act at all times with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with

- 24 -

(h) This Section is included in this agreement to conform to the requirements of Treasury Regulations Section 1.401-4 (c) and shall cease to be effective at such time as the provisions of Treasury Regulation Section 1.401-4(c) or any substitute therefor are no longer effective or applicable.

ARTICLE XI

THE TRUSTEES

11.01    The Board of Directors shall appoint one or more Trustees who shall have powers necessary for the performance of their duties hereunder. The Trustees may, but need not be, officers or Employees of the Employer. The Trustees shall have the authority to establish a funding policy and method consistent with the purposes of the Plan. The Trustees shall be fiduciaries with the sole power to control and manage the operation and administration of the Plan and Trust. Except as provided in Sections 13.04 and 13.05, the Trustees shall not delegate any of the power and authority vested in them.

11.02    The Trustees shall serve at the pleasure of the Employer, who shall be the Administrator of the Plan, with such compensation as may be prescribed by such Employer. Any Trustee may resign by a written notice addressed to the Employer. The Employer shall fill any vacancy in the membership of the Trustees which may occur from time to time. The appointment of a Trustee shall become effective upon his acceptance, in writing, addressed to the Employer, and upon such acceptance such Trustee shall be vested with all the rights, powers, and duties of his predecessor. No Trustee who receives full-time compensation from the Employer shall be compensated for his services as Trustee.

11.03    The Trustees shall have the power and authority either alone or on advice of counsel to reconcile any inconsistencies and to construe and interpret the provisions of the Plan, and to determine all questions with respect to the individual rights of Participants, Retired Participants and their Beneficiaries.

11.04    The Trustees shall establish a funding policy and method consistent with the objectives of the Plan. The Trustees shall manage the assets of this Trust and otherwise discharge their duties solely in the interest of the Participants and their Beneficiaries. The assets of the Trust shall be used solely for the exclusive purpose of providing benefits to Participants and their Beneficiaries and defraying reasonable expenses of administering the Plan.

11.05    The Trustees shall act at all times with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with

- 24 -

like aims, and shall diversify the investments so as to minimize the risk of large losses unless under the circumstances it is prudent not to do so.

11.06    Provided the Trustees act in accordance with the provisions of Sections 11.04 and 11.05, the Trustees shall be free of any liability, joint or several, to the Employer, any Employee, any Participant, Retired Participant or Beneficiary for the making, retention, or sale of any investment or reinvestment made by them as herein provided or for any loss to or diminution of the assets of the Trust. In addition, should the Trustees select a custodian as provided in Section 13.04, or an investment manager, as provided in Section 13.05, to the extent that such selection is prudent, the Trustees shall be free of any liability for any acts or omissions of such custodian or investment manager.

11.07    The Trustees shall act by majority vote, and action may be taken either by a vote at a meeting or in writing without a meeting. Any one Trustee may sign, on behalf of all, applications for policies or any papers which may be required by the Insurer.

11.08    The Trustees shall receive all contributions to the Plan, and such contributions, together with all Policy dividends and refunds, amounts received by the Trustees under any Policy that are not distributable to Participants or their Beneficiaries and all other property held from time to time hereunder, shall be held, managed, and administered in trust pursuant to the terms of the Plan.

11.09    No Trustee shall be precluded from becoming a Participant under the Plan upon his meeting the eligibility requirements set forth in Section 2.01.

11.10    The Employer shall reimburse the Trustees for any reasonable expense, including counsel fees, incurred in the administration of the Plan.

11.11    The Trustees shall keep accurate and detailed accounts of the transactions effected by them hereunder and all accounts, books and records relating thereto shall be open for inspection at all reasonable times by the Employer, or any person designated by him. A Participant may inspect the Trustees' records only insofar as they relate to his own participation.

11.12    As soon as practicable after the close of each Trust year, and at such other times as the Employer may direct, the Trustees shall file with the Employer a written account, setting forth all receipts, expenditures, and other operations of the Plan during the period since the date of the last previous accounting. Upon the expiration of thirty days from the date of filing such accounting with the Employer, the Trustees shall be forever released and discharged from all liability and accountability to anyone with respect to the propriety of their acts and transactions shown in such account, except with respect to any such act or transaction as to which the Employer shall file with the Trustees written objections within

- 25 -

such thirty-day period, or except if such transaction violates the provisions of Sections 11.04 or 11.05. Nothing herein contained, however, shall deprive the Trustees of their right to have any of their accounts judicially settled by a court of competent jurisdiction.

11.13    The Trustees shall not be required to give bond or other security for the faithful performance of their duties, unless required by law.

11.14    The Trustees shall be fully protected in relying upon any written instruction and direction of the Employer, and in taking any action upon any instrument believed by the Trustees to be genuine and signed and presented by the proper person or persons. The Trustees shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statement therein contained.

11.15    In the event that any dispute shall arise as to any act to be performed by the Trustees, they may postpone performance until adjudication of such dispute in a court of competent jurisdiction or until they are indemnified against loss to their satisfaction.

11.16    The Trustees, any custodian designated in accordance with Section 13.04, and any investment manager designated in accordance with Section 13.05, shall not, either directly or indirectly, deal with the assets of the Trust for his or their own interest or account; act in any transaction involving the Plan on behalf of a party whose interests are adverse to the interests of the Plan, or any Participant or Beneficiary; or receive any consideration for his or their own account from any party dealing with the Plan in connection with a transaction involving Trust assets.

11.17    Neither the Trustees, any custodian designated in accordance with Section 13.04, nor any investment manager designated in accordance with Section 13.05, shall engage in any transaction which he or they know or should know constitutes a direct or indirect:

(a)    sale, exchange or lease of any property between the Trust and a party in interest;

(b)    lending of money or other extension of credit between the Trust and a party in interest;

(c)    furnishing of goods, services or facilities (other than reasonable arrangements for office space, or legal, accounting or other services necessary for the establishment or operation of the Plan or Trust) between the Trust and a party in interest;

(d)    transfer to, or use by or for the benefit of, a party in interest any assets of the Trust.

- 26 -

The Term "party in interest" shall mean:

( i) the Trustees;

( ii) any custodian designated in accordance with Section 13.04;

( iii) any investment manager designated in accordance with Section 13.05;

( iv) anyone performing services, including legal or accounting services, to the Plan or Trust;

( v) the Employer;

( vi) anyone who, directly or indirectly, owns fifty (50%) per cent or more of the combined voting power of all classes of stock, or fifty (50%) per cent of the total value of all classes of stock of the Employer;

( vii) a spouse, ancestor, lineal descendant or spouse of a lineal descendant of any individual described in sub-sections (i), (ii), (iii), (iv), (v), or (vi);

(viii) a corporation, partnership, trust or estate of which at least fifty (50%) per cent of the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of such corporation, at least fifty (50%) per cent of the capital interest or profits of such partnership, or at least fifty (50%) per cent of the beneficial interest of such Trust or estate is owned directly or indirectly by a party in interest (other than as defined in subsections (vii), (viii), (ix) or (x));

( ix) a ten (10%) per cent or more (directly or indirectly in capital or profits) partner or joint venturer of a person described in subsections (ii), (iii), (iv), (v), (vi) or (viii); and

( x) an employee, officer, director or owner, directly or indirectly, of ten (10%) per cent or more of the issued and outstanding shares of a person described in sub-sections (ii), (iii), (iv), (v), (vi) or (viii).

## ARTICLE XII

MISCELLANEOUS

12.01    The adoption and maintenance of the Plan shall not be deemed to constitute a contract between the Employer and any Participant or Employee, or to be a consideration for, inducement to, or condition

- 27 -

*I B*

The Term "party in interest" shall mean:

( i) the Trustees;

( ii) any custodian designated in accordance with Section 13.04;

( iii) any investment manager designated in accordance with Section 13.05;

( iv) anyone performing services, including legal or accounting services, to the Plan or Trust;

( v) the Employer;

( vi) anyone who, directly or indirectly, owns fifty (50%) per cent or more of the combined voting power of all classes of stock, or fifty (50%) per cent of the total value of all classes of stock of the Employer;

( vii) a spouse, ancestor, lineal descendant or spouse of a lineal descendant of any individual described in sub-sections (i), (ii), (iii), (iv), (v), or (vi);

(viii) a corporation, partnership, trust or estate of which at least fifty (50%) per cent of the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of such corporation, at least fifty (50%) per cent of the capital interest or profits of such partnership, or at least fifty (50%) per cent of the beneficial interest of such Trust or estate is owned directly or indirectly by a party in interest (other than as defined in subsections (vii), (viii), (ix) or (x));

( ix) a ten (10%) per cent or more (directly or indirectly in capital or profits) partner or joint venturer of a person described in subsections (ii), (iii), (iv), (v), (vi) or (viii); and

( x) an employee, officer, director or owner, directly or indirectly, of ten (10%) per cent or more of the issued and outstanding shares of a person described in sub-sections (ii), (iii), (iv), (v), (vi) or (viii).

## ARTICLE XII

MISCELLANEOUS

12.01    The adoption and maintenance of the Plan shall not be deemed to constitute a contract between the Employer and any Participant or Employee, or to be a consideration for, inducement to, or condition

- 27 -

I B

of employment of any person. Nothing herein contained shall be construed to give any Participant the right to be retained in the employ of the Employer or to interfere with the right of the Employer to terminate the employment of any Participant at any time.

12.02    Wherever it is herein provided that any person or persons concerned with the administration of the Plan shall exercise discretion in the making of any decision, such discretion shall be exercised so as not to discriminate among persons similarly situated.

12.03    A copy of the Plan and any and all future amendments thereto shall be available to the Plan Participants for inspection at all reasonable times.

12.04    No right or interest of any kind in any trust asset shall be transferable or assignable by a Participant, or Retired Participant or their Beneficiaries, or be subject to alienation, encumbrance, garnishment, attachment, execution or levy of any kind, voluntary, or involuntary.  If any Participant attempts to alienate or assign such benefits or should such benefits be subject to any of the above legal or equitable processes, the Trustees shall take the necessary steps so that such benefits shall not be available to the Participant, and such benefits shall be used by the Trustees for the benefit of the Participant or for his Beneficiaries.

12.05    Neither the Employer nor the Trustees shall be responsible for the validity of any Policy or for the failure on the part of the Insurer to make any payment or to provide any benefit under any Policy, or for the action of any person which may render any Policy invalid or unenforceable.  The Employer and the Trustees shall not be responsible for any failure to perform or delay in performing any act occasioned by any Policy provision or restriction imposed by the Insurer or any other person.  In the event that it becomes impossible for the Employer or the Trustees to perform any act under the Plan, that act shall be performed which, in the judgment of the Employer or of the Trustees, will most nearly execute the provisions of the Plan.

12.06    In no event shall the Insurer be considered a party to the Plan or to any modification or amendment thereof or supplement thereto. Nothing in the Plan or in any modification, amendment or supplement thereto shall in any way be construed to enlarge, change, vary, or in any way affect the obligations of the Insurer as expressly provided in the Policies.  It is understood that the Insurer may deal with the Trustees alone in accordance with the terms and conditions of the Policies and in such manner as the Trustees and the Insurer shall agree, without the consent of any other person or persons interested in the Plan.  The Insurer shall not be required to examine the provisions of the Plan or any modification, amendment or supplement thereto. The Insurer shall not be responsible for the failure of the Trustees to perform their duties as such or for the application or disposition of any money paid or to be paid to the Trustees; and such payment shall fully discharge the Insurer for the amount paid.

12.07    Anything to the contrary herein contained notwithstanding, if an
         Employer has adopted this Plan and Agreement as a Restatement of a
         previously adopted Plan other than the GUARDIAN (ERISA) DEFINED
         BENEFIT PROTOTYPE PENSION PLAN (Item "C" of the Introduction to the
         Adoption Agreement) and such previously adopted Plan has been funded
         in part prior to the Effective Date of the Restatement with insur-
         ance Policies or Annuity Contracts issued by an insurance company
         other than the Insurer named herein, such prior insurance Policies
         and Annuity Contracts may be continued in force by the Trustees as
         premium paying.

12.08    Except as provided in Section 12.10, under no circumstances shall
         any part of the corpus or income of the Plan be used for, or
         diverted to, purposes other than for the exclusive benefit of the
         Employees and Beneficiaries and to defray reasonable expenses of
         administration.  The Plan shall at all times be interpreted and
         administered in accordance with the applicable provisions of the
         Internal Revenue Code of 1954, as now in effect or as hereafter
         amended, or of any other applicable statute.  Any funds contributed
         to the Plan, and any asset of the Plan shall not revert to, or be
         used by or for the benefit of the Employer, except as provided in
         Section 12.10.

12.09    The Plan embodied herein shall be construed according to the laws
         of the State in which the Employer has its principal office.

12.10    (a)  Anything to the contrary herein contained notwithstanding,
              if the District Director of Internal Revenue having juris-
              diction over the Employer shall disapprove initially the
              Employer's participation in the Plan for all tax purposes
              within the time limit set for such action by the Insurer,
              the Plan shall be of no force or effect as to the Employer,
              and without the assent of any other party the Employer
              shall be entitled to recover all contributions paid into
              the Plan, with the exception of the term cost of any inter-
              vening life insurance protection, any expense or commission
              incurred by the Insurer, and other administrative expenses
              incurred by the Trustees.  Such recovery must be completed
              not more than one year after the initial denial of qualifi-
              cation of the Plan.

         (b)  In the case of a contribution which is made by an Employer by a
              mistake of fact, Section 12.08 shall not prohibit the return of
              such contribution within one year of the time it is made.

         (c)  If a contribution is conditioned on the deductibility of the
              contribution under Section 404 of the Internal Revenue Code of
              1954, then to the extent the deduction is disallowed, Section
              12.08 shall not prohibit the return to the Employer of such
              contribution (to the extent disallowed) within one year after
              the disallowance of the deduction.

12.11    If, after initial approval of this Plan by the District Director of Internal Revenue, the Employer at a later date fails to retain its qualified status, he shall no longer be regarded as participating in this pre-approved Prototype Plan, and his Plan shall be regarded as an individually drawn plan.

12.12    The Trustees shall provide adequate notice in writing to any Participant or Beneficiary whose claim for benefits has been denied, setting forth the specific reasons for such denial written in a manner calculated to be understood by the Participant. The Trustees shall afford a reasonable opportunity to any Participant whose claim for benefits has been denied for a full and fair review by at least one Trustee of the decision denying the claim.

12.13    All employees of all corporations which are members of controlled groups of corporations (as defined in Section 414(b) of the Code) and all employees of all trades and businesses, whether or not incorporated, which are under common control (as defined in Section 414(c) of the Code) shall be treated as the employees of one Employer. All Years of Service with other members of a controlled group of corporations or with other trades or businesses under common control shall be credited for purposes of determining an employee's eligibility to participate or his or her nonforfeitable percentage of his or her Accrued Benefit under the Plan.

### ARTICLE XIII

AUXILIARY INVESTMENT FUND

The following provisions of this Article XIII shall apply solely in the event the Employer selects a Combination Plan, designated in the Adoption Agreement.

13.01    The Trustees shall maintain an Auxiliary Investment Fund for the purpose of accumulating funds necessary for the exercise of the annuity options at retirement date. The Trustees shall invest and reinvest the principal and income of the Auxiliary Investment Fund, without distinction between principal and income, in such securities or in such property, real or personal, wherever situated, as the Trustees may deem advisable, including, but not limited to, stocks, common or preferred, bonds and mortgages, mutual funds and other evidences of indebtedness or ownership. In making such investments, the Trustees shall not be restricted to securities or other property of the character authorized or required by applicable law from time to time for trust investments, but shall be controlled by the provisions of Sections 11.04 and 11.05.

13.02    The Trustees shall have the following powers and authority in the administration and investment of the Auxiliary Investment Fund:

T B

12.11    If, after initial approval of this Plan by the District Director of Internal Revenue, the Employer at a later date fails to retain its qualified status, he shall no longer be regarded as participating in this pre-approved Prototype Plan, and his Plan shall be regarded as an individually drawn plan.

12.12    The Trustees shall provide adequate notice in writing to any Participant or Beneficiary whose claim for benefits has been denied, setting forth the specific reasons for such denial written in a manner calculated to be understood by the Participant. The Trustees shall afford a reasonable opportunity to any Participant whose claim for benefits has been denied for a full and fair review by at least one Trustee of the decision denying the claim.

12.13    All employees of all corporations which are members of controlled groups of corporations (as defined in Section 414(b) of the Code) and all employees of all trades and businesses, whether or not incorporated, which are under common control (as defined in Section 414(c) of the Code) shall be treated as the employees of one Employer. All Years of Service with other members of a controlled group of corporations or with other trades or businesses under common control shall be credited for purposes of determining an employee's eligibility to participate or his or her nonforfeitable percentage of his or her Accrued Benefit under the Plan.

ARTICLE XIII

AUXILIARY INVESTMENT FUND

The following provisions of this Article XIII shall apply solely in the event the Employer selects a Combination Plan, designated in the Adoption Agreement.

13.01    The Trustees shall maintain an Auxiliary Investment Fund for the purpose of accumulating funds necessary for the exercise of the annuity options at retirement date. The Trustees shall invest and reinvest the principal and income of the Auxiliary Investment Fund, without distinction between principal and income, in such securities or in such property, real or personal, wherever situated, as the Trustees may deem advisable, including, but not limited to, stocks, common or preferred, bonds and mortgages, mutual funds and other evidences of indebtedness or ownership. In making such investments, the Trustees shall not be restricted to securities or other property of the character authorized or required by applicable law from time to time for trust investments, but shall be controlled by the provisions of Sections 11.04 and 11.05.

13.02    The Trustees shall have the following powers and authority in the administration and investment of the Auxiliary Investment Fund:

- 30 -

TB

(a)  to purchase, or subscribe for, securities or other property, and to retain the same in trust;

(b)  to sell, exchange, convey, transfer or otherwise dispose of securities or other property held by them by private contract or at public auction. No person dealing with the Trustees shall be bound to see to the application of the purchase money or to inquire into the validity, expediency, or propriety of any such sale or other disposition;

(c)  to vote upon stocks, bonds or other securities; to give general or special proxies or powers of attorney with or without power of substitution; to exercise conversion privileges, subscription rights, or other options, and to make payments incidental thereto; to oppose, or to consent to, or otherwise participate in, corporate reorganizations or other changes affecting corporate securities, and to delegate discretionary powers, and to pay assessments or charges in connection therewith; and generally to exercise any of the powers of an owner with respect to stocks, bonds, securities or other property held as part of the Auxiliary Investment Fund;

(d)  to cause securities or other property held as part of the Auxiliary Investment Fund to be registered in their own names as Trustees, or in the name of one or more of their nominees, and to hold investments in bearer form, but the books and records of the Trustees shall at all times show that all such investments are part of the Auxiliary Investment Fund;

(e)  to borrow or raise money for the purpose of the Trust in such amount, and upon such terms and conditions, as the Trustees may deem advisable; and for any sum so borrowed, to issue their promissory note as Trustee, and to secure the repayment thereof by pledging all, or any part, of the Auxiliary Investment Fund; and no person lending money to the Trustees shall be bound to see to the application of the money lent or to inquire into the validity, expediency, or propriety of any such borrowing;

(f)  to keep such portion of the Auxiliary Investment Fund in cash as the Trustees may, from time to time, determine to be in the best interest of this Trust, without liability for interest thereon; and

(g)  under no circumstances shall the Trustees maintain the indicia of ownership of any Trust assets outside the jurisdiction of the district courts of the United States; and

(h)  under no circumstances shall the Trustees purchase any form of security issued by the Employer, or any real property owned by or leased to the Employer.

- 31 -

13.03    The Trustees shall value the Trust assets and liabilities at fair market value not less frequently than annually as of the last day of each Plan Year for the purpose of determining what contributions the Employer must make for the subsequent Plan Year.

13.04    The Trustees shall have the power to enter into arrangements for the deposit of funds with an Insurer, bank or trust company, and in connection therewith:

(a)    to authorize such depositary to act as custodian of the cash, securities or other property comprising such funds;

(b)    to authorize such depositary to convert the funds in whole or in part into, or to invest and reinvest the same in, securities of any kind and nature whatsoever;

(c)    if deemed advisable, to authorize such depositary to invest such funds in any trust fund created and maintained by such depositary as trustee for the collective investment of funds of trusts for employee benefit plans qualified under Section 401(a) of the Internal Revenue Code of 1954 (or corresponding provisions of any Federal review law at the time in effect), the instrument creating such collective trust, together with any amendments, modifications or supplements thereto at the time in effect being hereby effective when and as any such investment is made, incorporated in and made a part hereof; and

(d)    to provide for the payment to the depositary of reasonable compensation for its services.

13.05    The Trustees shall have the authority to appoint an investment manager or managers to manage assets of the Trust, and such appointment may include the power to acquire and dispose of such assets. Such investment managers shall be entitled to reasonable compensation for their services, payable from Trust assets.

13.06    If Item 11(C) of the Adoption Agreement has been selected, then separate employee accounts will be maintained as part of the Auxiliary Investment Fund by the Trustees solely for the purpose of determining a Participant's pre-retirement death benefit. These accounts will reflect both the participant's Actuarially Adjusted Allocable Portion of the Auxiliary Investment Fund and the portion of the Employer's contribution attributable to him/her.

ARTICLE XIV

LIMITATIONS ON BENEFITS

14.01    This section applies only to Employers who have never maintained and do not at any time maintain any qualified plan in addition to this Plan.

13.03    The Trustees shall value the Trust assets and liabilities at fair
market value not less frequently than annually as of the last day
of each Plan Year for the purpose of determining what contributions
the Employer must make for the subsequent Plan Year.

13.04    The Trustees shall have the power to enter into arrangements for
the deposit of funds with an Insurer, bank or trust company, and
in connection therewith:

(a)    to authorize such depository to act as custodian of the cash,
securities or other property comprising such funds;

(b)    to authorize such depository to convert the funds in whole or
in part into, or to invest and reinvest the same in, securities
of any kind and nature whatsoever;

(c)    if deemed advisable, to authorize such depository to invest
such funds in any trust fund created and maintained by such
depository as trustee for the collective investment of funds
of trusts for employee benefit plans qualified under Section
401(a) of the Internal Revenue Code of 1954 (or corresponding
provisions of any Federal review law at the time in effect),
the instrument creating such collective trust, together with
any amendments, modifications or supplements thereto at the
time in effect being hereby effective when and as any such
investment is made, incorporated in and made a part hereof;
and

(d)    to provide for the payment to the depository of reasonable
compensation for its services.

13.05    The Trustees shall have the authority to appoint an investment
manager or managers to manage assets of the Trust, and such
appointment may include the power to acquire and dispose of such
assets.  Such investment managers shall be entitled to reasonable
compensation for their services, payable from Trust assets.

13.06    If Item 11(C) of the Adoption Agreement has been selected, then
separate employee accounts will be maintained as part of the
Auxiliary Investment Fund by the Trustees solely for the purpose
of determining a Participant's pre-retirement death benefit.  These
accounts will reflect both the participant's Actuarially Adjusted
Allocable Portion of the Auxiliary Investment Fund and the portion
of the Employer's contribution attributable to him/her.

ARTICLE XIV

LIMITATIONS ON BENEFITS

14.01    This section applies only to Employers who have never maintained
and do not at any time maintain any qualified plan in addition
to this Plan.

- 32 -

(a)  If an Employer has never maintained and does not at any time maintain another qualified plan in addition to this Plan, the annual benefit otherwise payable under this Plan to a Participant at any time shall not exceed the Maximum Permissible Amount.

(b)  Where the Participant makes employee contributions pursuant to the terms of this Plan, in no event may the lesser of (a) the amount of the employee contributions in excess of 6% of the Participant's Compensation, or (b) one-half of the employee contributions, exceed the lesser of (i) $10,000, or (ii) 10% of the Participant's Compensation for any Limitation Year.

(c)  The limitation described in 14.01(a) shall be deemed satisfied as to any Participant if the annual benefit otherwise payable under this Plan to such Participant does not exceed $1,000 multiplied by such Participant's number of Years of Service (not to exceed 10) with the Employer.

(d)  In the case of a Participant who was an active Participant under this Plan on or before October 2, 1973, such Participant's annual benefit payable under this Plan shall be equal to the greater of:

( i)  the annual benefit payable under the limitations described in 14.01(a), or

(ii)  the Participant's Pre-1974 Plan Benefit under this Plan.  Where the Participant makes employee contributions to this Plan, such Pre-1974 Plan Benefit may not exceed the product of (1) the Maximum Permissible Amount, and (2) 1.4 minus the Participant's Defined Contribution Plan Fraction.

14.02  This section applies only to Employers who, in addition to this Plan, maintain one or more plans which are either qualified defined benefit plans or qualified defined contribution plans.

(a)  If, in addition to this Plan, the Employer maintains one or more plans which are either qualified defined benefit plans or qualified defined contribution plans, the annual benefit payable under this Plan to a Participant at any time shall be limited in accordance with the limitations specifically provided by the Employer in Item 16 of the Adoption Agreement.

14.03  Definitions:

(a)  Annual Additions — The sum of the following amounts allocated on behalf of a Participant for a Limitation Year:

( i)  all Employer contributions,

- 33 -

𝒯𝑅

( ii)  all forfeitures, and

(iii)  the lesser of (a) one-half of all employee contribu-
tions, and (b) the amount of all employee contributions
in excess of 6 per cent of such Participant's actual
Compensation.

For any year beginning prior to January 1, 1976, the amount
described in (iii)(b) shall be the aggregate amount of employee
contributions for such years during which the employee was an
active Participant in this Plan in excess of 10 per cent of such
Participant's aggregate Compensation for all such years divided
by the number of years beginning prior to January 1, 1976 during
which the employee was an active Participant in this Plan.

(b)  Defined Contribution Plan Fraction - A fraction, the numerator
of which is the sum of the Annual Additions to the Participant's
accounts under all defined contribution plans of the Employer
for the current and all prior Limitation Years plus the sum of
the Annual Additions attributable to the Participant's employee
contributions to this and all other defined benefit plans of
the Employer for the current and all prior Limitation Years, and
the denominator of which is the sum of the Annual Additions
which would have been made for the Participant for the current
and all prior Limitation Years if in each such year the Annual
Additions equalled the lesser of (i) $25,000 (or such larger
amount prescribed for such year by the Secretary of the Treasury
or his delegate), or (ii) 25 per cent of the Participant's
Compensation for such year.  The aggregate amount in the
numerator of this fraction on account of years beginning prior
to January 1, 1976 may not exceed the aggregate amount in the
denominator of this fraction for all such years.

(c)  Employer - The Employer that adopts this Plan.  In the case of
a group of employers which constitutes a controlled group of
corporations (as defined in Section 414(b) of the Code as
modified by Section 415(h)) or which constitutes trades or
businesses (whether or not incorporated) which are under
common control (as defined in Section 414(c) as modified by
Section 415(h)), all such employers shall be considered a
single employer for purposes of applying the limitations of
this article.

(d)  Limitation Year - A calendar year (or any other 12-consecutive
month period adopted for all plans of the Employer pursuant
to a written resolution adopted by the Employer).

(e)  Maximum Permissible Amount - The Maximum Permissible Amount
with respect to any Participant shall be the lesser of (A)
$75,000* actuarially reduced to reflect distributions prior
to age 55, or (B) 100% of the Participant's average Compensa-
tion for the high three consecutive calendar years of service

- 34 -

during which the participant was an active Participant in the Plan. The Maximum Permissible Amount shall be adjusted, where necessary, as follows: (i) Where the annual benefit is payable under this Plan to a Participant in a form other than a straight life annuity or a qualified Joint and Survivor Annuity, the Maximum Permissible Amount shall be adjusted to the equivalent of a straight life annuity beginning at the same age on the basis of reasonable actuarial assumptions; (ii) Where the annual benefit is payable under this Plan to a Participant who has less than 10 Years of Service with the Employer, the Maximum Permissible Amount shall be multiplied by a fraction, the numerator of which is the Participant's number of Years of Service with the Employer, and the denominator of which is 10.

(f) Pre-1974 Plan Benefit - In the case of an employee who was an active Participant in a defined benefit plan of the Employer on or before October 2, 1973, the lesser of (i) 100% of the Participant's total annual rate of Compensation on the earlier of October 2, 1973, or the date on which the Participant separated from the Service of the Employer, or (ii) the benefit which would have been payable under the terms and conditions of the Plan (assuming no later changes in Compensation) as in effect on the earlier of October 2, 1973, or the date on which the Participant separated from the Service of the Employer.

*This dollar amount was increased to $80,475 for 1976 plan anniversaries, to $84,525 for 1977 plan anniversaries and to $90,150 for 1978 plan anniversaries. The Sponsor will amend the Plan to reflect future cost of living increases in the dollar amounts as prescribed by the Secretary of the Treasury or his delegates.