# Succeeding Plan Document

ADOPTION AGREEMENT TO

THE KDACO DEFINED BENEFIT PENSION PLAN AND TRUST

Restatement

(11)

T. D

THE KDACO DEFINED BENEFIT PENSION PLAN AND TRUST

ADOPTION AGREEMENT

The Employer named below hereby establishes a defined benefit pension plan pursuant to the provisions of the Internal Revenue Code of 1954, as amended by the Employee Retirement Income Security Act of 1974, the Tax Equity and Fiscal Responsibility Act of 1982, the Deficit Reduction Act of 1984 and the Retirement Equity Act of 1984, by adopting the KDACO Defined Benefit Pension Plan and Trust (the "Document"). This Adoption Agreement and the Document together constitute a plan (the "Plan") and trust (the "Trust") for the exclusive benefit of participating Employees.

THE EMPLOYER

Name .... *H.H. Aerospace Design Co., Inc.* ............................

Address ...... *Civil Air Terminal* ...............................
............... *Bedford, MA    01730* ..........................

Employer Identification Number .*13.-.2750910* Plan Number .... *001* ......

Date Incorporated (or business commenced) ... *3/73* ..........

Fiscal Year End for Federal Income Tax Purposes ... *March  31* ..............

PLAN NAME

... *H.H. Aerospace Design Co., Inc.* ...Defined Benefit Pension Plan

This Adoption Agreement is effective ...... *April 1, 1984* ............

This Adoption Agreement establishes (select one):

____    a new plan.

__X__    a successor to another plan

    *H.H. Aerospace Design Co., Inc.* ......
    *Defined Benefit Plan* ...............

which was adopted on .... *3/30/79* ............

____    an amendment and restatement of a previous Adoption Agreement under the KDACO DEFINED BENEFIT PENSION PLAN AND TRUST

1

# ARTICLE I

## DEFINITIONS

1.1  "Accrued Benefit" shall be (select one):

( X ) a.  The retirement benefit the Participant would receive at his Normal
Retirement Date as provided in Section 5.1 of the Document, based on
the Average Monthly Compensation at date of determination, multiplied
by a fraction, not greater than one (1), the numerator of which is
the Participant's total number of Plan Years of Service and the
denominator of which is the aggregate number of Plan Years of Service
the Participant could have accumulated if he continued his employment
until his Normal Retirement Date.

( . ) b.  The retirement benefit the Participant would receive at his Normal
Retirement Date as provided in Section 5.1 of the Document, based on
the Average Monthly Compensation at date of determination, multiplied
by a fraction, not greater than one (1), the numerator of which is
the Participant's total number of Years of Service and the denominator
of which is the aggregate number of Years of Service the Participant
could have accumulated if he continued his employment until his Normal
Retirement Date.

(   ) c.  A benefit which equals the sum of a Participant's credited Accrued
Benefit Units.  A Participant is credited with an Accrued Benefit
Unit for each Plan Year of Service he completes as a member of this
Plan.  If this is an amendment or restatement of a predecessor plan,
his sum of Accrued Benefit Units at the effective date of this Adoption
Agreement shall equal his Accrued Benefit as of such effective date.
The amount of the Accrued Benefit Unit credited to a participant for
a given Plan Year of Service is the normal pension Actuarially
Equivalent to the individual level annual contribution assumed due
with respect to him on such date.  Such contribution is an amount
which, if assumed due then and on each subsequent anniversary, would
be the Actuarial Equivalent (as defined in Section 1.3 of the Document)
of the excess of his projected normal retirement benefit over the
sum of the Accrued Benefit Units already credited to him.  A subsequent
anniversary is any anniversary after the calculation date and prior to
the participant's Normal Retirement Date.  In the case of a short Plan
Year, such contribution shall be reduced in the same proportion that the
length of such short Plan Year bears to the twelve (12) months.  In no
case will the sum of Accrued Benefit Units as of any given point in time
be less than an Accrued Benefit calculated in the manner outlined
in option (a) above.

(   ) d. Other (specify)......................................................
........................................................................
........................................................................
........................................................................
........................................................................

2



It is provided, however, that, if the percentage entered in Section 5.1(b) of this Adoption Agreement is greater than 0%, the Accrued Benefit shall not exceed the amount determined pursuant to option (b) above.

1.2  "Actuarial Equivalent" - For purposes of Definition 1.3 of the Document, the following assumptions are to be used:

Mortality:..........1971   Group Annuity Mortality Table..............
.....................................................................

Interest:.....6%.....

1.3  "Administrator" is designated to be .................(the Employer if left blank)

1.4  "Average Monthly Compensation" means the monthly Compensation of a Participant averaged over the ..5... consecutive Years of Service which produce the highest monthly average subject to the following conditions:

( ) a. Years of Service prior to participation in the Plan shall be excluded.

( ) b. the computation shall exclude the ........ years immediately preceding Normal Retirement Date.

( ) c. the computation shall include only the last ten (10) completed years of participation.

(X) d. the computation shall include only the last ten (10) completed years of employment.

If a Participant has less than ..5. Years of Service, his Average Monthly Compensation will be based upon his monthly Compensation during his Months of Service from his date of employment to his date of termination.  Compensation subsequent to termination of participation pursuant to Section 3.3 of the Document shall not be recognized.

1.5  "Compensation" with respect to any Participant means:  (elect a, b, c or d)

( ) a. earnings for the taxable year ending with or within the Plan Year which are subject to tax under Section 3101(a) of the Internal Revenue Code; without the dollar limitation of Section 3121(a).

( ) b. W-2 earnings for the taxable year ending with or within the Plan Year

( ) c. compensation (as that term is defined for Section 415 purposes) for the Limitation Year ending with or within the Plan Year

(X) d. total compensation for the Limitation Year that is subject to tax under Section 3101(a) of the Internal Revenue Code without the dollar limitation of Section 3121(a)

which is (elect one):

3

( X ) e. actually paid within such year; or
( ) f. paid and accrued within such year.

Limitation Year means the twelve month period from **April** **1**
to **March** **31** .
   (month)                        (day)        (month)       (day)

1.6 "Covered Compensation" (complete only if Plan is integrated)

a. Table to use:

( ) 1. Covered Compensation Table I under the Social Security Act in effect on the earlier of a Participant's termination or retirement date.

( ) 2. Covered Compensation Table I under the ..... Social Security Act (maximum of $.........).

( ) 3. $......... for all Participants.

b. Level shall be determined:

( ) 1. using calendar year of Participant's 65th birthday.

( ) 2. as if a Participant had reached age 65 as of his Normal Retirement Date.

1.7 "Early Retirement Date" means, prior to a Participant's Normal Retirement Date:

( ) a. the date of a Participant's retirement prior to Normal Retirement Date and after his attainment of age ....  and completion of ...... Years of Service.

(X) b. Normal Retirement Date; i.e., there is no Early Retirement allowed under this Plan.

If option (a) is checked, the Early Retirement Age of the Participant is the date on which he meets the age and service requirements specified in such option.  If option (b) is checked, the Early Retirement Age of the Participant is his Normal Retirement Age.

1.8 "Eligible Employee" for purposes of this Plan shall mean:

a. (X ) all Employees who have satisfied the eligibility requirements.
b. ( ) all Employees who have satisfied the eligibility requirements except those checked below.

      1. ( ) Employees paid by commissions only.
      2. ( ) Employees hourly paid.
      3. ( ) Employees paid by salary.
      4. ( ) Employees whose employment is governed by a collective bargaining agreement under which retirement benefits were the subject of good faith bargaining.
      5. ( ) Employees who are within 5 years of the Plan's Normal Retirement date, as specified in            , as of the date of hire.
      6. ( ) Other _____

4

NOTE: For purposes of this section, the term "Employee" shall include, unless otherwise specified, all Employees of this Employer or any employer required to be aggregated with this Employer under Code Section 414(b), (c), or (m), and individuals required to be considered Employees of of any such employer under Code Section 414(n).

1.9 "Fiscal Year" means the Employer's accounting year of twelve months commencing on ..April..)..... and ending on ..March 31......; (if applicable) except for the first Fiscal Year which commenced.................................

1.10 "Late Retirement Date" shall mean (select one)

( ) a. the Anniversary Date coinciding with or next following a Participant's actual Retirement Date
(X) b. the Participant's actual Retirement Date
( ) c. Other (specify) ................................................
.......................................................

after having reached his Normal Retirement Date.

1.11 "Normal Retirement Age" means the Participant's ..65.. birthday (maximum 65) or the Participant's ..10.. (maximum 10th) anniversary of becoming a Participant, if later.

1.12 "Normal Retirement Date" means (select one):

( ) a. the first day of the month coinciding with or next following
( ) b. the Anniversary Date nearest
( ) c. the Anniversary Date coinciding with or next following
(X) d. Other (specify) the day coinciding with................
.......................................................

the Participant's Normal Retirement Age.

1.13 "Plan Year" means for the first Plan Year the ..12.. (not to exceed 12) month period beginning on ..April 1, 1979.... (specify month, day and year) and ending on ..March 31, 1980.(specify month, day and year). For all subsequent Plan Years the Plan Year is the Plan's accounting year of twelve (12) months commencing on ...April 1......... and ending on ..March 31..............

1.14 "Year of Service" – For purposes of Section 1.56 of the Document, 1000.. Hours of Service in a twelve (12) consecutive month computation period shall constitute a Year of Service. Years of Service with a predecessor Employer (select one)

( ) a. shall not be recognized for purposes of this definition.

( ) b. ...............................(name of predecessor Employer) shall be recognized for purposes of this definition.

( ) c. ...............................(name of predecessor Employer) during the time a qualified plan was maintained shall be recognized for purposes of this definition. (This option must be elected if the Employer maintains a plan of a predecessor Employer.)

5

## ARTICLE II

### TOP HEAVY AND ADMINISTRATION

2.1  For purposes of determining the present value of accrued benefits solely
     in reference to Section 2.2(g) of the Document, the following actuarial
     assumptions shall be used:

   ( X) a.  the actuarial assumptions as defined in Section 1.3 of the Document.

   (  ) b.  1. Mortality .....................................................
            ...............................................................
            ...............................................................

            2. Interest ....................................................

6

ARTICLE III

ELIGIBILITY

3.1  CONDITIONS OF ELIGIBILITY

An Employee not in one of the excluded classes of employment checked under Section 1.8 of this Adoption Agreement shall become a Participant on (select one):

( X ) a. The first day of the Plan Year nearest the day on which

( ) b. The Entry Date coincident with or next following the day on which

the Employee has met the requirements of both (I) and (II) below:

(I)   he has attained age ..........25.... (not to exceed 25), in respect of Plan Years beginning before 1985, or he has attained age ...21.... (not to exceed 21), in respect of Plan Years beginning after 1984.

(II)  he has completed ........ (not to exceed 1 unless full and immediate vesting is provided in Section 5.8 of this Adoption Agreement and not to exceed 3 in any case) Year(s) of Service.

"Entry Date" means (select one):

( ) a. (Monthly Entry Dates)

The effective date of this Adoption Agreement and the first day of each calendar month beginning after such effective date.

( ) b. (Semi-Annual Entry Dates)

The effective date of this Adoption Agreement, the first day of each Plan Year beginning after such effective date and the corresponding day of the sixth calendar month ending before the first day of each such Plan Year, but no Entry Date shall occur before such effective date.  The corresponding day of a calendar month is the day in such month which bears the same number as the first day of each such Plan Year, or, if there is no such day in such month, the last day of such month.  (For example, if a Plan Year begins on August 1, 15 or 31, the corresponding day of the sixth calendar month ending before the first day of such Plan Year is February 1, 15 or 28 -- 29 in a leap year -- respectively.)

7

## ARTICLE IV
## CONTRIBUTION AND ALLOCATIONS

4.1   VOLUNTARY EMPLOYEE CONTRIBUTIONS

Voluntary Employee Contributions are (select one):

(  ) a. allowed under the Plan.

(X) b. not allowed under the Plan.

4.2   QUALIFIED VOLUNTARY EMPLOYEE CONTRIBUTIONS

Qualified Voluntary Employee Contributions are (select one):

(  ) a. allowed under the Plan.

(X) b. not allowed under the Plan.

4.3   DIRECTED INVESTMENT ACCOUNTS

Directed Investment Accounts are (select one):

(  ) a. allowed under the Plan, subject to the provisions of Section 4.5
         of the Document.

(X) b. not allowed under the Plan.

(  ) c. allowed under the Plan in respect to (check as many as applicable)

        (  ) Qualified Voluntary Employee Contributions accounts;

        (  ) Voluntary Employee Contributions accounts;

        (  ) Rollover accounts;

All other accounts are not allowed to be treated as Directed Investment
Accounts under the Plan.

8

ARTICLE V

5.1  The Normal Retirement Benefit formula is equal to:

Formula:

The amount of monthly retirement benefit to be provided for each
Participant who retires on his Normal Retirement Date (which benefit
is herein called his Normal Retirement Benefit), shall be equal to 45%
*Average Monthly Compensation*                    , offset by 66.7% of the
Primary Social Security Benefit in effect *at the time of the Participant's
retirement (current).*          The minimum monthly retirement benefit
shall be $20 for any Participant entitled to a benefit as described
above.

"Primary Social Security Benefit" means the estimated monthly amount
payable to the Participant at his Normal Retirement Date under Title II
of the Social Security Act determined as of January 1 in which occurs
the Participant's Normal Retirement Date or earlier termination of
employment.  If a Participant's employment terminates prior to his
Normal Retirement Date his Primary Social Security Benefit is determined
by assuming that his annual Compensation rate would continue at the same
rate until his Normal Retirement Date.  Furthermore, a Participant's
Primary Social Security Benefit shall be determined by taking his
Compensation at the time of his employment and applying a salary scale,
projected backwards, reflecting the actual change in the average wage
from year to year as determined by the Social Security Administration.
In determining a Participant's monthly retirement benefit or deferred
Vested benefits under the Plan, the offset required on account of his
Primary Social Security Benefit shall be made even though at the time
such determination is made, the Participant is not receiving or eligible
to receive the Primary Social Security Benefit on which such offset is
based.  In no event will a Participant's Plan benefits be reduced on
account of any increase in the benefit levels payable under Title II of
the Social Security Act, if such increase occurs after the earlier of the
date of first receipt of such benefits or the date of the Participant's
termination of employment with the Employer.  In the case of any Participant
whose retirement or other termination of employment occurs prior to his
attainment of age 65 years, the Primary Social Security Benefit otherwise
determined in accordance with this Section shall be multiplied by a fraction,
not to exceed 1, the numerator of which is his number of Years of Service
and the denominator of which is the number of Years of Service he would have
completed had he continued in the employ of the Employer until he attained
age 65 years.  If payment of a Participant's monthly retirement benefit or
deferred Vested benefit is to commence prior to his attainment of age 65
years, the Participant's Primary Social Security Benefit (adjusted as
provided in the next preceding sentence) shall be reduced by one-fifteenth
for each of the first five years and one-thirtieth for each of the next five
years by which the commencement of his benefits precedes his attainment of
age 65 years, and shall be reduced actuarially for each additional such
year thereafter.

*of S.S. As in
effect @ NRD
out @ DOT*

9

Except, however, a Participant may provide the Administrator with appropriate documentation of his actual salary history prior to the time of his employment and the Primary Social Security Benefit shall be adjusted accordingly. Such documentation must be provided to the Administrator within 180 days after the later of (a) the Participant's separation from service by retirement or otherwise, or (b) the time when the Participant is notified of the retirement benefit to which he is entitled.

9(a)

5.2  EARLY RETIREMENT BENEFIT REDUCTION

The Early Retirement benefit commencing on the first day of the month coinciding with or next following Early Retirement Date shall be equal to:

(  ) a.  the Accrued Benefit, reduced by 1/15 for each of the first n (where n equals the lesser of 5 or the number of years by which the 60th birthday of the Participant precedes his Normal Retirement Age) years, reduced by 1/30 for each of the next five (5) years, and reduced actuarially for each additional year thereafter that the date Early Retirement Benefits commence precedes the Participant's Normal Retirement Date.

(  ) b.  the Actuarial Equivalent of his Accrued Benefit.

(X) c.  This Plan does not provide for a retirement date prior to Normal Retirement Date.  In the event a Participant retires prior to his Normal Retirement Date, his benefit shall be the benefit payable per Section 5.6(a) of the Document.

(  ) d.  Other ...................................................

5.3  Normal Form of Benefit

The normal form under which each Participant shall receive his retirement benefit shall be:

(  ) a.  a monthly pension commencing on his Retirement Date and continuing for life.

(X) b.  a monthly pension commencing on his Retirement Date and continuing for life.  If a Retired Participant dies prior to the completion of ..120. (not to exceed 240) monthly payments, such monthly payments shall be continued to the Retired Participant's Beneficiary until the number of monthly payments made to the Retired Participant and to the Beneficiary shall total the number designated above in this Section 5.3(b).

(  ) c.  a monthly pension commencing on his Retirement Date and continuing for for his life and the life of his spouse (100% joint and survivor annuity).  A Participant who is unmarried at the time benefits become payable under this Agreement shall be entitled to a monthly pension determined as if Section 5.3(b) had been checked and the designated number of monthly payments were ........(not to exceed 240).

10

5.4  Late Retirement Benefit

The retirement benefit shall be determined as follows:

(X) a. No retirement benefit will be paid to the Participant until he actually retires, and no further contributions toward current costs on behalf of such an Employee will be made past his Normal Retirement Date.  The retirement benefit commencing at his actual Retirement Date shall be the Actuarial Equivalent of the benefit he would have received at his Normal Retirement Date.

(  ) b. The Participant shall commence receiving the payment of his monthly retirement benefits provided for in the Plan as though he had actually retired

(  ) c. No retirement benefit will be paid to the Participant until he actually retires.  The retirement benefit commencing at his actual Retirement Date shall be the same monthly retirement benefit that he would have received at his Normal Retirement Date.

(  ) d. The lump sum Actuarial Equivalent at Normal Retirement Date shall thereafter share proportionally in the income or losses of the Trust Fund or his specific fund if it is segregated by the Trustees in their discretion during the time he is actually employed.  At actual retirement of such Participant, his retirement benefit shall be adjusted to reflect the income or losses of the Trust or his specific fund from such Participant's Normal Retirement Date to his actual Retirement Date.  In no event shall a Participant receive a benefit less than the amount due at his Normal Retirement Date.

5.5  TOP HEAVY MINIMUM BENEFITS (Must be completed):

5.5(a)  MINIMUM BENEFITS FOR NON-KEY EMPLOYEES PARTICIPATING BOTH IN THIS PLAN AND A DEFINED CONTRIBUTION PLAN INCLUDED IN A TOP HEAVY REQUIRED AGGREGATION GROUP

(X) 1. Section 5.2(i)(1) of the Document shall apply.  (Minimum benefits shall be provided under this Plan.)

(  ) 2. Section 5.2(i)(2) of the Document shall apply.  (Minimum benefits shall be provided by the defined contribution plan, except as provided in the second sentence of Section 5.2(i)(2)(a) of the Document.)

5.5(b)  EXTRA MINIMUM BENEFIT TO PROVIDE HIGHER CODE SECTION 415 LIMITATIONS

(  ) 1. Section 5.2(h)(1) of the Document shall apply if minimum benefits are to be provided under this Plan or Section 5.2(i)(2)(b) shall apply if minimum benefits are to be provided under the defined contribution plan.  (Check this option to provide the extra minimum benefit required by Sections 6.6(c)(8) and 6.6(d) of the Document to provide higher Code Section 415 limitations.)

(X) 2. Section 5.2(h)(2) of the Document shall apply.  (Check this option if the extra minimum benefit required by Sections 6.6(c)(8) and 6.6(d) of the Document to provide higher Code Section 415 limitations is not to be provided.)

11

5.6  DISABILITY RETIREMENT BENEFIT

Pursuant to Section 5.4(a) of the Document, a qualified disabled Participant shall be entitled to receive (select one):

(  ) an amount equal to the Value of the Total Prior Contributions.

(X) the Present Value of his Accrued Benefit.

5.7  DEATH BENEFITS

NON-INSURED PLANS:  COMPLETE 5.7(a)
INSURED PLANS:  COMPLETE 5.7(b) and 5.7(c)


5.7(a)  Pursuant to Section 5.5(a) and 5.5(b)(I) of the Document, the death benefit payable a Participant's Beneficiary shall be

(  ) the Actuarial Equivalent of the Accrued Benefit.

(  ) the Value of the Total Prior Contributions.

5.7(b)  The total face amount of the life insurance policy or policies to be purchased for a Participant under Section 5.5(c) of the Document shall be ...(99.... (not to exceed 100) times the Participant's anticipated monthly retirement benefit payable commencing on his Normal Retirement Date.  It is provided, however, pursuant to Section 5.5(d) of the Document, that the purchase of a life insurance policy or policies under Section 5.5(c) of the Document shall be subject to such of the following conditions as are checked:

(  ) Insurance policies shall be purchased only for those Participants who have completed ..........: Plan Year(s) of Service.

(  ) Insurance policies shall not be purchased for those Participants who have attained Age ....... as of their effective date of participation in this Plan.

(  ) Additional insurance policies shall not be purchased for any Participant who has attained Age ..........

(  ) No insurance policies shall be purchased or surrendered until the change of coverage is at least $..........

12

5.7(c)  Pursuant to Section 5.5(e)(1) of the Document, the death benefit
payable a Participant shall be:

(  ) an amount equal to the Policy proceeds (the proceeds payable by reason
     of his death of the insurance policies purchased on his life in
     accordance with this Section 5.7 and Section 5.5 of the Document).

(  ) an amount equal to the Present Value of Accrued Benefit as of the
     Anniversary Date coinciding with or subsequent to death and any
     additional Policy proceeds.

(X) an amount equal to the Value of the Total Prior Contributions as
     of the Anniversary Date coinciding with or subsequent to death and
     any additional Policy proceeds.

(  ) an amount equal to the greater of the Present Value of Accrued
     Benefit as of the Anniversary Date coinciding with or subsequent to
     death or the Policy proceeds.

(  ) an amount equal to the greater of the Value of the Total Prior
     Contributions as of the Anniversary Date coinciding with or
     subsequent to death or the Policy proceeds.

5.8  VESTING SCHEDULE

The vesting schedule to be used in determining the non-forfeitable portion of a
Participant's account is (select one):

(  ) 100% vesting after ...... vesting years of service (not to exceed 10).

(X) Full and immediate vesting upon participation.

(  ) 4/40 Vesting - 40% vesting after 4 vesting years of service, adding 5% per
     year for the next 2 vesting years of service, and then adding 10% per year
     for each vesting year of service thereafter to a maximum of 100% vesting
     after 11 vesting years of service.

(  ) 2/20 Vesting - 20% vesting after 2 vesting years of service, adding 20% for
     each additional vesting year of service thereafter to a maximum of 100%
     vesting after 6 vesting years of service.

(  ) Other:

| Vesting Years of Service | Vesting % | |
|---|---|---|
| Less than 1 | _____ | |
| 1 | _____ | |
| 2 | _____ | |
| 3 | _____ | |
| 4 | _____ | |
| 5 | _____ | (At least 25%) |
| 6 | _____ | (At least 30%) |
| 7 | _____ | (At least 35%) |
| 8 | _____ | (At least 40%) |
| 9 | _____ | (At least 45%) |
| 10 | _____ | (At least 50%) |
| 11 | _____ | (At least 60%) |
| 12 | _____ | (At least 70%) |
| 13 | _____ | (At least 80%) |
| 14 | _____ | (At least 90%) |
| 15 or more | 100% | |

## 5.9 TOP-HEAVY VESTING SCHEDULE

The Top-Heavy Vesting Schedule is (select one):

(  ) 2/20 Vesting - 20% vesting after 2 vesting years of service, adding 20% for each additional vesting year of service thereafter to a maximum of 100% vesting after 6 vesting years of service.

(  ) 100% vesting after 3 vesting years of service.

(X) Vesting Schedule elected in Section 5.8 of the Adoption Agreement satisfies the Top Heavy requirements.

## 5.10 VESTING YEARS OF SERVICE EXCLUSIONS

Pursuant to Section 5.6(g) of the Document, the following Years of Service of a Participant in respect to the following shall be excluded:

(  ) Years of Service prior to ......................... (if the Plan is a new plan, insert the effective date of this Adoption Agreement; but if the Plan is a successor to another plan, insert the original effective date of such other plan.)

(  ) Years of Service prior to the vesting computation period in which an Employee attained his twenty-second birthday. For Plan Years beginning after December 31, 1984, "eighteenth" shall be substituted for "twenty-second" in the preceding sentence. However, only Participants who have completed one Hour of Service in the first Plan Year beginning after December 31, 1984 shall be retroactively credited with additional Years of Service for vesting purposes for those Years of Service completed between age 18 and age 22.

14

## ARTICLE VI

### LIMITATION OF BENEFITS

**6.1  EXCESSIVE BENEFIT ADJUSTMENT**

Pursuant to Section 6.6(e) of the Document, the Employer shall adjust the numerator of (select one):

( X ) the defined benefit fraction and hence Section 6.6(e)(1) of the Document shall be the operative Section.

( ) the defined contribution fraction and hence Section 6.6(e)(2) of the Document shall be the operative Section.

## ARTICLE VII

### TRUSTEE

**7.1  LOANS TO PARTICIPANTS**

Loans to Participants (check one):

( ) are permitted under the Plan, subject to the provisions of Section 7.4 of the Document.

( X ) are not permitted under the Plan.

## ARTICLE XI

**11.1  CONSTRUCTION OF AGREEMENT**

~~State~~/Commonwealth of. Massachusetts ..................... is designated for the purposes of Section 11.3 of the Document.

15

I D

The Employer hereby appoints as Trustee(s) for the pension plan:

Name....Alfred C.W. Daniels, Robert G. Stern, Richard L. Baltimore, Jr.

Address........Civil Air Terminal..................

..........Bedford, MA   01730.................

.............................................

effective as of the date the Employer signs this agreement contingent on the
written acceptance by the Trustee below.

IN WITNESS WHEREOF, the Employer and Trustee have executed this Adoption Agreement
and Plan constituting the written Plan and Trust which is a part hereof.

This Trust is signed this....30th.......day of....Jun........., 19..84, effective as

of the.....1st....day of...April........, 19..84

..H.H...Aerospace..Design..co.,.Inc.
(Name of Employer)

By...Alfred C.W. Daniels....
(Signature of Authorized Officer & Title)

Appointment as Trustee is accepted:

By...Alfred C.W. Daniels....

By...Robert G. Stern...........

By...Richard L. Baltimore Jr.....

(Authorized Signature(s))

Appointment as Plan Administrator is Accepted

.............................................
(Signature of Plan Administrator – complete
only if Plan Administrator other than
Employer.)

16

ID

THE KDACO DEFINED BENEFIT PENSION PLAN AND TRUST

IE

TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| ARTICLE I | DEFINITIONS | 1 |
| ARTICLE II | TOP HEAVY AND ADMINISTRATION | 10 |
| ARTICLE III | ELIGIBILITY | 18 |
| ARTICLE IV | CONTRIBUTION AND VALUATION | 20 |
| ARTICLE V | BENEFITS | 27 |
| ARTICLE VI | CODE SECTION 415 LIMITATIONS | 43 |
| ARTICLE VII | TRUSTEE | 49 |
| ARTICLE VIII | PLAN AMENDMENT | 58 |
| ARTICLE IX | PLAN TERMINATION | 59 |
| ARTICLE X | MERGER, CONSOLIDATION OR TRANSFER OF ASSETS | 64 |
| ARTICLE XI | MISCELLANEOUS | 65 |
| ARTICLE XII | PARTICIPATING EMPLOYERS | 70 |

ARTICLE I

DEFINITIONS

As used in this Agreement, the following words and phrases shall have the meanings
set forth herein unless a different meaning is clearly required by the context:

1.1   "Accrued Benefit" shall be defined as specified in Section 1.1 of the
      Adoption Agreement.

      Notwithstanding the above, if an Employee resumes participation in the
      Plan following a 1-Year Break in Service, he shall be credited with a
      Plan Year of Service for the period commencing on his reemployment date
      and ending at the beginning of the first day of the next Plan Year.

      The value of a Participant's Accrued Benefit as of any Anniversary Date
      shall not be less than the value of his Accrued Benefit at any prior
      Anniversary Date.

      A Non-Key Employee's Accrued Benefit for any Top Heavy Plan Year shall also
      be determined subject to the minimum accruals pursuant to Section 5.2.

1.2   "Act" means the Employee Retirement Income Security Act of 1974, as it
      may be amended from time to time.

1.3   "Actuarial Equivalent" shall mean a form of benefit differing in time,
      period, or manner of payment from a specific benefit provided under the
      Plan but having the same value when computed using the assumptions specified
      in Section 1.2 of the Adoption Agreement.  In the event this Section is
      amended, the Actuarial Equivalent of a Participant's Accrued Benefit on
      or after the date of change shall be determined as the greater of (1) the
      Actuarial Equivalent of the Accrued Benefit as of the date of change computed
      on the old basis, or (2) the Actuarial Equivalent of the total Accrued Benefit
      computed on the new basis.

1.4   "Administrator" means the person or persons designated by the Employer
      in Section 1.3 of the Adoption Agreement pursuant to Section 2.4 of the
      Plan to administer the Plan on behalf of the Employer.

1.5   "Adoption Agreement" means the separate Agreement which is executed by
      the Employer and accepted by the Trustee and Administrator which sets
      forth the elective portions of this Plan and Trust specified by the Employer.

1.6   "Age" shall mean age at nearest birthday.

1.7   "Aggregate Account" means, with respect to each Participant, the value of
      all accounts maintained on behalf of a Participant, whether attributable
      to Employer or Employee contributions, used to determine Top Heavy Plan
      status under the provisions of a defined contribution plan included in any
      Aggregation Group (as defined in Article II).

1

1.8    "Agreement" or "Plan" shall mean this instrument including all amendments thereto.

1.9    "Anniversary Date" means the first day of the Plan Year.

1.10    "Average Monthly Compensation" shall be defined as specified in Section 1.4 of the Adoption Agreement.

1.11    "Beneficiary" or "Beneficiaries" means the person or persons designated as provided in Section 5.5 to receive the benefits which are payable under the Plan upon or after the death of a Participant.  For purposes of determining whether the Plan is a Top Heavy Plan, a Beneficiary of a deceased Participant shall be considered as a Key Employee or a Non-Key Employee, as the case may be.

1.12    "Code means the Internal Revenue Code of 1954, as amended.

1.13    "Compensation" with respect to any Participant shall be defined as specified by the Employer in Section 1.5 of the Adoption Agreement.  Amounts contributed by the Employer under the within Plan and any fringe benefits shall not be considered as Compensation.

For any Top Heavy Plan Year, Compensation in excess of $200,000 (or such other amount as the Secretary of the Treasury may designate) shall be disregarded.

Compensation for any Self-Employed Individual shall be equal to his Earned Income.

1.14    "Contract" or "Policy" means a life insurance policy or annuity contract (group or individual) issued by the Insurer or any legal reserve life insurance company licensed to do business in this State.  All annuity contracts shall bear an endorsement to the effect that if the owner is other than the Trustee of a qualified plan, the Contract shall be nontransferrable in order to meet the definition of an annuity under Code Section 401(g).

All Contracts or Policies issued pursuant to Section 5.5 shall be acquired on a uniform and nondiscriminatory basis with respect to the face amount of the death benefit stated in such Contract or Policy.

1.15    "Covered Compensation" shall mean the amount of compensation which would be used to calculate a Participant's old-age and survivor insurance benefits under the Social Security Act if the Participant's annual compensation for each year until age 65 equalled the Taxable Wage Base, subject to the following paragraph.

Covered Compensation for each Participant shall be determined according to the table elected in Section 1.6 of the Adoption Agreement.  However, no amendment increasing the amount of Covered Compensation shall reduce any Participant's Accrued Benefit under the Plan.

If no table is required, Covered Compensation will be as specified in the Adoption Agreement.

2

1.16  "Early Retirement Date" means the first day of the month (prior to the
Normal Retirement Date) coinciding with or following the date on which a
Participant or Former Participant has satisfied the age and service require-
ments for Early Retirement specified in Section 1.7 of the Adoption
Agreement.  A Participant shall become fully Vested upon satisfying these
requirements.

If a Participant separates from service before satisfying the age requirement
for early retirement, but has satisfied the service requirement, the
Participant will be entitled to elect an early retirement benefit upon
satisfaction of such age requirement.

1.17  "Earned Income" means with respect to a Self-Employed Individual, the net
earnings from self-employment as defined in Code Section 401(c)(2) derived
from the trade or business with respect to which this Plan is established.

1.18  "Eligible Employee" means any Employee who has satisfied the provisions of
Section 3.1 and who is not employed in an excluded class of employment
per Section 1.8 of the Adoption Agreement.

1.19  "Employee" means any person who is employed by the Employer, but excludes any
person who is employed as an independent contractor.  Furthermore, any leased
employee shall be treated as an employee of the recipient employer.  However,
contributions or benefits provided by the leasing organization which are
attributable to the services performed for the recipient employer shall be
treated as provided by the recipient.  The preceding sentence shall not apply
to any leased employee if such employee is covered by a money purchase pension
plan providing:  (1) a nonintegrated employer contribution rate of at least
7 1/2 percent of compensation, (2) immediate participation, and (3) full and
immediate vesting.  For purposes of this paragraph, the term "leased employee"
means any person (other than an employee of the recipient) who pursuant to
an agreement between the recipient and any other person ("leasing organization")
has performed services for the recipient or for the recipient and related
persons (determined in accordance with section 414(n)(6) of the Code) on a
substantially full-time basis for a period of at least one year and such
services are of a type historically performed by employees in the business
field of the recipient.

1.20  "Employer" shall be defined as specified in the Adoption Agreement, any
successor which shall maintain this Plan and any predecessor which has
maintained this Plan.

1.21  "Fiduciary" means any person who (a) exercises any discretionary authority
or discretionary control respecting management of the Plan or exercises
any authority or control respecting management or disposition of its
assets, (b) renders investment advice for a fee or other compensation,
direct or indirect, with respect to any monies or other property of the
Plan or has any authority or responsibility to do so, or (c) has any
discretionary authority or discretionary responsibility in the administra-
tion of the Plan, including but not limited to, the Trustee, the Employer
and its board of directors, and the Administrator.

1.22  "Fiscal Year" shall mean the Employer's accounting year as specified in
Section 1.9 of the Adoption Agreement.

3

1.23 "Former Participant" means a person who has been a Participant, but who has ceased to be Participant for any reason.

1.24 "Hour of Service" shall mean (1) each hour for which an Employee is directly or indirectly compensated or entitled to compensation by the Employer for the performance of duties during the applicable computation period;  (2) each hour for which an Employee is directly or indirectly compensated or entitled to compensation by the Employer (irrespective of whether the employment relationship has terminated) for reasons other than performance of duties (such as vacation, holidays, sickness, disability, lay-off, military duty, jury duty or leave of absence) during the applicable computation period; (3) each hour for back pay awarded or agreed to by the Employer without regard to mitigation.  The same Hours of Service shall not be credited under both (1) or (2) and under (3).  These hours will be credited to the Employee for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement or payment is made.

Notwithstanding (2) above, (i) no more than 501 Hours of Service are required to be credited to an Employee on account of any single continuous period during which the Employee performs no duties (whether or not such period occurs in a single computation period); (ii) an hour for which an Employee is directly or indirectly paid, or entitled to payment, on account of a period during which no duties are performed is not required to be credited to the Employee if such payment is made or due under a plan maintained solely for the purpose of complying with applicable worker's compensation, or unemployment compensation or disability insurance laws; and (iii) Hours of Service are not required to be credited for a payment which solely reimburses an Employee for medical or medically related expenses incurred by the Employee.

For purposes of this Section, a payment shall be deemed to be made by or due from the Employer regardless of whether such payment is made by or due from the Employer directly or indirectly through, among others, a trust, fund, or insurer, to which the Employer contributes or pays premiums and regardless of whether contributions made or due to the trust fund, insurer, or other entity are for the benefit of particular Employees or are on behalf of a group of Employees in the aggregate.

An Hour of Service must be counted for the purpose of determining a Year of Service, a year of participation for purposes of accrued benefits, a 1-Year Break in Service, and employment commencement date (or reemployment commencement date).  The provisions of Department of Labor regulations 2530.200b-2(b) and (c) are incorporated herein by reference.

Hours of Service will be credited for employment with other members of an affiliated service group under Section 414(m), a controlled group of corporations under Section 414(b), or a group of trades or businesses under common control under Section 414(c), of which the Employer is a member.  Hours of Service will also be credited for any individual considered an Employee for purposes of this Plan under Code Section 414(n).

4

1.25 "Investment Manager" means any person, firm or corporation who is a registered Investment adviser under the Investment Advisers Act of 1940, a bank or an Insurance company. and (a) who has the power to manage, acquire, or dispose of Plan assets, and (b) who acknowledges in writing his fiduciary responsibility to the Plan.

1.26 "Key Employee" means those Employees defined in Code Section 416(I) and the Treasury regulations thereunder. Generally, they shall include any Employee or former employee (and his Beneficiaries) who, at any time during the Plan Year or any of the preceding four (4) Plan Years, is:

(a) an officer of the Employer (as that term is defined within the meaning of the regulations under Code Section 416) having annual "415 compensation" greater than 150 percent of the amount in effect under Code Section 415(c)(1)(A) for any such Plan Year.

(b) one of the ten employees having annual "415 compensation" from the Employer for a Plan Year greater than the dollar limitation in effect under Code Section 415(c)(1)(A) for the calendar year in which such Plan Year ends and owning (or considered as owning within the meaning of Code Section 318) both more than one-half percent interest and the largest interests in the Employer.

(c) a "five percent owner" of the Employer. "Five percent owner" means any person who owns (or is considered as owning within the meaning of Code Section 318) more than five percent (5%) of the outstanding stock of the Employer or stock possessing more than five percent (5%) of the total combined voting power of all stock of the Employer or. in the case of an unincorporated business, any person who owns more than five percent (5%) of the capital or profits interest in the Employer. In determining percentage ownership hereunder. employers that would otherwise be aggregated under Code Sections 414(b), (c), and (m) shall be treated as separate employers.

(d) a "one percent owner" of the Employer having top an annual "415 compensation" from the Employer of more than $150,000. "One percent owner" means any person who owns (or is considered as owning within the meaning of Code Section 318) more than one percent (1%) of the outstanding stock of the Employer or stock possessing more than one percent (1%) of the total combined voting power of all stock of the Employer or. in the case of an unincorporated business, any person who owns more than one percent (1%) of the capital or profits interest in the Employer. In determining percentage ownership hereunder, employers that would otherwise be aggregated under Code Sections 414(b), (c) and (m) shall be treated as separate employers. However, in determining whether an individual has "415 compensation" of more than $150,000. "415 compensation" from each employer required to be aggregated under Code Sections 414(b), (c) and (m) shall be taken into account.

1.27 "Late Retirement Date" shall be defined as specified in Section 1.10 of the Adoption Agreement.

1.28 "Month of Service" shall mean a calendar month during any part of which an Employee completed an Hour of Service. Except. however, a Participant shall be credited with a Month of Service for any period in which he has not incurred a 1-Year Break in Service.

5

1.29  "Non-Key Employee" means any Employee or former employee (and his beneficiaries) who is not a Key Employee.

1.30  "Normal Retirement Age" means the age specified in Section 1.11 of the Adoption Agreement at which time a Participant shall become eligible to receive his normal retirement benefit.  A Participant shall become fully Vested in his Participant's Accrued Benefit upon attaining his Normal Retirement Age.  In the event that a mandatory retirement age is enforced by the Employer which is lower than the Normal Retirement Age specified in the Adoption Agreement, such mandatory age shall be deemed to be the Normal Retirement Age.

1.31  "Normal Retirement Date" means the date specified in Section 1.12 of the Adoption Agreement on which a Participant shall become eligible to have his benefits distributed to him.

1.32  "1-Year Break in Service" means a Plan Year during which an Employee has not completed more than 500 Hours of Service with the Employer.  An Employee shall not incur a 1-Year Break in Service for the Plan Year in which he becomes a Participant, dies, retires or suffers Total and Permanent Disability. Further, solely for the purpose of determining whether a Participant has incurred a 1-Year Break in Service, Hours of Service shall be recognized for "authorized leaves of absence" and "maternity and paternity leaves of absence."

"Authorized leave of absence" means an unpaid, temporary cessation from active employment with the Employer pursuant to an established nondiscriminatory policy, whether occasioned by illness, military service, or any other reason.

A "maternity or paternity leave of absence" shall mean, for Plan Years beginning after December 31, 1984, an absence from work for any period by reason of the Employee's pregnancy, birth of the Employee's child, or any absence for the purpose of caring for such child for a period immediately following such birth or placement.  For this purpose, Hours of Service shall be credited for the computation period in which the absence from work begins, only if credit therefore is necessary to prevent the Employee from incurring a 1-Year Break in Service, or, in any other case, in the immediately following computation period.  The Hours of Service credited for a "maternity or paternity leave of absence" shall be those which would normally have been credited but for such absence, or, in any case in which the Administrator is unable to determine such hours normally credited, eight (8) Hours of Service per day.  The total Hours of Service required to be credited for a "maternity or paternity leave of absence" shall not exceed 501.

1.33  "Owner-Employee" means a sole proprietor who owns the entire interest in the Employer or a partner who owns more than 10% of either the capital interest or the profits interest in the Employer and who receives income for personal services from the Employer.

1.34  "Participant" shall mean any Eligible Employee who elects to participate in the Plan as provided in Article III and has not for any reason become ineligible to participate further in the Plan.

1.35  "Plan Year" shall be the period of time specified in Section 1.13 of the Adoption Agreement.

6

1.36  "Plan Year of Service" shall mean a Plan Year during which an Employee is a Participant and completes 1,000 Hours of Service.

1.37  "Pre-Retirement Survivor Annuity" means an annuity form of payment for the life of the surviving spouse of a Participant who dies prior to his Retirement Date.

1.38  "Present Value of Accrued Benefit" means the value of a Participant's Accrued Benefit at date of valuation determined pursuant to Section 1.3.

Except, however, the Present Value of Accrued Benefit for the determination of Top Heavy Plan status shall be made exclusively pursuant to the provisions of Section 2.2.

1.39  "Qualified Voluntary Employee Contribution Account" shall mean the account established and maintained by the Administrator for each Participant with respect to his total interest in the Plan and Trust resulting from the Participant's tax deductible qualified voluntary employee contributions made pursuant to Section 4.6.

1.40  "Regulation" means the Income Tax Regulations as promulgated by the Secretary of the Treasury or his delegate, and as amended from time to time.

1.41  "Retired Participant" means a person who has been a Participant, but who has become entitled to retirement benefits under the Plan.

1.42  "Retirement Date" means the date as of which a Participant retires for reasons other than Total and Permanent Disability, whether such retirement occurs on a Participant's Normal Retirement Date, Early Retirement Date (if elected under Section 1.7 of the Adoption Agreement), or Late Retirement Date (see Section 5.1).

1.43  "Self-Employed Individual" means with respect to an unincorporated business, an individual described in Code Section 401(c)(1). A Self-Employed Individual shall be treated as an Employee.

1.44  "Shareholder-Employee" means a Participant who owns more than five percent (5%) of the Employer's outstanding capital stock during any year in which the Employer elected to be taxed as a Small Business Corporation under the applicable Code Section.

1.45  "Super Top-Heavy Plan" means a plan described in Section 2.2(b).

1.46  "Terminated Participant" means a person who has been a Participant, but whose employment has been terminated other than by death, retirement, or Total and Permanent Disability.

1.47  "The Value of the Total Prior Contributions" means the accumulated value of a level annual deposit using the actuarial assumptions stated in Section 1.3. Such level annual deposit shall be computed from date of entry into the Plan to Normal Retirement Date, recalculated each year based on the monthly pension computed using Average Monthly Compensation and accumulated based on the Participant's Plan Years of Service. In no event shall the accumulated value be less than the accumulated value as of the prior Anniversary Date.

7

1.48    "Top Heavy Plan" means a plan described in Section 2.2(a).

1.49    "Top Heavy Plan Year" means that, for a particular Plan Year commencing
        after December 31, 1983, the Plan is a Top Heavy Plan.

1.50    "Total and Permanent Disability" means a physical or mental condition of a
        Participant resulting from bodily injury, disease, or mental disorder which
        renders him incapable of continuing his usual and customary employment with
        the Employer. The disability of a Participant shall be determined by a licensed
        physician chosen by the Administrator. The determination shall be applied
        uniformly to all Participants.

1.51    "Trustee" means the person or entity named as trustee herein or in any
        separate trust forming a part of this Plan, and any successors.

1.52    "Trust Fund" means the assets of the Plan and Trust as the same shall
        exist from time to time.

1.53    "Typical Level Premium Cost Method" means the calculation of level annual
        normal costs for benefits from the attained age of the Participant to his
        Normal Retirement Age based on the actuarial assumptions stated in Section
        1.3. Changes in Compensation which affect normal cost will be taken into
        account in the year in which they occur.

1.54    "Vested" means the portion of a Participant's Accrued Benefit that is
        nonforfeitable.

1.55    "Voluntary Contribution Account" shall mean the account established and
        maintained by the Administrator for each Participant with respect to his
        total interest in the Plan and Trust resulting from the Participant's
        voluntary contribution made pursuant to this Agreement.

1.56    "Year of Service" shall mean the computation period of twelve (12) con-
        secutive months, herein set forth, during which an Employee has at least
        the number of Hours of Service specified in Section 1.14 of the Adoption
        Agreement.

        For purposes of eligibility for participation, the initial computation
        period shall begin with the date on which the Employee first performs an
        Hour of Service. The participation computation period beginning after a
        1-Year Break in Service shall be measured from the date on which an Employee
        again performs an Hour of Service. The participation computation period
        shall shift to the Plan Year which includes the anniversary of the date
        on which the Employee first performed an Hour of Service.

        For purposes of eligibility for participation, the computation period shall
        be measured from the date on which the Employee first performs an Hour
        of Service. The participation computation periods beginning after a
        1-Year Break in Service shall be measured from the date on which an Employee
        again performs an Hour of Service.

        For vesting purposes a Year of Service shall be a Plan Year in which an
        Employee completes 1,000 Hours of Service.

Years of Service with any corporation, trade or business which is a member of a controlled group of corporations or under common control (as defined by Section 1563(a) and Section 414(c) of the Code), or is a member of an affiliated service group (as defined by Section 414(m) of the Code) shall be recognized.

All service with the Employer of a leased employee (as defined in Section 1.19) shall be recognized in determining Years of Service, including the period of one year (described in the last sentence of Section 1.19) which qualifies an individual as a leased employee.

9

ARTICLE II
TOP HEAVY AND ADMINISTRATION

2.1  TOP HEAVY PLAN REQUIREMENTS

(a)  For any Top Heavy Plan Year, the Plan shall provide the following:

(1)  Special vesting requirements of Code Section 416(b) pursuant to Section 5.6 of the Plan;

(2)  Special minimum benefit requirements of Code Section 416(c) pursuant to Section 5.2 of the Plan;

(3)  Special Compensation requirements of Code Section 416(d) pursuant to Section 1.13 of the Plan.

2.2  DETERMINATION OF TOP HEAVY STATUS

(a)  This Plan shall be a Top Heavy Plan for any Plan Year commencing after December 31, 1983, in which, as of the Determination Date, (1) the Present Value of Accrued Benefits of Key Employees or (2) the sum of the Aggregate Accounts of Key Employees under this Plan and any plan of an Aggregation Group, exceeds sixty percent (60%) of the Present Value of Accrued Benefits and the Aggregate Accounts of all Key and Non-Key Employees under this Plan and any plan of an Aggregation Group.

If any Participant is a Non-Key Employee for any Plan Year, but such Participant was a Key Employee for any prior Plan Year, such Participant's Present Value of Accrued Benefit and/or Aggregate Account Balance shall not be taken into account for purposes of determining whether this Plan is a Top Heavy or Super Top Heavy Plan (or whether any Aggregation Group which includes this Plan is a Top Heavy Group).  In addition, for Plan Years beginning after December 31, 1984, if a Participant or Former Participant has not received any Compensation from any Employer maintaining the Plan (other than benefits under the Plan) at any time during the five year period ending on the Determination Date, the Aggregate Account and/or Present Value of Accrued Benefit for such Participant or Former Participant shall not be taken into account for the purposes of determining whether this Plan is a Top Heavy or Super Top Heavy Plan.

(b)  This Plan shall be a Super Top Heavy Plan for any Plan Year commencing after December 31, 1983, in which, as of the Determination Date, (1) the Present Value of Accrued Benefits of Key Employees or (2) the sum of the Aggregate Accounts of Key Employees under this Plan and any plan of an Aggregation Group, exceeds ninety percent (90%) of the Present Value of Accrued Benefits or the Aggregate Accounts of all Participants under this Plan and any plan of an Aggregation Group.

(c)  Aggregate Account:  A Participant's Aggregate Account as of the Determination Date shall be determined under applicable provisions of the defined contribution plan used in determining Top Heavy Plan status.

10

(d)  "Aggregation Group" means either a Required Aggregation Group or a Permissive Aggregation Group as hereinafter determined.

(1)  Required Aggregation Group:  In determining a Required Aggregation Group hereunder, each plan of the Employer in which a Key Employee is a participant, and each other plan of the Employer which enables any plan in which a Key Employee participates to meet the requirements of Code Sections 401(a)(4) or 410, will be required to be aggregated.  Such group shall be known as a Required Aggregation Group.

In the case of a Required Aggregation Group, each plan in the group will be considered a Top Heavy Plan if the Required Aggregation Group is a Top Heavy Group.  No plan in the Required Aggregation Group will be considered a Top Heavy Plan if the Required Aggregation Group is not a Top Heavy Group.

(2)  Permissive Aggregation Group:  The Employer may also include any other plan not required to be included in the Required Aggregation Group, provided the resulting group, taken as a whole, would continue to satisfy the provisions of Code Sections 401(a)(4) or 410.  Such group shall be known as a Permissive Aggregation Group.

In the case of a Permissive Aggregation Group, only a plan that is part of the Required Aggregation Group will be considered a Top Heavy Plan if the Permissive Aggregation Group is a Top Heavy Group.  No plan in Permissive Aggregation Group will be considered a Top Heavy Plan if the Permissive Aggregation Group is not a Top Heavy Group.

(3)  Only those plans of the Employer in which the Determination Dates fall within the same calendar year shall be aggregated in order to determine whether such plans are Top Heavy Plans.

(4)  An Aggregation Group shall include any terminated plan of the Employer if it was maintained within the last five (5) years ending on the Determination Date.

(5)  If an Aggregation Group contains two or more defined benefit plans, the actuarial assumptions used for the purpose of testing whether the group is a Top Heavy Group shall be the same for all such defined benefit plans.

(e)  "Determination Date" means (a) the last day of the preceding Plan Year, or (b) in the case of the first Plan Year, the last day of such Plan Year.

(f)  Present Value of Accrued Benefit:  In the case of a defined benefit plan, a Participant's Present Value of Accrued Benefit shall be determined:

(1)  as of the most recent "actuarial valuation date", which is the most recent valuation date within a twelve (12) month period ending on the Determination Date.

(2)  for the first Plan Year, as if (a) the Participant terminated service as of the Determination Date; or (b) the Participant terminated service as of the actuarial valuation date, but taking into account the estimated Accrued Benefits as of the Determination Date.

11

(3)  for the second Plan Year, the Accrued Benefit taken into account for a current Participant must not be less than the Accrued Benefit taken into account for the first Plan Year unless the difference is attributable to using an estimate of the Accrued Benefit as of the Determination Date for the first Plan Year and using the actual Accrued Benefit for the second Plan Year.

(4)  for any other Plan Year, as if the Participant terminated service as of the actuarial valuation date.

(5)  The actuarial valuation date must be the same date used for computing the defined benefit plan minimum funding costs, regardless of whether a valuation is performed that Plan Year.

(g)  The calculation of a Participant's Present Value of Accrued Benefit as of a Determination Date shall be the sum of:

(1)  The Present Value of Accrued Benefit using the actuarial assumptions specified in Section 2.1 of the Adoption Agreement.

(2)  any Plan distributions made within the Plan Year that includes the Determination Date or within the four (4) preceding Plan Years. However, in the case of distributions made after the valuation date and prior to the Determination Date, such distributions are not included as distributions for top-heavy purposes to the extent that such distributions are already included in the Participant's Present Value of Accrued Benefit as of the valuation date.  Notwithstanding anything herein to the contrary, all distributions under a terminated plan which if it had not been terminated would have been required to be included in an Aggregation Group, will be counted.  Further, benefits paid on account of death, to the extent such benefits do not exceed the Present Value of Accrued Benefits existing immediately prior to death, shall be treated as distributions for the purposes of this paragraph.

(3)  any Employee contributions, whether voluntary or mandatory. However, amounts attributable to tax deductible Qualified Voluntary Employee Contributions shall not be considered to be a part of the Participant's Present Value of Accrued Benefit.

(4)  with respect to unrelated rollovers and plan-to-plan transfers (ones which are both initiated by the Employee and made from a plan maintained by one employer to a plan maintained by another employer), if this Plan provides for rollovers or plan-to-plan transfers, it shall always consider such rollover or plan-to-plan transfer as a distribution for the purposes of this Section.  If this Plan is the plan accepting such rollovers or plan-to-plan transfers, it shall not consider such rollovers or plan-to-plan transfers accepted after December 31, 1983, as part of the Participant's Present Value of Accrued Benefit.  However, rollovers or plan-to-plan transfers accepted prior to January 1, 1984, shall be considered as part of the Participant's Present Value of Accrued Benefit.

12

(5) with respect to related rollovers and plan-to-plan transfers (ones either not initiated by the Employee or made to a plan maintained by the same employer), if this Plan provides the rollover or plan-to-plan transfer, it shall not be counted as a distribution for purposes of this Section. If this Plan is the plan accepting such rollover or plan-to-plan transfer, it shall consider such rollover or plan-to-plan transfer as part of the Participant's Present Value of Accrued Benefit, irrespective of the date on which such rollover or plan-to-plan transfer is accepted.

(h) "Top Heavy Group" means an Aggregation Group in which, as of the Determination Date, the sum of:

(1) the Present Value of Accrued Benefits of Key Employees under all defined benefit plans included in the group, and

(2) the Aggregate Accounts of Key Employees under all defined contribution plans included in the group,

exceeds sixty percent (60%) of a similar sum determined for all Participants.

## 2.3 POWERS AND RESPONSIBILITIES OF THE EMPLOYER

(a) The Employer shall be empowered to appoint and remove the Trustee and the Administrator from time to time as it deems necessary for the proper administration of the Plan to assure that the Plan is being operated for the exclusive benefit of the Participants and their Beneficiaries in accordance with the terms of this Agreement, the Code, and the Act.

(b) The Employer shall establish a "funding policy and method", i.e., it shall determine whether the Plan has a short run need for liquidity (e.g., to pay benefits) or whether liquidity is a long run goal and investment growth (and stability of same) is a more current need, or shall appoint a qualified person to do so. The Employer or its delegate shall communicate such needs and goals to the Trustee, who shall coordinate such Plan needs with its investment policy. The communication of such a "funding policy and method" shall not, however, constitute a directive to the Trustee as to investment of the Trust Funds. Such "funding policy and method" shall be consistent with the objectives of this Plan and with the requirements of Title I of the Act.

(c) The Employer may in its discretion appoint an Investment Manager to manage all or a designated portion of the assets of the Plan. In such event, the Trustee shall follow the directive of the Investment Manager in investing the assets of the Plan managed by the Investment Manager.

(d) The Employer shall periodically review the performance of any Fiduciary or other person to whom duties have been delegated or allocated by it under the provisions of this Plan or pursuant to procedures established hereunder. This requirement may be satisfied by formal periodic review by the Employer or by a qualified person specifically designated by the Employer, through day-to-day conduct and evaluation, or through other appropriate ways.

13

2.4   ASSIGNMENT AND DESIGNATION OF ADMINISTRATIVE AUTHORITY

The Employer shall appoint one or more Administrators.  Any person,
including, but not limited to, the Employees of the Employer, shall be
eligible to serve as an Administrator.  Any person so appointed shall
signify his acceptance by filing written acceptance with the Employer.
An Administrator may resign by delivering his written resignation to the
Employer or be removed by the Employer by delivery of written notice of
removal, to take effect at a date specified therein, or upon delivery to
the Administrator if no date is specified.

The Employer, upon the resignation or removal of an Administrator, shall
promptly designate in writing a successor to this position.  If the
Employer does not appoint an Administrator, the Employer will function as
the Administrator.

2.5   ALLOCATION AND DELEGATION OF RESPONSIBILITIES

If more than one person is appointed as Administrator, the responsi-
bilities of each Administrator may be specified by the Employer and
accepted in writing by each Administrator.  In the event that no such
delegation is made by the Employer, the Administrators may allocate the
responsibilities among themselves, in which event the Administrators
shall notify the Employer and the Trustee in writing of such action and
specify the responsibilities of each Administrator.  The Trustee there-
after shall accept and rely upon any documents executed by the appro-
priate Administrator until such time as the Employer or the Administrators
file with the Trustee a written revocation of such designation.

2.6   POWERS, DUTIES AND RESPONSIBILITIES

The primary responsibility of the Administrator is to administer the Plan
for the exclusive benefit of the Participants and their Beneficiaries,
subject to the specific terms of the Plan.  The Administrator shall
administer the Plan in accordance with its terms and shall have the power
to determine all questions arising in connection with the administration,
interpretation, and application of the Plan.  Any such determination by
the Administrator shall be conclusive and binding upon all persons.  The
Administrator may establish procedures, correct any defect, supply any
information, or reconcile any inconsistency in such manner and to such
extent as shall be deemed necessary or advisable to carry out the purpose
of this Agreement; provided, however, that any procedure, discretionary act,
interpretation or construction shall be done in a nondiscriminatory manner
based upon uniform principals consistently applied and shall be consistent
with the intent that the Plan shall continue to be deemed a qualified plan
under the terms of Code Section 401(a) as amended from time to time, and
shall comply with the terms of the Act and all regulations issued pursuant
thereto.  The Administrator shall have all powers necessary or appropriate to
accomplish his duties under this Plan.

The Administrator shall be charged with the duties of the general
administration of the Plan, including, but not limited to, the following:

14

(a) to determine all questions relating to the eligibility of Employees to participate or remain a Participant hereunder;

(b) to compute, certify, and direct the Trustee with respect to the amount and the kind of benefits to which any Participant shall be entitled hereunder;

(c) to authorize and direct the Trustee with respect to all nondiscretionary or otherwise directed disbursements from the Trust;

(d) to maintain all necessary records for the administration of the Plan;

(e) to interpret the provisions of the Plan and to make and publish such rules for regulation of the Plan as are consistent with the terms hereof;

(f) to determine the size and type of any Contract to be purchased from any Insurer (if any) and to designate the Insurer from which such Contract shall be purchased.

(g) to compute and certify to the Employer and to the Trustee from time to time the sums of money necessary or desirable to be contributed to the Trust Fund;

(h) to consult with the Employer and the Trustee regarding the short and long-term liquidity needs of the Plan in order that the Trustee can exercise any investment discretion in a manner designed to accomplish specific objectives;

(i) to prepare and distribute to Employees a procedure for notifying Participants and Beneficiaries of their rights to elect joint and survivor annuities and Pre-Retirement Survivor Annuities as required by the Act and Regulations thereunder.

(j) to establish and communicate to Participants a procedure for allowing each Participant to establish a tax deductible Qualified Voluntary Employee Contribution Account pursuant to Section 4.6.

(k) to assist any Participant regarding his rights, benefits, or elections available under the Plan.

## 2.7    RECORDS AND REPORTS

The Administrator shall keep a record of all actions taken and shall keep all other books of account, records, and other data that may be necessary for proper administration of the Plan and shall be responsible for supplying all information and report to the Internal Revenue Service, Department of Labor, Participants, Beneficiaries and others as required by law.

15

2.8    APPOINTMENT OF ADVISORS

The Administrator, or the Trustee with the consent of the Administrator, may appoint counsel, specialists, and advisers, and other persons as the Administrator or the Trustee deems necessary or desirable in connection with the administration of this Plan.

2.9    INFORMATION FROM EMPLOYER

To enable the Administrator to perform his functions, the Employer shall supply full and timely information to the Administrator on all matters relating to the Compensation of all Participants, their Hours of Service, their Years of Service, their retirement, death, disability, or termination of employment, and such other pertinent facts as the Administrator may require; and the Administrator shall advise the Trustee of such of the foregoing facts as may be pertinent to the Trustee's duties under the Plan.   The Administrator may rely upon such information as is supplied by the Employer and shall have no duty or responsibility to verify such information.

2.10   PAYMENT OF EXPENSES

All expenses of administration may be paid out of the Trust Fund unless paid by the Employer.  Such expenses shall include any expenses incident to the functioning of the Administrator, including, but not limited to, fees of accountants, counsel, and other specialists and their agents, and other costs of administering the Plan.  Until paid, the expenses shall constitute a liability of the Trust Fund.  However, the Employer may reimburse the Trust for any administration expense incurred.  Any administration expense paid to the Trust as a reimbursement shall not be considered as an Employer contribution.

2.11   MAJORITY ACTIONS

Except where there has been an allocation and delegation of administrative authority pursuant to Section 2.5, if there shall be more than one Administrator, they shall act by a majority of their number, but may authorize one or more of them to sign all papers on their behalf.

2.12   CLAIMS PROCEDURE

Claims for benefits under the Plan may be filed with the Administrator on forms supplied by the Employer.  Written notice of the disposition of a claim shall be furnished to the claimant within 60 days after the application thereof is filed.  In the event the claim is denied, the reasons for the denial shall be specifically set forth in the notice in language calculated to be understood by the claimant, pertinent provisions of the Plan shall be cited, and, where appropriate, an explanation as to how the claimant can perfect the claim will be provided.  In addition, the claimant shall be furnished with an explanation of the Plan's claims review procedure.

16

2.13   CLAIMS REVIEW PROCEDURE

Any Employee, former Employee, or Beneficiary of either, who has been denied a benefit by a decision of the Administrator pursuant to Section 2.12 shall be entitled to request the Administrator to give further consideration to his claim by filing with the Administrator (on a form which may be obtained from the Administrator) a request for a hearing. Such request, together with a written statement of the reasons why the claimant believes his claim should be allowed, shall be filed with the Administrator no later than 60 days after receipt of the written notification provided for in Section 2.12. The Administrator shall then conduct a hearing within the next 60 days, at which the claimant may be represented by an attorney or any other representative of his choosing and at which the claimant shall have the opportunity to submit written and oral evidence and arguments in support of his claim. At the hearing (or prior thereto upon 5 business days written notice to the Administrator) the claimant or his representative shall have an opportunity to review all documents in the possession of the Administrator which are pertinent to the claim at issue and its disallowance. Either the claimant or the Administrator may cause a court reporter to attend the hearing and record the proceedings. In such event, a complete written transcript of the proceedings shall be furnished to both parties by the court reporter. The full expense of any such court reporter and such transcripts shall be borne by the party causing the court reporter to attend the hearing. A final decision as to the allowance of the claim shall be made by the Administrator within 60 days of receipt of the appeal unless there has been an extension of 60 days and shall be communicated in writing to the claimant. Such communication shall be written in a manner calculated to be understood by the claimant and shall inclue specific reasons for the decision and specific references to the pertinent Plan provisions on which the decision is based.

ARTICLE III
ELIGIBILITY

### 3.1 CONDITIONS OF ELIGIBILITY AND EFFECTIVE DATE OF PARTICIPATION

An Employee shall become a Participant upon the completion of the Entry requirements and on the date specified in Section 3.1 of the Adoption Agreement.

### 3.2 DETERMINATION OF ELIGIBILITY

The Administator shall determine the eligibility of each Employee for participation in the Plan based upon information furnished by the Employer.  Such determination shall be conclusive and binding upon all persons, as long as the same is made in accordance with this Agreement and the Act, provided such determination shall be subject to review per Section 2.13.

### 3.3 TERMINATION OF ELIGIBILITY

A Participant shall cease to be eligible to participate in the Plan as of the first day of a Plan Year during which he has a 1-Year Break in Service.

In the event a Participant shall go from a classification of an Eligible Employee to a noneligible Employee, such Former Participant shall continue to vest in his Accrued Benefit under the Plan for each Year of Service completed while a noneligible employee, until such time as Accrued Benefit shall be forfeited or distributed pursuant to the terms of this Agreement.

### 3.4 OMISSION OF ELIGIBLE EMPLOYEE

If, in any Fiscal Year, any Employee who should be included as a Participant in the Plan is erroneously omitted and discovery of such omission is not made until after a contribution by his Employer for the year has been made, the appropriate Employer shall make a subsequent contribution with respect to the omitted Employee in the amount which the said Employer would have contributed with respect to him had he not been omitted.  Such contribution shall be made regardless of whether or not it is deductible in whole or in part in any taxable year under applicable provisions of the Internal Revenue Code by such Employer.

### 3.5 INCLUSION OF INELIGIBLE EMPLOYEE

If, in any Fiscal Year, any person who should not have been included as a Participant in the Plan is erroneously included and discovery of such inclusion is not made until after a contribution for the year has been made, the appropriate Employer shall not be entitled to recover the contribution made with respect to the ineligible person regardless of whether or not a deduction is allowable with respect to such contribution. In such event, the amount contributed with respect to the ineligible person shall constitute a Forfeiture for the Fiscal Year in which the discovery is made.

3.6    ELECTION NOT TO PARTICIPATE

Notwithstanding Section 3.2, an Employee may, subject to the approval of
the Employer, elect voluntarily not to participate in the Plan.  The
election not to participate must be communicated to the Employer in writing
at least thirty (30) days before the beginning of a Plan Year.

A Participant making this election shall have the right to modify or revoke
this election during a subsequent Plan Year.  However, in no event shall
a Participant's Accrued Benefit be reduced.  Benefit decreases caused as
a result of this election shall be recognized notwithstanding provisions
to the contrary in Section 5.1.  Benefit Increases as a result of the
revocation or modification of this election in any Plan Year subsequent
to a Plan Year in which benefits have been decreased pursuant to such
election, shall be treated as benefit increases resulting from a Plan
amendment.  Accordingly, funding for such increases shall be based upon
reasonable actuarial assumptions commonly utilized to fund benefit increases
resulting from a Plan amendment.  Furthermore, such benefit increases shall
be subject to those restrictions imposed upon distribution of benefits
upon early termination in Section 9.2.

19

## ARTICLE IV
## CONTRIBUTION AND VALUATION

### 4.1    PAYMENT OF CONTRIBUTIONS

No contribution shall be required under the Plan from any Participant.
The Employer shall pay to the Trustee from time to time such amounts in
cash or property acceptable to the Trustee as the Administrator and
Employer shall determine to be necessary to provide the benefits under
the Plan determined by the application of accepted actuarial methods and
assumptions.   The method of funding shall be consistent with Plan
objectives.

### 4.2    ACTUARIAL METHODS

In establishing the liabilities under the Plan and contributions thereto,
the enrolled actuary will use such methods and assumptions as will
reasonably reflect the cost of the benefits.   The Plan assets are to be
valued on the basis of any reasonable method of valuation that takes into
account fair market value pursuant to regulations prescribed by the
Secretary of Treasury.   There must be an actuarial valuation of the Plan
at least once every 3 years.

### 4.3    TRANSFERS FROM QUALIFIED PLANS

(a) With the consent of the Administrator, amounts may be transferred from
other qualified corporate, and after December 31, 1983, noncorporate
plans, provided that the trust from which such funds are transferred permits
the transfer to be made and, in the opinion of legal counsel for the Employer,
the transfer will not jeopardize the tax exempt status of the Plan or Trust
or create adverse tax consequences for the  Employer.   The amounts transferred
shall be considered an additional Accrued Benefit and set up in a separate
account herein referred to as a "Participant's Rollover Account".   Such
amount shall be fully Vested at all times and shall not be subject to
Forfeiture for any reason.

(b)  Amounts in a Participant's Rollover Account shall be held by the
Trustee pursuant to the provisions of this Plan, and such amounts shall
not be subject to Forfeiture for any reason and may not be withdrawn by,
or distributed to the Participant, in whole or in part, except as pro-
vided in Paragraph (c) of this Section.

20

(c) At Normal Retirement Date, or such other date when the Participant or his Beneficiary shall be entitled to receive benefits, the Accrued Benefit shall be used to provide additional benefits to the Participant pursuant to Section 5.1(d) or such other optional method as the Administrator shall elect pursuant to Section 5.7.

(d) The Administrator may direct that employee transfers made after the first month of the Plan Year pursuant to this Section be segregated into a separate account for each Participant in a federally insured savings account, certificate of deposit in a bank or savings and loan association, money market certificate, or other short term debt security acceptable to the Trustee until the first day of the following Plan Year, at which time they shall be invested as determined by the Administrator pursuant to Section 4.3(e).

(e) The Accrued Benefit under this Section shall be the balance of a "Participant's Rollover Account" as of any applicable date. Unless the Administrator directs that the Participant's Rollover Account be segregated into a separate account for each Participant in a federally insured savings account, certificate of deposit in a bank or savings and loan association, money market certificate, or other short-term debt security acceptable to the Trustee, it shall be invested as part of the general Trust Fund and shall share in earnings and losses. Except, however, deposits into the general Trust Fund after the first month of the Plan Year shall not share in earnings and losses for such year.

(f) All amounts allocated to a Participant's Rollover Account may be treated as a Directed Investment Account pursuant to Section 4.5, if allowed per Section 4.3 of the Adoption Agreement.

(g) For purposes of this Section the term "amounts transferred from another qualified corporate and noncorporate plan" shall mean: (i) amounts transferred to this Plan directly from another qualified corporate and, after December 31, 1983, qualified noncorporate plan; (ii) lump sum distributions received by an Employee from another qualified plan which are eligible for tax free rollover treatment and which are transferred by the Employee to this Plan within sixty (60) days following his receipt thereof; (iii) amounts transferred to this Plan from a conduit individual retirement account provided that the conduit individual retirement account has no assets other than assets which (A) were previously distributed to the Employee by another qualified corporate (and, after December 31, 1983 non-corporate) plan as a lump sum distribution (B) were eligible for tax free rollover to a qualified corporate or noncorporate plan and (C) were deposited in such conduit individual retirement account within sixty (60) days of receipt thereof and other than earnings on said assets; and (iv) amounts distributed to the Employee from a conduit individual retirement account meeting the requirements of clause (iii) above, and transferred by the Employee to this Plan within sixty (60) days of his receipt thereof from such conduit individual retirement account. Prior to accepting any transfers to which this Section applies, the Administrator may require the Employee to establish that the amounts to be transferred to this Plan meet the requirements of this Section and may also require the Employee to provide an opinion of counsel satisfactory to the Employer that the amounts to be transferred meet the requirements of this Section.

21

(h)  For purposes of this Section, the term "qualified corporate or noncorporate plan" shall mean any tax qualified plan under Code Section 401(a).

4.4    VOLUNTARY CONTRIBUTIONS

(a) If Voluntary Contributions are permitted under the Plan per Section 4.1 of the Adoption Agreement, each Participant may elect to voluntarily contribute up to 10% of his aggregate compensation earned while a Participant under this Plan.  Such contributions shall be paid to the Trustee no later than 30 days after the Plan Year for which it is to be deemed paid.  The balance in each Participant's Voluntary Contribution Account shall be fully vested at all times and shall not be subject to Forfeiture for any reason.

(b) A Participant may elect to withdraw his Voluntary Contributions from his Voluntary Contribution Account and, with the Administrator's consent, the actual earnings thereon.  In the event that a withdrawal of earnings is made, the Participant shall be barred from making any additional Voluntary Contributions for a period of one (1) Plan Year.

(c) The Administrator shall maintain a separate Participant's Voluntary Contribution Account for each Participant's Accrued Benefit derived from any contributions made pursuant to this Section and the Accrued Benefit shall be fully vested at all times.

(d) At Normal Retirement Date, or such other date when the Participant or his Beneficiary shall be entitled to receive benefits, the Accrued Benefit shall be used to provide additional benefits to the Participant pursuant to Section 5.7 or 5.8.

(e) In any case in which an individual is a Participant in two or more qualified plans maintained by the same Employer, the aggregate voluntary contributions to all plans may not exceed 10% of his aggregate compensation earned while a Participant in the respective plans.

(f) The Administrator may direct that voluntary contributions made after the first month of the Plan Year pursuant to this Section be segregated into a separate account for each Participant in a federally insured savings account, certificate of deposit in a bank or savings and loan association, money market certificate, or other short-term debt security acceptable to the Trustee until the first day of the following Plan Year, at which time they shall be invested as determined by the Administrator.  Contributions segregated or included as part of general fund at Administrator's discretion.

(g) The Accrued Benefit derived from contributions made under this Section shall mean the balance of a Participant's Voluntary Contribution Account as of any applicable date.  Unless the Administrator directs that Voluntary Contributions made pursuant to this Section be segregated into a separate account for each Participant in a federally insured savings account, certificate of deposit in a bank or savings and loan association, money market certificate, or other short-term debt security acceptable to the Trustee, they shall be invested as part of the general Trust Fund and share in earnings and losses.  Except, however, deposits into the general Trust Fund after the first month of the Plan Year shall not share in earnings and losses for such year.

22

(h) Employee contributions made pursuant to this Section shall be considered as a separate defined contribution plan for the purposes of applying the limitations of Section 415 of the Code.

(i) All amounts allocated to a Voluntary Contribution Account may be treated as a Directed Investment Account pursuant to Section 4.5, if allowed per Section 4.3 of the Adoption Agreement.

4.5   DIRECTED INVESTMENT ACCOUNT

(a)   Subject to the election made in Section 4.3 of the Adoption Agreement, the Administrator, in his sole discretion may determine that all Participants be permitted to direct the Trustee as to the investment of all or a portion of the Vested interest in any one or more of their individual account balances (excluding such Participant's Accrued Benefit).  If such authorization is given by the Administrator, Participants may direct the Trustee in writing to invest the Vested portion of their account in specific assets including Employer securities or real property and other investments permitted under this Agreement.   To the extent so directed, the Trustees are relieved of their fiduciary responsibilities as provided in Section 404 of the Act.  That portion of the Vested account of any Participant so directing will thereupon be considered a Directed Investment Account which shall not share in Trust Fund earnings.

(b)   A separate Directed Investment Account shall be established for each Participant who has directed an investment.  Transfers between the Participant's regular account and their Directed Investment Account shall be charged and credited as the case may be to each account.  The Directed Investment Account shall not share in Trust Fund Earnings, but shall be charged or credited as appropriate with the net earnings, gains, losses and expenses as well as appreciations or depreciations in market value during each Plan Year attributable to such account.

4.6   QUALIFIED VOLUNTARY EMPLOYEE CONTRIBUTIONS

(a)   Each Participant may, subject to the election made in Section 4.2 of the Adoption Agreement by the Administrator, elect pursuant to this Section 4.6, to make a voluntary contribution in cash up to $2,000 (but not more than 100% of the Participant's compensation for the taxable year to which the contribution relates) which is to be treated as a "Qualified Voluntary Employee Contribution" within the meaning of Code Section 219(e)(2), and held in a separate Qualified Voluntary Employee Contribution Account.

(b) Any voluntary employee contribution made in cash after December 31, 1981 shall be treated as a Qualified Voluntary Employee Contribution within the limitations of Code Section 219(b), except to the extent that the Participant shall have designated such contribution, pursuant to subparagraph (g) below, as one which should not be taken into account under Code Section 219 as a "qualified retirement contribution" as defined in Code Section 219(e)(1).

23

(c) All Qualified Voluntary Employee Contributions shall be transferred to the Trustee during the Plan Year for which they are to be deemed paid; except that the Administrator may elect to have the provisions of Code Section 219(f)(3)(B) (relating to the time when Qualified Voluntary Employee Contributions are deemed made) apply to the Plan, effective January 1, 1983, by giving written notice of such election to all who are Participants on the date of such notice, stating (1) that such election has been made, and (2) the latest date following the end of the Plan Year (but not later than April 15th of such following year) when a Qualified Voluntary Employee Contribution may be made and still be deemed to have been made on December 31st of the preceding calendar year (but not before December 31, 1982). If the Administrator shall have made such election, and the same shall not have been revoked, then a Qualified Voluntary Employee Contribution may be transferred to the Trustee no later than the date stated in the foregoing notice. The Administrator may revoke or modify the foregoing election at any time and from time to time, effective at once, by delivering a further written notice to that effect to all who are Participants on the date of such further notice.

(d) Notwithstanding anything hereinabove to the contrary, a Qualified Voluntary Employee contribution may not be made by a Participant for his taxable year in which such Participant attains the age of seventy and one-half years and/or any taxable year of such Participant thereafter.

(e) In the event that, in addition to his making a Qualified Voluntary Employee Contribution, a Participant shall also make, for the same taxable year, a payment in cash to an individual retirement plan, he shall notify the Administrator, and in that case the allowable amount of his Qualified Voluntary Employee Contribution shall be appropriately reduced as may be required to assure that his aggregate "qualified retirement contribution" (as defined above) for the year shall not exceed the amount allowable as a deduction under the Code.

(f) The balance in each Participant's Qualified Voluntary Employee Contribution Account shall be fully Vested at all times and shall not be subject to Forfeiture for any reason.

(g) For purposes of subparagraph (b) of this Section 4.6, a Participant may designate a voluntary employee contribution (including one made after the end of the Plan Year, under subparagraph (c) above, if the election therein described is in force) as one which is not to be taken into account as a "qualified retirement contribution", by giving written notice to the Administrator, not later than the last day of the Plan Year in respect of which the voluntary employee contribution is made, that he does not want such contribution to be so taken into account.

24

(h) (1) Applicable if Voluntary Contributions allowed per Section 4.1 of the Adoption Agreement

In the event that a Participant's Qualified Voluntary Employee Contribution exceeds the limitation of subparagraph (a) of this Section 4.6 (or a Participant designates, pursuant to subparagraph (g), that his voluntary employee contribution is not to be considered a Qualified Voluntary Employee Contribution), the Administrator shall consider such excess (or, in the event of such designation, the entire amount) as a voluntary contribution pursuant to Section 4.4, provided the voluntary employee contributions attributable to such excess (or the entire amount, as the case may be) were made within the time limitation, and satisfied the percentage limitation, pursuant to Section 4.4. If such contributions were not made in a timely manner pursuant to Section 4.4, or exceed the percentage limitations thereunder, the Administrator shall direct the Trustee to return such contribution (or that amount which exceed the percentage limitations) to the Participant.

(2) Applicable if Voluntary Contributions are not allowed per Section 4.1 of the Adoption Agreement

In the event that a Participant's Qualified Voluntary Employee Contribution exceeds the limitation of subparagraph (a) of this Section 4.6 (or a Participant designates, pursuant to subparagraph (g), that his voluntary employee contribution is not to be considered a Qualified Voluntary Employee Contribution), the Administrator shall direct the Trustee to return such excess (or, in the event of such designation, the entire amount) to the Participant.

(i) A Participant may, upon written request delivered to the Administrator, make withdrawals from his Qualified Voluntary Employee Contribution Account. In the event such a withdrawal is made, a Participant shall be barred from making any additional Qualified Voluntary Employee Contributions to the Trust Fund for a period of one (1) Plan Year.

(j) At Normal Retirement Date, or such other date when the Participant or his Beneficiary shall be entitled to receive benefits, the fair market value of the Qualified Voluntary Employee Contribution Account shall be used to provide additional benefits to the Participant pursuant to Section 5.7 or 5.8.

(k) In any case in which an Employee is a Participant in two or more qualified plans maintained by the Employer or affiliated Employer(s), the aggregate Qualified Voluntary Employee Contributions to all plans may not exceed the amount determined under subparagraph (a) of this Section 4.6.

(l) The Administrator may direct that Qualified Voluntary Employee Contributions made after the first month of the Plan Year pursuant to this Section may be segregated into a separate account for each Participant in a federally insured savings account, certificate of deposit in a bank or a savings and loan association, money market certificate, or other short-term debt security acceptable to the Trustee until the first day of the following Plan Year, at which time they shall be invested as determined by the Administrator pursuant to Section 4.6(m).

(m) Unless the Administrator directs Qualified Voluntary Employee Contributions made pursuant to this Section be segregated into a separate account for each Participant in a federally insured savings account, certificate of deposit in a bank or savings and loan association, money market certificate or other short term debt security acceptable to the Trustee, they shall be invested as part of the general Trust Fund and share in earnings and losses. Except, however, deposits into the general Trust Fund after the first month of the Plan Year shall not share in earnings and losses for such year.

(n) All amounts allocated to a Qualified Voluntary Employee Contribution Account may be treated as a Directed Investment Account pursuant to Section 4.5. If allowed per Section 4.3 of the Adoption Agreement.

(o) In any case, where any of the foregoing provisions of this Section 4.6 are not in conformity with regulations of the Department of the Treasury that are from time to time promulgated, the nonconforming provision may be amended retroactively (within the time permitted by Section 401(b) of the Code and regulatoins thereunder) to assure conformity.

ARTICLE V
BENEFITS

5.1   RETIREMENT BENEFITS

(a) The amount of monthly retirement benefit to be provided for each Participant who retires on his Normal Retirement Date (which benefit is herein called his Normal Retirement Benefit), shall be given by the benefit formula elected in Section 5.1 of the Adoption Agreement.

(b) A Participant may elect to retire on an Early Retirement Date if allowed per Section 1.7 of the Adoption Agreement. In the event that a Participant makes such an election, he shall be entitled to receive an Early Retirement Benefit equal to his Accrued Benefit payable at his Normal Retirement Date. However, if a Participant so elects, he may receive payment of an Early Retirement Benefit commencing on the first day of the month coinciding with or next following his Early Retirement Date which Early Retirement Benefit shall be determined according to Section 5.2 of the Adoption Agreement.

(c) The Normal Retirement Benefit shall be based on Average Monthly Compensation as defined in Section 1.10 of the Plan.

(d) The Normal Retirement Benefit payable to a Retired Participant pursuant to this Section 5.1 shall be as elected in Section 5.3 of the Adoption Agreement. If an alternative method of payment is made or elected pursuant to the terms of Section 5.7, such alternative method shall be the Actuarial Equivalent of the monthly pension provided in this paragraph.

(e) At the request of a Participant he may be continued in employment beyond his Normal Retirement Date. Except, however, the Participant may not be employed beyond age 70 without the written consent of the Employer. In such event, the benefit payable shall be as determined as in Section 5.4 of the Adoption Agreement.

(f) A Participant shall become fully Vested in his Normal Retirement Benefit or his Accrued Benefit if greater, pursuant to Section 1.30.

(g) If a Former Participant again becomes a Participant, such renewed participation shall not result in duplication of benefits. Accordingly, if he has received a distribution of a Vested Accrued Benefit under the Plan by reason of prior participation (and such distribution has not been repaid to the Plan with interest at an annual rate of 5%, compounded annually from the date of distribution to the date of repayment, within the earlier of (1) the end of the 2-year period beginning with the Employee's resumption of employment covered by the Plan, or (2) the end of the 5-year period beginning with the date of withdrawal), his Normal Retirement Benefit and Accrued Benefit shall be reduced by the Actuarial Equivalent (at the date of distribution) of the present value of the Accrued Benefit as of the date of distribution. It is provided, however, that repayment may not be required before the end of a period of five consecutive 1-Year Breaks in Service. It is further provided that the immediately preceding sentence shall not apply in respect of repayments made before the beginning of the first Plan Year which begins after 1984.

27

5.2    MINIMUM BENEFIT REQUIREMENT FOR TOP HEAVY PLAN

(a)  The minimum Accrued Benefit derived from Employer contributions to be provided under this Section for each Non-Key Employee who is a Participant shall equal the product of (1) one-twelfth (1/12th) of "415 compensation" averaged over the 5 consecutive "limitation years" (or actual number of "limitation years" if less) which produce the highest average and (2) the lesser of (I) two percent (2%) multiplied by Years of Service or (II) twenty percent (20%).

(b)  For purposes of providing the minimum benefit under Code Section 416, a Non-Key Employee who is not a Participant solely because (1) his Compensation is below a stated amount or (2) he declined to make mandatory contributions to the Plan will be considered to be a Participant.

(c)  For purposes of this Section, Years of Service for any Plan Year ending prior to January 1, 1984, or for any Plan Year during which the Plan was not a Top Heavy Plan shall be disregarded.

(d)  For purposes of this Section, "415 compensation" for any "limitation year" ending prior to January 1, 1984, or subsequent to the last "limitation year" during which the Plan is a Top Heavy Plan shall be disregarded.

(e)  For the purposes of this Section, "415 compensation" shall be as defined in Section 6.2(b), and shall be limited to $200,000 in Top Heavy Plan Years.

(f)  If Section 5.1(d) provides for the Normal Retirement Benefit to be paid in a form other than a single life annuity, the Accrued Benefit under this Section shall be the Actuarial Equivalent of the minimum Accrued Benefit under (a) above pursuant to Section 1.3.

(g)  If payment of the minimum Accrued Benefit commences at a date other than Normal Retirement Date, the minimum Accrued Benefit shall be the Actuarial Equivalent of the minimum Accrued Benefit commencing at Normal Retirement Date pursuant to Section 1.3.

(h)  Either 1 or 2 shall apply as the Employer shall elect in Section 5.5(b) of the Adoption Agreement:

(1)  For any Plan Year when (1) the Plan is a Top Heavy Plan but not a Super Top Heavy Plan and (2) a Key Employee is a Participant in both this Plan and a defined contribution plan included in a Required Aggregation Group which is top heavy, the extra minimum Accrued Benefit (required by Sections 6.6(c)(8) and 6.6(d) to provide the higher limitations) shall be provided for each Non-Key Employee who is a Participant by substituting three percent (3%) for two percent (2%) and thirty percent (30%) for twenty percent (20%) in (a) above.

(2)  The extra minimum Accrued Benefit (required by Sections 6.6(c)(8) and 6.6(d) to provide the higher limitations) will not be provided.

28

(I)  Either 1 or 2 shall apply as the Employer shall elect In Section 5.5(a) of the Adoption Agreement:

(1)  If a Non-Key Employee participates In this Plan and a defined contribution plan Included In a Required Aggregation Group which Is top heavy, the minimum benefits shall be provided under this Plan.

(2)(a)  In lieu of the above, If a Non-Key Employee participates In this Plan and a defined contribution plan Included In a Required Aggregation Group which Is top heavy, a minimum allocation of five percent (5%) of "415 compensation" shall be provided under the defined contribution plan.  If the defined contribution plan Is amended so that the minimum benefits are no longer provided under the defined contribution plan, the minimum benefits shall be provided under this Plan.

(2)(b)  However, for any Plan Year when (1) the Plan Is a Top Heavy Plan but not a Super Top Heavy Plan and (2) a Key Employee Is a Participant In both this Plan and a defined contribution plan Included In a Required Aggregation Group which Is top heavy, seven and one-half percent (7 1/2%) shall be substituted for five percent (5%) above.  (Not applicable If the Employer checks option 2 of Section 5.5(b) of the Adoption Agreement.)

(J)  To the extent required to be nonforfeitable under Section 5.6, the minimum Accrued Benefit under this Section may not be forfeited under Code Section 411(a)(3)(B) or Code Section 411(a)(3)(D).

## 5.3  PAYMENT OF RETIREMENT BENEFITS

When a Participant retires, the Administrator shall Immediately take all necessary steps and execute all required documents to cause the payment to him of the retirement benefit available to him under the Plan or his Accrued Benefit If greater.

## 5.4  DISABLILITY RETIREMENT BENEFITS

(a) If a Participant becomes Totally and Permanently Disabled pursuant to Section 1.50 prior to retirement or separation from service, and such condition continues for a period of six (6) consecutive months and by reason thereof such Participant's status as an Employee ceases, then said disabled Participant shall be entitled to receive the amount specified in Section 5.6 of the Adoption Agreement.  As of the Anniversary Date coinciding with or next following the event of a Participant's Total and Permanent Disability, the Administrator shall direct the Trustee to commence payment of the benefits payable hereunder pursuant to the provisions of Sections 5.7 and 5.9 as though he had retired.

(b) The benefit payable pursuant to (a) above shall be computed as of the Anniversary Date subsequent to termination of employment.

29

(c) In the event of the Terminated Participant's Total and Permanent Disability subsequent to his termination of employment, the Terminated Participant (or his Beneficiary) shall receive the Present Value of his Vested Accrued Benefit as of the Anniversary Date coinciding with or next following the date of his Total and Permanent Disability.

5.5  DEATH BENEFITS

SECTIONS (a) - (b) APPLICABLE FOR NON-INSURED PLANS ONLY

(a) If a Participant dies prior to his retirement, his Accrued Benefit shall become vested.  Such Participant's Beneficiary shall receive a death benefit equal to the value selected in Section 5.7(a) of the Adoption Agreement determined as of the Anniversary Date subsequent to or coinciding with the date of death.

(b) Death benefits payable by reason of the death of a Participant or a Retired Participant shall be paid to his Beneficiary in accordance with the following provisions:

(i)  Such death benefit shall not exceed the greater of 100 times the Participant's anticipated monthly retirement benefit determined as of his Normal Retirement Date or the reserve under the Typical Level Premium Cost Method.  Any amounts in excess shall inure to the Trust Fund and be used to reduce the future contributions of the Employer.

(ii) Upon the death of a Participant subsequent to his Retirement Date, but prior to commencement of his retirement benefits, his Beneficiary shall be entitled to a death benefit in an amount equal to the Actuarial Equivalent of the benefit the Participant would have received at his Retirement Date credited with interest subsequent to such date at the rate determined under Section 411(c)(2)(C) of the Code, if applicable.

(iii) Upon the death of a Participant subsequent to the commencement of his retirement benefits, his Beneficiary shall be entitled to whatever death benefit may be available under the settlement arrangements pursuant to which the Participant's benefit is made payable.

(iv) In the event of the Terminated Participant's death subsequent to his termination of employment, his Beneficiary shall receive the Present Value of such Participant's Vested Accrued Benefit as of the Anniversary Date coinciding with or next following the date of his death.

SECTIONS (c) - (g) APPLICABLE FOR INSURED PLANS ONLY

(c) On the Anniversary Date coinciding with or next following a Participant's satisfaction of the eligibility requirements of Section 3.1, the Administrator shall instruct the Trustee to purchase an insurance policy on the Participant's life with a face amount equal to the total face amount specified in Section 5.7(b) of the Adoption Agreement.  Additional life insurance Policies shall be purchased and/or surrendered on subsequent Anniversary Dates as are necessary to maintain a total face amount equal to the total face amount specified in said Section 5.7(b).

30

(d) It is provided, however, that the purchase of a life insurance policy or policies under Section 5.5(c) above shall be subject to such condition or conditions as the Employer selects in Section 5.7(b) of the Adoption Agreement.

(e) Death benefits payable by reason of the death of a Participant or a Retired Participant shall be paid to his Beneficiary in accordance with the following provisions:

(i) Upon the death of a Participant prior to his Retirement Date, his Beneficiary shall be entitled to a death benefit in an amount equal to the value selected in Section 5.7(c) of the Adoption Agreement, subject to the applicable limitations of this Section 5.5.

(ii) Such death benefit shall not exceed the greater of 100 times the Participant's anticipated monthly retirement benefit determined as of his Normal Retirement Date or the reserve under the Typical Level Premium Cost Method. Any amounts in excess shall inure to the Trust Fund and be used to reduce the future contributions of the Employer.

(iii) Upon the death of a Participant subsequent to his Retirement Date, but prior to commencement of his retirement benefits, his Beneficiary shall be entitled to a death benefit in an amount equal to the Actuarial Equivalent of the benefit the Participant would have received at his Retirement Date credited with interest subsequent to such date at the rate determined under Section 411(c)(2)(C) of the Code, if applicable.

(iv) Upon the death of a Participant subsequent to the commencement of his retirement benefits, his Beneficiary shall be entitled to whatever death benefit may be available under the settlement arrangements pursuant to which the Participant's benefit is made payable.

(v) In the event of the Terminated Participant's death subsequent to his termination of employment, his Beneficiary shall receive the Present Value of such Participant's Vested Accrued Benefit as of the Anniversary Date coinciding with or next following the date of his death.

(f) For a Participant who is found by the Administrator to be insurable only at a mortality classification other than standard, the Trustees on a uniform and nondiscriminatory basis shall either (1) purchase a whole life or term insurance Contract, as the case may be, with a face amount that can be purchased at the standard rate for coverage as provided in Section 5.5(c) for such Participant if he could obtain such coverage, or (2) allow the Participant the right to pay the additional premium attributable to the excess mortality hazards. If a Participant is determined to be uninsurable, no life insurance Contract shall be required to be purchased on the life of such Participant.

(g) If a Participant dies before any insurance coverage to which he is entitled under this Agreement is effected, his death benefit from such insurance coverage shall be limited to the standard-rated premium which was or should have been used for such purpose.

31

(h)  The Administrator may require such proper proof of death and such evidence of the right of any person to receive the death benefit payable as a result of the death of a Participant as the Administrator may deem desirable.  The Administrator's determination of death and the right of any person to receive payment shall be conclusive.

(i)  Unless otherwise elected in the manner prescribed in Section 5.8, the Beneficiary of the death benefit shall be the Participant's spouse, who shall receive such benefit in the form of a Pre-Retirement Survivor Annuity pursuant to Section 5.8.  Except, however, the Participant may designate a Beneficiary other than his spouse if:

(i)  the Participant and his spouse have validly waived the Pre-Retirement Survivor Annuity in the manner prescribed in Section 5.8, and the spouse has waived his or her right to be the Participant's Beneficiary, or

(ii)  the Participant has no spouse, or

(iii) the spouse cannot be located.

In such event, the designation of a Beneficiary shall be made on a form satisfactory to the Administrator.  A Participant may at any time revoke his designation of a Beneficiary or change his Beneficiary by filing written notice of such revocation or change with the Administrator.  However, the Participant's spouse must again consent in writing to any such change or revocation.  In the event no valid designation of Beneficiary exists at the time of the Participant's death, the death benefit shall be payable to his estate.

(j)  The benefit payable under this Section shall be paid pursuant to the provisions of Sections 5.8 and 5.9.

(k)  In no event shall the death benefit payable to a surviving spouse be less than the Actuarial Equivalent of the "minimum spouse's death benefit".

(l)  For the purposes of this Section, the "minimum spouse's death benefit" means a death benefit for a married Participant payable in the form of a Pre-Retirement Survivor Annuity.  Such annuity payments shall be equal to the amount which would be payable as a survivor annuity under the joint and survivor annuity under the Plan if:

(i)  in the case of a Participant who dies after the Early Retirement Age, such Participant had retired with an immediate joint and survivor annuity on the day before the Participant's date of death, or

(ii)  in the case of a Participant who dies or or before the Early Retirement Age, such Participant had:

(A)  separated from service on the date of his death,

(B)  survived to the Early Retirement Age,

(C)  retired with an immediate joint and survivor annuity at the Early Retirement Age, and

(D)  died on the day after the day on which said Participant would
have attained the Early Retirement Age.

5.6    TERMINATION OF EMPLOYMENT BEFORE RETIREMENT

(a)  When a Participant has incurred a 1-Year Break in Service, his
participation in the Plan shall cease.  Payment to a Former Participant
of the Vested portion of his Accrued Benefit, unless he otherwise elects,
shall begin not later than the 60th day after the close of the Plan Year
in which the latest of the following events occurs:

(1)  the date on which the Participant attains the earlier of age 65
or the Normal Retirement Age specified herein,

(2)  the 10th anniversary of the year in which the Participant commenced
participation in the Plan, or

(3)  the date the Participant terminates his service with the Employer.

However, the Administrator may, in accordance with a nondiscriminatory
policy, direct earlier payment of the Vested portion of the Present Value
of Accrued Benefit pursuant to Section 5.7.  If the Vested portion of Present
Value of Accrued Benefit at time of payment exceeds $1,750, the Terminated
Participant must give written consent to the Administrator before payment
can be made.  For Plan Years beginning after December 31, 1984, this amount
shall be adjusted to $3,500.  Further, the spouse must consent in writing
to any such distribution.  In no event, however, shall a distribution be
made to a Terminated Participant until such time as he has incurred a
1-Year Break in Service.

For the purposes of determining the Present Value of Accrued Benefit in
this regard, the interest rate assumption shall be the lesser of the rate
specified in Section 1.3 or the rate used by the Pension Benefit Guaranty
Corporation for plan terminations.

(Applicable for insured Plans only)  If Contracts have been issued under
the Plan on the life of a Terminated Participant, the Administrator may:
(1) surrender such Contracts to the insurer for their cash value and such
cash shall become part of the Trust Fund assets; or (2) in the event that
the Vested portion of the Terminated Participant's Present Value of Accrued
Benefit equals or exceeds the cash surrender values of any Contracts, the
Trustee, when so directed by the Administrator and agreed to by the Terminated
Participant, shall assign, transfer, and set over to such Terminated Participant
all Contracts on his life in such form or with such endorsements, if any,
as the Administrator may, in his discretion, direct, restricting the right
of the Terminated Participant to surrender, assign, or otherwise realize
cash on the Contract or Contracts prior to Normal Retirement Date.  In the
event that the Vested portion of the Terminated Participant's Present Value
of Accrued Benefit does not at least equal the cash surrender values of
the Contracts, if any, the Terminated Participant may, with the approval of
the Administrator, pay over to the Trustee the sum needed to make the
distribution equal to the value of the Contracts being assigned or transferred,
or the Trustee may borrow the cash surrender values of the Contracts from
the insurer and then assign the Contracts to the Terminated Participant.

33

That portion of a Terminated Participant's Accrued Benefit that is not Vested shall be forfeited and used only to reduce future costs of the Plan.

(b) The Vested portion of any Participant's Accrued Benefit shall be a percentage of such Participant's Accrued Benefit determined on the basis of the Participant's number of Years of Service according to the Vesting Schedule elected in Section 5.8 of the Adoption Agreement.

(c) Notwithstanding the vesting schedule in paragraph (b) above, for any Top Heavy Plan Year, the Vested portion of any Participant's Accrued Benefit shall be determined on the basis of the Participant's number of Years of Service according to the schedule elected in Section 5.9 of the Adoption Agreement.

If in any subsequent Plan Year, the Plan ceases to be a Top Heavy Plan, the Administrator shall revert to the vesting schedule in effect before this Plan became a Top Heavy Plan. Any such reversion shall be treated as a Plan amendment pursuant to the terms of this Agreement.

(d) (Applicable to amended or restated plan) Notwithstanding the vesting schedule above, the Vested percentage of a Participant's Accrued Benefit shall not be less than the Vested percentage attained as of the later of the effective date or adoption date of this amendment and restatement.

(e) The computation of a Participant's nonforfeitable percentage of his interest in the Plan shall not be reduced as the result of any direct or indirect amendment to this Article. In the event that this Agreement is amended to change or modify any vesting schedule, a Participant with at least five (5) Years of Service as of the expiration date of the election period may elect to have his nonforfeitable percentage computed under the Plan without regard to such amendment. If a Participant fails to make such election, then such Participant shall be subject to the new vesting schedule. The Participant's election period shall commence on the adoption date of the amendment and shall end 60 days after the latest of:

(i) the adoption date of the amendment,

(ii) the effective date of the amendment, or

(iii) the date the Participant receives written notice of the amendment from the Employer of Administrator.

(f) If any Terminated Participant shall be reemployed by the Employer before a 1-Year Break in Service occurs, he shall continue to participate in the Plan in the same manner as if such termination had not occurred.

(1) If any Former Particiant is reeemployed after a 1-Year Break in Service has occurred, for the purposes of Section 5.6(b) and for calculating Plan Years of Service, the Years of Service and Plan Years of Service shall include Years of Service and Plan Years of Service prior to his 1-Year Break in Service subject to the following rules:

34

(i) If a Former Participant completes a Year of Service, his pre-break and post-break service shall be used for computing Years of Service for eligibility and for vesting purposes only after he has been employed for one (1) Year of Service following the date of his reemployment with the Employer;

(ii) Each non-vested Former Participant shall lose credits otherwise allowable under (i) above if his consecutive 1-Year Break in Service equal or exceed the greater of (A) five (5) or (B) the aggregate number of his pre-break Years of Service.

(iii) If a Former Participant completes one (1) Year of Service for eligibility purposes following his reemployment with the Employer, he shall participate in the Plan retroactively from his date of reemployment;

(iv) If a Former Participant completes a Year of Service (a 1-Year Break in Service previously occurred, but employment had not terminated), he shall participate in the Plan retroactively from the first day of the Plan Year during which he completes one (1) Year of Service.

(g) In determining Years of Service for purposes of Section 5.6(b), Years of Service elected in Section 5.9 of the Adoption Agreement (if any) shall be excluded.

## 5.7    DISTRIBUTION OF BENEFITS

(Applicable if Normal form of benefit is other than 100% Joint & Survivor Annuity)

(a)1.  Unless otherwise elected as provided below, a Participant who is married on the "annuity starting date" and who retires under the Plan shall receive the value of his benefits in the form of a joint and survivor annuity. Such joint and survivor benefits following the Participant's death shall continue to the spouse during the spouse's lifetime at a rate equal to 50% of the rate at which such benefits were payable to the Participant. The Participant may elect to receive a smaller annuity benefit with continuation of payments to the spouse at a rate of seventy-five percent (75%) or one hundred percent (100%) of the rate payable to a Participant during his lifetime. An unmarried Participant shall receive the value of his benefit in the form of a life annuity.  Such unmarried Participant, however, may elect in writing to waive the life annuity.  The election must comply with the provisions of this Section as if it were an election to waive the joint and survivor annuity by a married Participant, but without the spousal consent requirement.  The joint and survivor annuity and the life annuity form of distribution shall be the Actuarial Equivalent of the benefit due the Participant.

(Applicable if Normal form of benefit is a 100% Joint & Survivor Annuity)

(a)1.  Unless otherwise elected as provided below, a Participant who is married on the "annuity starting date" and who retires under the Plan shall receive the value of his benefits in the form of a joint and survivor annuity.  Such joint and survivor benefits following the Participant's death shall continue to the spouse during the spouse's lifetime at a rate equal to 100% of the rate at which such benefits were payable to the Participant.

35

An unmarried Participant shall receive the value of his benefit in the form of a life annuity. Such unmarried Participant, however, may elect in writing to waive the life annuity. The election must comply with the provisions of this Section as if it were an election to waive the joint and survivor annuity by a married Participant, but without the spousal consent requirement. The joint and survivor annuity and the life annuity form of distribution shall be the Actuarial Equivalent of the benefit due the Participant.

2. Any election to waive the joint and survivor annuity must be made by the Participant in writing during the election period and be consented to by the Participant's spouse. Such spouse's consent must acknowledge the effect of such election and be witnessed by a Plan representative or a notary public. Such consent shall not be required if it is established to the satisfaction of the Administrator that the required consent cannot be obtained because there is no spouse, the spouse cannot be located, or other circumstances that may be prescribed by Treasury regulations. Neither shall such consent be required in respect of benefits attributable to the Participant's Qualified Voluntary Employee Contribution Account. The election made by the Participant and consented to by his spouse may be revoked by the Participant in writing without the consent of the spouse at any time during the election period. Any new election must comply with the requirements of this paragraph. A former spouse's waiver shall not be binding on a new spouse.

3. The election period to waive the joint and survivor annuity shall be the 90 day period ending on the "annuity starting date."

4. For purposes of this Section, the "annuity starting date" means the first day of the first period for which an amount is received as an annuity (whether by reason of retirement or disability).

5. With regard to the election, the Administrator shall provide the Participant within a reasonable period of time before the "annuity starting date" (and consistent with Treasury regulations), a written explanation of:

(i)    the terms and conditions of the joint and survivor annuity, and

(ii)    the Participant's right to make an election to waive the joint and survivor annuity, and

(iii)    the right of the Participant's spouse to consent to any election to waive the joint and survivor annuity, and

(iv)    the right of the Participant to revoke such election, and the effect of such revocation.

6. The joint and survivor annuity requirements provided for in this Section shall apply only to Participants who are credited with an Hour of Service on or after August 23, 1984. Former Participants who are not credited with an Hour of Service on or after August 23, 1984 shall have the right to have joint and survivor annuities provided to them in accordance with the provisions of Section 303(e)(1) of the Retirement Equity Act of 1984 and, if this Plan is a successor to another plan, in accordance with the terms of such other plan as in effect from time to time before the effective date of the Adoption Agreement.

36

(b) In the event a Participant duly elects pursuant to paragraph (a)(2) above not to receive the retirement benefit in the form of a joint and survivor annuity, or if such Participant is not married, in the form of a life annuity, the Administrator in his sole discretion shall direct the Trustee to distribute to a Participant or his Beneficiary an amount which is the Actuarial Equivalent of the monthly retirement benefit provided in Section 5.1(d) in one or more of the following methods:

36(a)

(I) One lump-sum payment in cash or in property;

(II) Payments over a period certain in monthly, quarterly, semiannual, or annual cash installations. The period over which such payment is to be made shall not extend beyond the Participant's life expectancy (or the life expectancy of the Participant and his designated Beneficiary).

(III) Purchase of an annuity. However, such annuity may not be in any form that will provide for payments over a period extending beyond either the life of the Participant (or the lives of the Participant and his designated Beneficiary) or the life expectancy of the Participant (or the life expectancy of the Participant and his designated Beneficiary).

(c) A Retired or Terminated Participant's Vested benefit may not be paid without his written consent if its value exceeds $3,500 ($1,750 in the case of a pre-REA distribution, that is, a distribution of a Vested benefit in a Plan Year beginning before 1985). Furthermore, the spouse of a Retired or Terminated Participant must consent in writing to any such distribution (including a pre-REA distribution) which exceeds $3,500. If the value of a Retired or Terminated Participant's Vested benefit does not exceed $3,500 ($1,750 in the case of a pre-REA distribution), the Administrator may immediately distribute such Vested benefit without the consent of such Retired or Terminated Participant or the spouse of such Retired or Terminated Participant. No distribution (including a pre-REA distribution) may be made pursuant to the immediately preceding sentence after the annuity starting date unless both the Retired or Terminated Participant and the spouse of the Retired or Terminated Participant consent in writing to such distribution.

For the purposes of this Section 5.7(c), except for the purpose of determining whether a pre-REA distribution may be made without the written consent of a Retired or Terminated Participant, the Vested benefit of a Retired or Terminated Participant is the sum of his Voluntary Contribution Account and the Vested portion of his Accrued Benefit and does not include his Qualified Voluntary Employee Contribution Account. For the purpose of determining whether a pre-REA distribution may be made without the consent of the Retired or Terminated Participant, the Vested benefit of a Retired or Terminated Participant is the Vested portion of his Accrued Benefit.

For the purpose of determining the value of a Vested benefit for the purposes of this Section 5.7(c), except for the purpose of determining whether a pre-REA distribution may be made without the consent of the Retired or Terminated Participant, the interest rate assumption used in the determination of a Present Value of Accrued Benefit shall be the lesser of the rate specified in Section 1.2 of the Adoption Agreement or the rate used by the Pension Benefit Guaranty Corporation for plan terminations.

(d) If the Participant's entire interest is to be distributed in other than a lump sum, then the amount to be distributed each year must be at least an amount equal to the quotient obtained by dividing the Participant's entire interest by the life expectancy of the Participant or the joint and last survivor expectancy of the Participant and his designated Beneficiary.

37

(e) If the Administrator shall elect to distribute a Participant's retirement benefit to him and his Beneficiaries over a period in excess of the Participant's then life expectancy, the then present value of the payments to be made over the period of the Participant's then life expectancy must be more than fifty percent (50%) of the then present value of the total payments to be made to the Participant and his Beneficiaries.

Except, however this paragraph shall not apply to a distribution in the form of a joint and survivor annuity pursuant to Section 5.7(a).

(f) Notwithstanding any provision in this Agreement to the contrary, a Participant's benefits shall be distributed to him not later than April 1 of the calendar year following the later of (i) the calendar year in which he attains age seventy and one-half (70 1/2) or (ii) in the case of a Participant other than a "five (5) percent owner" (as defined in Section 1.26(c)), the calendar year in which he retires. Alternatively, distributions to a Participant must begin no later than the April 1 following such calendar year and must be made over the life of the Participant (or the lives of the Participant and the Participant's designated Beneficiary) or the life expectancy of the Participant (or the life expectancies of the Participant and his designated Beneficiary).

(g) For purposes of this Section, the life expectancy of a Participant and a Participant's spouse (other than in the case of a life annuity) may be redetermined, but not more frequently than annually, and in accordance with such rules as may be prescribed by Treasury regulations. Further, life expectancy and joint and last survivor expectancy shall be computed using the return multiples of Regulation 1.72-9.

(h) Subject to the spouse's right of consent afforded under the Plan, the restrictions imposed by this Section shall not apply if a Participant has, prior to January 1, 1984, made a written designation to have his retirement benefit paid in an alternative method acceptable under Code Section 401(a) as in effect prior to the enactment of the Tax Equity and Fiscal Responsibility Act of 1982.

5.8   DISTRIBUTION OF BENEFITS UPON DEATH

(a) Unless otherwise elected as provided below, a Vested Participant who dies before the annuity starting date and who has a surviving spouse shall have his death benefit paid to his surviving spouse in the form of a Pre-Retirement Survivor Annuity. Payment of such benefits must commence by the date the Participant would have attained the Early Retirement Age under the Plan.

(b) Any election to waive the Pre-Retirement Survivor Annuity must be made by the Participant in writing during the election period and shall require the spouse's consent in the same manner provided for in Section 5.7(a)(2).

(c) The election period to waive the Pre-Retirement Survivor Annuity shall begin on the first day of the Plan Year in which the Participant attains age 35 and end on the date of the Participant's death. In the event a Vested Participant separates from service prior to the beginning of the election period, the election period shall begin on the date of such separation from service.

38

(d)  With regard to the election, the Administrator shall provide each Participant within the period beginning with the first day of the Plan Year in which the Participant attains age 32 and ending with the close of the Plan Year preceding the Plan Year in which the Participant attains age 35, a written explanation of the Pre-Retirement Survivor Annuity containing comparable information to that required pursuant to Section 5.7(a)(5).  If the Participant enters the Plan after the first day of the Plan Year in which the Participant attained age 32, the Administrator shall provide notice no later than the close of the second Plan Year following the entry of the Participant into the Plan.

(e)  The Pre-Retirement Survivor Annuity provided for in this Section shall apply to Participants who are credited with an Hour of Service on or after August 23, 1984.  Former Participants who are not credited with an Hour of Service on or after August 23 shall be provided with rights to the Pre-Retirement Survivor Annuity in accordance with Section 303(e)(2) of the Retirement Equity Act of 1984.

(f)  If the value of the Death Benefit of a Participant does not exceed $3,500, the Administrator may direct the immediate distribution of such Death Benefit to the Participant's surviving spouse, but the written consent of such spouse shall be required if the distribution is made after the annuity starting date. If the Value exceeds $3,500, an immediate distribution of such Death Benefit may be made to the surviving spouse, if such surviving spouse consents in writing to such distribution.  For the purposes of this Section 5.8(f), the Death Benefit of a Participant is equal to the sum of his Voluntary Contribution Account and his Pre-Retirement Survivor Annuity and does not include his Qualified Voluntary Employee Contribution Account.

(g)1.  In the event the death benefit is not paid in the form of a Pre-Retirement Survivor Annuity, it shall be paid to the Participant's Beneficiary by either of the following methods, to be determined in the sole discretion of the Administrator:

   (i) One lump-sum payment in cash or in property;

   (ii) Payment in monthly, quarterly, semi-annual, or annual cash installments over a period to be determined in the sole discretion of the Administrator, and in installments as nearly equal as practicable. After periodic installments commence, the Administrator shall have the right, in the Administrator's sole discretion, to direct the Trustee to reduce the period over which such periodic installments shall be made, and the Trustee shall adjust the cash amount of such periodic installments accordingly.

2. In the event the death benefit payable pursuant to Section 5.5 is payable in installments, then, upon the death of the Participant, the Administrator shall direct the Trustee to segregate into a separate Trust Fund(s) the death benefit as provided in Section 5.5(a), and the Trustee shall invest such segregated Trust Funds separately, and the funds accumulated in such Trust Fund(s) shall be used for the payment of the installments hereinabove provided.

39

3. The Administrator, in his sole discretion, may direct the Trustee to (1) accelerate any installment payment to a Participant's Beneficiary for any reason the Administrator in his discretion deems sufficient, or (2) at any time, purchase for the benefit of the Participant's Beneficiary an annuity with all monies or property held in the segregated Trust Fund(s).

(h) If the distribution of a Participant's interest has begun in accordance with a method selected in Section 5.7 and the Participant dies before his entire interest has been distributed to him, the remaining portion of such interest shall be distributed at least as rapidly as under the method of distribution selected pursuant to Section 5.7 as of his date of death.

(i) If a Participant dies before he has begun to receive any distributions of his interest under the Plan, his death benefit shall be distributed to his Beneficiaries within 5 years after his death.

(j) The 5-year distribution requirement of Section 5.8(i) shall not apply to any portion of the deceased Participant's interest which is payable to or for the benefit of a designated Beneficiary. In such event, such portion may be distributed over the life of such designated Beneficiary (or over a period not extending beyond the life expectancy of such designated Beneficiary (or over a period not extending beyond the life expectancy of such designated Beneficiary) provided such distribution begins not later than one (1) year after the date of the Participant's death (or such later date as may be prescribed by Treasury regulations).

Except, however, in the event the Participant's spouse is his Beneficiary, the requirement that distributions commence within one year of a Participant's death shall not apply. In lieu thereof, such distribution must commence no later than the date on which the deceased Participant would have attained age seventy and one-half (70 1/2). If the surviving spouse dies before the distributions to such spouse begin, then the 5-year distribution requirement of Section 5.8(i) shall apply as if the spouse were the Participant.

(k) For the purposes of this Section, the life expectancy of a Participant and a Participant's spouse (other than in the case of a life annuity) may be redetermined, but not more frequently than annually and in accordance with such rules as may be prescribed by Treasury regulations. Further, life expectancy and joint and last survivor expectancy shall be computed using the return multiples of Regulation 1.72-9.

(l) Subject to the spouse's right of consent afforded under the Plan, the restrictions imposed by this Section shall not apply if a Participant has, prior to January 1, 1984, made a written designation to have his death benefits paid in an alternative method acceptable under Section 401(a) as in effect prior to the enactment of the Tax Equity and Fiscal Responsibility Act of 1982.

## 5.9    TIME OF SEGREGATION OR DISTRIBUTION

Notwithstanding any other provision of this Agreement to the contrary, whenever the Trustee is to make a distribution or to commence a series of payments on or as of an Anniversary Date, the distribution or series of payments may be made or begun on such date or as soon thereafter as is practicable, but in no event later than 180 days after the Anniversary Date. Except, however, unless otherwise elected in writing, (such election may not result in a death benefit that is more than incidental) pursuant to Section 5.7 above, by the Former Participant, a distribution as the result of Normal, Early or Late Retirement shall begin not later than the 60th day after the close of the Plan Year in which the latest of the following events occurs:

(1) the date on which the Participant attains the earlier of age 65 or the Normal Retirement Age specified herein,

(2) the 10th anniversary of the year in which the Participant commenced participation in the Plan, or

(3) the date the Participant terminates his service with the Employer.

## 5.10    DISTRIBUTION FOR MINOR BENEFICIARY

In the event a distribution is to be made to a minor, then the Administrator may, in the Administrator's sole discretion, direct that such distribution be paid to the legal guardian, or if none, to a parent of such Beneficiary or a responsible adult with whom the Beneficiary maintains his residence, or to the custodian for such Beneficiary under the Uniform Gift to Minors Act or Gift to Minors Act, if such is permitted by the laws of the state in which said Beneficiary resides. Such a payment to the legal guardian or parent of a minor Beneficiary shall fully discharge the Trustee, Employer, and Plan from further liability on account thereof.

## 5.11    MINIMUM BENEFITS PAYABLE

Notwithstanding the provisions of Sections 5.1(b) and 5.4, the benefits payable to a Participant or a Beneficiary pursuant to such Sections shall not be less than a Participant's Present Value of Vested Accrued Benefit as of the date of distribution.

## 5.12    LOCATION OF PARTICIPANT OR BENEFICIARY UNKNOWN

In the event that all, or any portion, of the distribution payable to a Participant or his Beneficiary hereunder shall, at the expiration of five (5) years after it shall become payable, remain unpaid solely by reason of the inability of the Administrator, after sending a registered letter, return receipt requested, to the last known address, and after further diligent effort, to ascertain the whereabouts of such Participant or his Beneficiary, the amount so distributable shall be forfeited and shall be used to reduce the cost of the Plan. In the event a Participant or Beneficiary is located subsequent to his benefit being forfeited, such benefit shall be restored.

5.13    EFFECT OF SOCIAL SECURITY ACT

Benefits being paid to a Participant or Beneficiary under the terms of
this Agreement may not be decreased by reason of any post-separation
Social Security benefit increases or by the increase of the Social
Security wage base under Title II of the Social Security Act.  Benefits
to which a Former Participant has a Vested Interest may not be decreased
by reason of an increase in a benefit level or wage base under Title II of
the Social Security Act.

5.14    LIMITATION ON DISTRIBUTIONS

In the event a Participant receives a distribution of his Vested Accrued
Benefit prior to his Normal Retirement Date, the amount of the distribu-
tion shall be limited to the amount payable per Section 5.1(b).

5.15    LIMITATIONS ON BENEFITS

All rights and benefits, including elections, provided to a Participant in
this Plan shall be subject to the rights afforded to any "alternative payee"
under a "qualified domestic relations order" as those terms are defined in
Code Section 414(p).

5.16    PRE-REA DISTRIBUTIONS

If the effective date of the Adoption Agreement occurs before the REA effective
date, pre-REA distributions (distributions of benefits before the REA effective
date) shall be made as follows:

1.    If this Plan is a successor to another plan, pre-REA distributions shall
be made in accordance with (i) the terms of such other plan as in effect from
time to time before the effective date of the Adoption Agreement, (ii) the
provisions of Sections 303(c)(2) and 303(e) of REA and (iii) the provisions
of Section 5.7(a)(2) of this Plan.

2.    If this Plan is a new plan, pre-REA distributions shall be made in
accordance with the applicable provisions of this Plan.

"REA" means the Retirement Equity Act of 1984, including regulations and
rulings thereunder and any amendments to said Act, regulations or rulings.
"REA effective date" means the first day of the first Plan Year beginning
after 1984.

## ARTICLE VI

### CODE SECTION 415 LIMITATIONS

6.1  ANNUAL BENEFIT

For purposes of this Article, "annual benefit" means the benefit payable annually, under the terms of the Plan (exclusive of any benefit not required to be considered for purposes of applying the limitations of Code Section 415 to the Plan) payable in the form of a straight life annuity with no ancillary benefits.  If the benefit under the Plan is payable in any other form, the "annual benefit" shall be adjusted to the equivalent of a straight life annuity pursuant to Section 6.3(c).

6.2  MAXIMUM ANNUAL BENEFIT

(a)  Notwithstanding the foregoing and subject to the exceptions below, the maximum "annual benefit" payable to a Participant under this Plan in any "limitation year" shall equal the lesser of:  (1) $90,000 or (2) one hundred percent (100%) of the Participant's "415 compensation" averaged over the three consecutive "limitation years" (or actual number of "limitation years" for Employees who have been employed for less than three consecutive "limitation years") during which the Employee had the greatest aggregate "415 compensation" from the Employer.

(b)  For purposes of applying the limitations of Code Section 415, "415 compensation" shall include the Participant's wages, salaries, fees for professional service and other amounts for personal services actually rendered in the course of employment with an Employer maintaining the Plan (including, but not limited to, commission paid salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips and bonuses and in the case of a Participant who is an Employee within the meaning of Code Section 401(c)(1) and the regulations thereunder, the Participant's earned income (as described in Code Section 401(c)(2) and the regulations thereunder)) paid or accrued during the "limitation year". "415 compensation" shall exclude (1)(A) contributions made by the Employer to a plan of deferred compensation to the extent that, before the application of the Code Section 415 limitations to the Plan, the contributions are not includable in the gross income of the Employee for the taxable year in which contributed, (B) Employer contributions made on behalf of an Employee to a simplified employee pension plan described in Code Section 408(k) to the extent such contributions are deductible by the Employee under Code Section 219(a), (C) any distributions from a plan of deferred compensation regardless of whether such amounts are includable in the gross income of the Employee when distributed except that any amounts received by an Employee pursuant to an unfunded non-qualified plan to the extent such amounts are includable in the gross income of the Employee; (2) amounts realized from the exercise of a non-qualified stock option or when restricted stock (or property) held by an Employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture; (3) amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option; and

43

(4) other amounts which receive special tax benefits, such as premiums for group term life insurance (but only to the extent that the premiums are not includable in the gross income of the Employee), or contributions made by the employer (whether or not under a salary reduction agreement) towards the purchase of any annuity contract described in Code Section 403(b) (whether or not the contributions are excludable from the gross income of the Employee).

(c)  For purposes of applying the limitations of Code Section 415, the "limitation year" shall be as defined in Section 1.5 of the Adoption Agreement.

(d)  Notwithstanding anything in this Article to the contrary, the maximum "annual benefit" for any Participant in a defined benefit plan in existence on July 1, 1982, shall not be less than the protected current accrued benefit, payable annually, provided for under question T-3 of Internal Revenue Service Notice 83-10.

(e)  The limitation stated in paragraph (a)(1) above shall be adjusted annually as provided in Code Section 415(d) pursuant to the regulations prescribed by the Secretary of the Treasury.  The adjusted limitation is effective as of January 1st of each calendar year and is applicable to "limitation years" ending with or within that calendar year.

(f)  The limitation stated in paragraph (a)(2) above for Participants who have separated from service with a nonforfeitable right to an Accrued Benefit shall be adjusted annually as provided in Code Section 415(d) pursuant to the regulations prescribed by the Secretary of the Treasury.

(g)  For the purpose of this Section, all qualified defined benefit plans (whether terminated or not) ever maintained by the Employer shall be treated as one defined benefit plan, and all qualified defined contribution plans (whether terminated or not) ever maintained by the Employer shall be treated as one defined contribution plan.

(h)  For the purpose of this Section, if the Employer is a member of a controlled group of corporations, trades or businesses under common control (as defined by Code Section 1563(a) or Code Section 414(b) and (c) as modified by Code Section 415(h)) or is a member of an affiliated service group (as defined by Code Section 414(m)), all Employees of such Employers shall be considered to be employed by a single Employer.

(i)  For the purpose of this Section, if this Plan is a Code Section 413(c) plan, all Employers of a Participant who maintain this Plan will be considered to be a single Employer.

6.3  ADJUSTMENTS TO ANNUAL BENEFIT AND LIMITATIONS

(a)  If the "annual benefit" begins before age 62, the $90,000 limitation shall be reduced so that it is the actuarial equivalent of the $90,000 limitation beginning at age 62.  However, the $90,000 limitation shall not be actuarially reduced to less than:  (1) $75,000 if the "annual benefit" commences on or after age 55, or (2) the amount which is the actuarial equivalent of the $75,000 limitation at age 55 if the "annual benefit" commences prior to age 55.

(b)  If the "annual benefit" begins after age 65, the $90,000 limitation shall be increased so that it is the actuarial equivalent of the $90,000 limitation at age 65.

(c)  For purposes of adjusting the "annual benefit" to a straight life annuity, the adjustment shall be made pursuant to Section 1.3 except that the interest rate assumption shall be the greater of five percent (5%) or the rate specified in Section 1.3

(d)  For purposes of adjusting the $90,000 limitation applicable prior to age 62 or the $75,000 limitation applicable prior to age 55, the adjustment shall be made pursuant to Section 1.3 except that the interest rate assumption shall be the greater of five percent (5%) or the rate specified in Section 1.3 and the mortality decrement shall be ignored to the extent that a forfeiture does not occur at death.

(e)  For purposes of adjusting the $90,000 limitation applicable after age 65, the adjustment shall be made pursuant to Section 1.3 except that the interest rate assumption shall be the lesser of five percent (5%) or the rate specified in Section 1.3 and the mortality decrement shall be ignored to the extent that a forfeiture does not occur at death.

(f)  For purposes of Sections 6.1, 6.3(a) and 6.3(b), no adjustments under Code Section 415(d) shall be taken into account before the "limitation year" for which such adjustment first takes effect.

6.4  ANNUAL BENEFIT NOT IN EXCESS OF $10,000

This Plan may pay an "annual benefit" to any Participant in excess of his maximum "annual benefit" if the "annual benefit" derived from Employer contributions under this Plan and all other defined benefit plans maintained by the Employer does not in the aggregate exceed $10,000 for the "limitation year" or for any prior "limitation year" and the Employer has not at any time maintained a defined contribution plan in which the Participant participated. For purposes of this paragraph, if this Plan provides for voluntary or mandatory Employee contributions, such contributions will not be considered a separate defined contribution plan maintained by the Employer.

6.5  REDUCTION FOR SERVICE LESS THAN 10 YEARS

If a Participant has less than (10) years of service with the Employer at the time he begins to receive benefits under the Plan, the limitations in Sections 6.2, 6.3 and 6.4 shall be reduced by multiplying such limitations by a fraction (a) the numerator of which is the number of years of service (or part thereof) with the Employer and (b) the denominator of which is ten (10).

6.6  MULTIPLE PLAN REDUCTION

(a)  Subject to the exception in Section 6.6(e) below, if an Employee is (or has been) a Participant in one or more defined benefit plans and one or more defined contribution plans maintained by the Employer, the sum of the defined benefit plan fraction and the defined contribution fraction for any "limitation year" may not exceed 1.0.

45

(b) .The defined benefit plan fraction for any "limitation year" is a
fraction (1) the numerator of which is the projected "annual benefit" of
the Participant under the Plan (determined as of the close of the "limitation
year" pursuant to Regulation 1.415-7(b)(3)), and (2) the denominator of
which is the greater of the product of 1.25 multiplied by the "annual benefit"
described in 6.2(d) or the lesser of:  (A) the product of 1.25 multiplied
by the maximum dollar limitation provided under Section 6.2(a)(1) for such
"limitation year", or (B) the product of 1.4 multiplied by the amount which
may be taken into account under Section 6.2(a)(2) for such "limitation year".

(c)1.   The defined contribution plan fraction for any "limitation year" is a
fraction (A) the numerator of which is the sum of the "annual additions" to
the "participant's account" as of the close of the "limitation year" and
(B) the denominator of which is the sum of the lesser of the following amounts
determined for such year and each prior year of service with the Employer:
(1) the product of 1.25 multiplied by the dollar limitation in effect under
Code Section 415(c)(1)(A) for such "limitation year" (determined without
regard to Code Section 415(c)(6), or (II) the product of 1.4 multiplied by
the amount which may be taken into account under Code Section 415(c)(1)(B)
for such "limitation year".

    2.   Notwithstanding the foregoing, the numerator of the defined contribution
plan fraction shall be adjusted pursuant to Regulation 1.415-7(d)(1) and
questions T-6 and T-7 of Internal Revenue Service Notice 83-10.

    3.   For purposes of this Article, the term "participant's account" shall
mean the account established and maintained by the Administrator for each
Participant with respect to his total interest in the defined contribution
plan maintained by the Employer resulting from "annual additions".

    . 4.   For purposes of this Article, the term "annual additions" shall mean
the sum credited to a "participant's account" for any "limitation year" of
(A) Employer contributions, (B) the lesser of employee contributions in
excess of six percent (6%) of "415 compensation" or one-half of employee
contributions, (C) Forfeitures, (D) amounts allocated after March 31, 1984,
to an individual medical account, as defined in Code Section 415(l)(1) which
is part of a defined benefit plan maintained by the Employer, and (E) amounts
derived from contributions paid or accrued after December 31, 1985, in
taxable years ending after such date, which are attributable to post-retirement
medical benefits allocated to the separate account of a key employee (as
defined in Code Section 419A(d)(3)) under a welfare benefit plan (as defined
in Code Section 419(e) maintained by the Employer.

    5.   If as a result of a reasonable error in estimating a Participant's
Compensation or other facts and circumstances to which Regulation 1.415-
6(b)(6) shall be applicable, voluntary employee contributions for the
"limitation year" would cause the "annual additions" credited to a "participant's
account" to exceed the lesser of (A) $30,000 (or such greater amount as may
be determined by the Secretary of the Treasury or (B) twenty-five percent
(25%) of the Participant's "415 compensation" for such limitation year, the
Administrator shall, pursuant to Regulation 1.415-6(b)(6)(iv), return such
voluntary employee contributions to the Participant to the extent necessary
so that "annual additions" for the "limitation year" do not exceed the lesser
of. (A) or (B).

6.  For defined contribution plans in effect on or before July 1, 1982, the Administrator may elect, for any "limitation year" ending after December 31, 1982, that the amount taken into account in the denominator for every Participant for all "limitation years" ending before January 1, 1983 shall be an amount equal to the product of (A) the denominator for the "limitation year" ending in 1982 determined under the law in effect for the "limitation year" ending in 1982 multiplied by (B) the "transition fraction".

7.  For purposes of the preceding paragraph, the term "transition fraction" shall mean a fraction (A) the numerator of which is the lesser of (I) $51,875 or (II) 1.4 multiplied by twenty-five percent (25%) of the Participant's "415 compensation" for the "limitation year" ending in 1981, and (B) the denominator of which is the lesser of (I) $41,500 or (II) twenty-five percent (25%) of the Participant's "415 compensation" for the "limitation year" ending in 1981.

8.  Notwithstanding the foregoing, for any "limitation year" in which the Plan is a Top Heavy Plan, $41,500 shall be substituted for $51,875 in determining the "transition fraction" unless the extra minimum benefit is being provided pursuant to Section 5.2.  However, for any "limitation year" in which this Plan is a Super Top Heavy Plan, $41,500 shall be substituted for $51,875 in any event.

(d)  Notwithstanding the foregoing, for any "limitation year" in which the Plan is a Top Heavy Plan, 1.0 shall be substituted for 1.25 in Sections 6.6(b) and 6.6(c)(1) unless the extra minimum benefit is being provided pursuant to Section 5.2.  However, for any "limitation year" in which the Plan is a Super Top Heavy Plan, 1.0 shall be substituted for 1.25 in any event.

(e)  Either 1 or 2 shall apply as the Employer shall elect in Section 6.1 of the Adoption Agreement.

1.  If the sum of the defined benefit plan fraction and the defined contribution plan fraction shall exceed 1.0 in any "limitation year" for any Participant in this Plan for reasons other than described in (f) below, the Administrator shall adjust the numerator of the defined benefit plan fraction so that the sum of both fractions shall not exceed 1.0 in any "limitation year" for such Participant.

2.  If the sum of the defined benefit plan fraction and the defined contribution plan fraction shall exceed 1.0 in any "limitation year" for any Participant in this Plan for reasons other than described in (f) below, the Administrator shall limit, to the extent necessary, the "annual additions" to such "participant's account" for such "limitation year".  If, after limiting the "annual additions" to such "participant's account" for the "limitation year", the sum of the defined benefit plan fraction and the defined contribution plan fraction still exceed 1.0, the Administrator shall then adjust the numerator of the defined benefit plan fraction so that the sum of both fractions shall not exceed 1.0 in any "limitation year" for such Participant.

47

(f)  If (1) the substitution of 1.00 for 1.25 and $41,500 for $51,875 above
or (2) the excess benefit accruals or "annual additions" provided for in
Internal Revenue Service Notice 82-19 cause the 1.0 limitation to be exceeded
for any Participant in any "limitation year", such Participant shall be
subject to the following restrictions for each future "limitation year"
until the 1.0 limitation is satisfied:  (A) the Participant's Accrued Benefit
shall not increase (B) no "annual additions" may be credited to a "participant's
account" and (C) no Employee contributions (voluntary or mandatory) shall
be made under any defined benefit plan or any defined contribution plan of
the Employer.

ARTICLE VII
TRUSTEE

7.1   BASIC RESPONSIBILITIES OF THE TRUSTEE

The Trustee shall have the following categories of responsibilities:

(a) Consistent with the "funding policy and method" determined by the Employer to invest, manage, and control the Plan assets subject, however, to the direction of an Investment Manager if the Employer should appoint such manager as to all or a portion of the assets of the Plan in accordance with the provisions of Section 2.3(c).

(b) At the direction of the Administrator, to pay benefits required under the Plan to be paid to Participants, or, in the event of their death, to their Beneficiaries;

(c) To maintain records of receipts and disbursements and furnish to the Employer and/or Administrator for each Fiscal Year a written annual report per Section 7.7.

If there shall be more than one Trustee, they shall act by a majority of their number, but may authorize one or more of them to sign papers on their behalf.

7.2   INVESTMENT POWERS AND DUTIES OF THE TRUSTEE

(a) The Trustee shall invest and reinvest the Trust Fund to keep the Trust Fund invested without distinction between principal and income and in such securities or property, real or personal, wherever situated, as the Trustee shall deem advisable, including, but not limited to, stocks, common or preferred, bonds and other evidence of indebtedness or ownership, and real estate or any interest therein. The Trustee shall at all times in making investments of the Trust Fund consider, among other factors, the short and long-term financial needs of the Plan on the basis of information furnished by the Employer. In making such investments, the Trustee shall not be restricted to securities or other property of the character expressly authorized by the applicable law for trust investments; however, the Trustee shall give due regard to any limitations imposed by the Code or the Act so that at all times this Plan may qualify as a qualified Pension Plan and Trust.

(b) The Trustee may employ a bank or trust company pursuant to the terms of its usual and customary bank agency agreement, under which the duties of such bank or trust company shall be of a custodial, clerical and record-keeping nature.

49

(c) The Trustee may, from time to time with the consent of the Employer transfer to a common, collective, or pooled trust fund maintained by any corporate Trustee hereunder, all or such part of the Trust Fund as the Trustee may deem advisable, and such part or all of the Trust Fund so transferred shall be subject to all the terms and provisions of the common, collective, or pooled trust fund which contemplate the commingling for investment purposes of such trust assets with trust assets of other trusts.  The Trustee may, from time to time with the consent of the Employer, withdraw from such common, collective, or pooled trust fund all or such part of the Trust Fund as the Trustee may deem advisable.

Notwithstanding anything hereinabove to the contrary, amounts credited to a Participant's Qualified Voluntary Employee Contribution Account pursuant to Section 4.6 (and if permitted per Section 4.2 of the Adoption Agreement), shall not be applied to the purchase of life insurance contracts.

(d) If life insurance policies have been issued under the Plan to insure the death benefits provided hereunder, the Trustee, at the direction of the Administrator, shall apply for, own, and pay premiums on such life insurance policies.  Life insurance policies shall at the direction of the Administrator, be surrendered to the insurer for their cash value or transferred to the Former Participant under the terms of this Agreement. The Trustee must convert the entire value of life insurance policies at retirement into cash or provide for a periodic income (under the terms of this Agreement) so that no portion of such value may be used to continue life insurance protection.

## 7.3    OTHER POWERS OF THE TRUSTEE

The Trustee, in addition to all powers and authorities under common law, statutory authority, including the Act, and other provisions of this Agreement, shall have the following powers and authorities, to be exercised in the Trustee's sole discretion:

(a) To purchase, or subscribe for, any securities or other property and to retain the same.  In conjunction with the purchase of securities, margin accounts may be opened and maintained;

(b) To sell, exchange, convey, transfer, grant options to purchase, or otherwise dispose of any securities or other property held by the Trustee, by private contract or at public auction.  No person dealing with the Trustee shall be bound to see to the application of the purchase money or to inquire into the validity, expediency, or propriety or any such sale or other disposition, with or without advertisement;

(c) To vote upon any stocks, bonds, or other securities; to give general or special proxies or powers of attorney with or without power of substitution; to exercise any conversion privileges, subscription rights or other options, and to make any payments incidental thereto; to oppose, or to consent to, or otherwise participate in, corporate reorganizations or other changes affecting corporate securities, and to delegate

discretionary powers, and to pay any assessments or charges in connection therewith; and generally to exercise any of the powers of an owner with respect to stocks, bonds, securities, or other property;

(d) To cause any securities or other property to be registered in the Trustee's own name or in the name of one or more of the Trustee's nominees, and to hold any investments in bearer form, but the books and records of the Trustee shall at all times show that all such investments are part of the Trust Fund;

(e) To borrow or raise money for the purposes of the Plan in such amount, and upon such terms and conditions, as the Trustee shall deem advisable; and for any sum so borrowed, to issue a promissory note as Trustee, and to secure the repayment thereof by pledging all, or any part, of the Trust Fund; and no person lending money to the Trustee shall be bound to see to the application of the money lent or to inquire into the validity, expediency, or propriety of an borrowing.

(f) To keep such portion of the Trust Fund in cash or cash balances as the Trustee may, from time to time, deem to be in the best interests of the Plan, without liability for interest thereon;

(g) To accept and retain for such time as it may deem advisable any securities or other property received or acquired by it as Trustee here-under, whether or not such securities or other property would normally be purchased as investments hereunder;

(h) To make, execute, acknowledge, and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted;

(i) To settle, compromise, or submit to arbitration any claims, debts, or damages due or owing to or from the Plan, to commence or defend suits or legal or administrative proceedings, and to represent the Plan in all suits and legal and administrative proceedings;

(j) To employ suitable agents and counsel and to pay their reasonable expenses and compensation, and such agent or counsel may or may not be agent or counsel for the Employer;

(k) To apply for and procure from reponsible insurance companies, to be selected by the Administrator, as an investment of the Trust Fund such endowment, annuity, or other insurance contracts on the life of any Participant as the Administrator shall deem proper; to exercise, at any time or from time to time, whatever rights and privileges may be granted under such endowment, annuity, or other insurance contracts; to collect, receive, and settle for the proceeds of all such endowment, annuity, or other insurance contracts as and when entitled to do so under the pro-visions thereof;

(l) To invest funds of the Trust in time deposits or savings accounts bearing a reasonable rate of interest in the Trustee's bank;

51

(m) To invest in Treasury Bills and other forms of United States government obligations;

(n) Except as hereinafter expressly authorized, the Trustee is prohibited from selling or purchasing stock options. The Trustee is expressly authorized to write and sell call options under which the holder of the option has the right to purchase shares of stock held by the Trustee as a part of the assets of this Trust, if such options are traded on and sold through a national securities exchange registered under the Securities Exchange Act of 1934, as amended, which exchange has been authorized to provide a market for option contracts pursuant to Rule 9B-1 promulgated under such Act, and so long as the Trustee at all times up to and including the time of exercise or expiration of any such option holds sufficient stock in the assets of this Trust to meet the obligations under such option if exercised. In addition, the Trustee is expressly authorized to purchase and acquire call options for the purchase of shares of stock covered by such options if the options are traded on and purchased through a national securities exchange as described in the immediately preceding sentence, and so long as any such option is purchased solely in a closing purchase transaction, meaning the purchase of an exchange traded call option the effect of which is to reduce or eliminate the obligations of the Trustee with respect to a stock option contract or contracts which it has previously written and sold in a transaction authorized under the immediately preceding sentence.

(o) To deposit monies in federally insured savings accounts or certificates of deposit in banks or savings and load associations;

(p) To pool all or any of the Trust Fund, from time to time, with assets belonging to any other qualified employee pension benefit trust created by the Employer or an affiliated company of the Employer, and to commingle such assets and make joint or commmon investments and carry joint accounts on behalf of this Plan and such other trust or trusts, allocating undivided shares or interests in such investments or accounts or any pooled assets of the two or more trusts in accordance with their respective interests;

(q) To do all such acts and exercises all such rights and privileges, although not specifically mentioned herein, as the Trustee may deem necessary to carry out the purposes of the Plan.

(r) Directed Investment Account. The powers granted to the Trustee shall be exercised in the sole fiduciary discretion of the Trustee. However, if Participants are so empowered by the Administrator (if permitted per Section 4.3 of the Adoption Agreement), each Participant may direct the Trustee to separate and keep separate all or a portion of his share of his account; and further each Participant is authorized and empowered, in his sole and aboslute discretion, to give directions to the Trustee in such form as the Trustee may require concerning the investment of the Participant's Directed Investment Account, which directions must be followed by the Trustee subject, however, to restrictions on payment of life insurance premiums. Neither the Trustee nor any other persons including the Administrator or otherwise shall be under any duty to question any such direction of the Participant or to review any securities or other property,

real or personal, or to make any suggestions to the Participant in connection therewith, and the Trustee shall comply as promptly as practicable with directions given by the Participant hereunder. Any such direction may be of a continuing nature or otherwise and may be revoked by the Participant at any time in such form as the Trustee may require. The Trustee shall not be responsible or liable for any loss or expense which may arise from or result from compliance with any directions from the Participant nor shall the Trustee be responsible for, or liable for, any loss or expense which may result from the Trustee's refusal or failure to comply with any directions from the Participant. The Trustee may refuse to comply with any direction from the Participant in the event the Trustee, in its sole and absolute discretion, deems such directions improper by virtue of applicable law. Any costs and expenses related to compliance with the Participant's directions shall be borne by the Participant's Directed Investment Account.

Notwithstanding anything hereinabove to the contrary, the Trustee shall not, at any time after December 31, 1981, invest any portion of a Directed Investment Account in "collectibles" within the meaning of that term as employed in Code Section 408(m).

7.4    LOANS TO PARTICIPANTS

If loans to Participants are permitted under this Plan per Section 7.1 of the Adoption Agreement, then this Section shall apply.

(a) The Trustee may, in the Trustee's sole discretion, make loans to Participants and Beneficiaries under the following circumstances:  (1) loans shall be made available to all Participants and Beneficiaries on a reasonably equivalent basis; (2) loans shall not be made available to highly compensated Employees, officers, or shareholders in an amount greater than the amount made available to other Participants and Beneficiaries; (3) loans shall bear a reasonable rate of interest; (4) loans shall be adequately secured; and (5) shall provide for periodic repayment over a reasonable period of time.

(b) Loans shall not be made to any Shareholder-Employee if the Employer is a Subchapter S Corporation.

(c) Loans shall not be made to any Owner-Employee.

(d) (If applicable) No Participant loan shall take into account the present value of such Participant's Qualified Voluntary Employee contribution.

(e) Loans shall not be granted to any Participant or his Beneficiary that provide for a repayment period extending beyond such Participant's Normal Retirement Date.

(f) Loans made pursuant to this Section shall be limited to the lesser of:

(i)    $50,000, or

(ii)   the greater of (A) one-half (1/2) of the present value of the Vested Interest of such Participant's Account maintained on behalf of the Participant under the Plan, or (B) $10,000.

53

(g) Loans shall provide for periodic repayment over a period not to exceed five (5) years. Except, however, loans used to acquire, construct, reconstruct, or substantially rehabilitate any dwelling unit which, within a reasonable time, is to be used (determined at the time the loan is made) as a principal residence of the Participant or a member of his family (within the meaning of Section 276(c)(4) of the Code), may provide for periodic repayment over a reasonable period of time that exceeds five (5) years.

(h) No loan shall be made to a Participant unless both the Participant and the Participant's spouse, if any, consent to the loan within the 90 day period before the making of the loan. The spouse's consent shall be obtained in the same manner as provided for in Section 5.7(a)(2).

### 7.5    DUTIES OF THE TRUSTEE REGARDING PAYMENTS

At the direction of the Administrator, the Trustee shall, from time to time, in accordance with the terms of the Plan, make payments out of the Trust Fund. The Trustee shall not be responsible in any way for the application of such payments.

### 7.6    TRUSTEE'S COMPENSATION AND EXPENSES AND TAXES

The Trustee shall be paid such reasonable compensation as shall from time to time be agreed upon in writing by the Employer and the Trustee. An individual serving as Trustee who already receives full-time pay from the Employer shall not receive compensation from this Plan. In addition, the Trustee shall be reimbursed for any reasonable expenses, including reasonable counsel fees incurred by it as Trustee. Such compensation and expenses shall be paid from the Trust Fund unless paid or advanced by the Employer. All taxes of any kind and all kinds whatsoever that may be levied or assessed under existing or future laws upon, or in respect of, the Trust Fund or the income thereof, shall be paid from the Trust Fund.

### 7.7    ANNUAL REPORT OF THE TRUSTEE

Within sixty (60) days after the later of the Anniversary Date or receipt of the Employer's contribution for each Fiscal Year, the Trustee shall furnish to the Employer and Administrator a written statement of account with respect to the Fiscal Year for which such contribution was made setting forth:

(a) the net income, or loss, of the Trust Fund;

(b) the gains, or losses, realized by the Trust Fund upon sales or other disposition of the assets;

(c) the increase, or decrease, in the value of the Trust Fund;

(d) all payments and distributions made from the Trust Fund;

54

(e) such further information as the Trustee and/or Administrator deems appropriate. The Employer, forthwith upon its receipt of each such statement of account, shall acknowledge receipt thereof in writing and advise the Trustee and/or Administrator of its approval or disapproval thereof. Failure by the Employer to disapprove any such statement of account within (30) days after its receipt thereof shall be deemed an approval thereof. The approval by the Employer of any statement of account shall be binding as to all matters embraced therein as between the Employer and the Trustee to the same extent as if the account of the Trustee had been settled by judgement or decree in an action for a judicial settlement of its account in a court of competent jurisdiction in which the Trustee, the Employer and all persons having or claiming an interest in the Plan were parties; provided, however, that nothing herein contained shall deprive the Trustee of its right to have its accounts judicially settled if the Trustee so desires.

7.8    AUDIT

(a) If an audit of the Plan's records shall be required by the Act and the regulations thereunder for any Plan Year, the Administrator shall direct the Trustee to engage on behalf of all Participants an independent qualified public accountant for that purpose. Such accountant shall, after an audit of the books and records of the Plan in accordance with generally accepted auditing standards, within a reasonable period after the close of the Plan Year, furnish to the Administrator and the Trustee a report of his audit setting forth his opinion as to whether each of the following statements, schedules or lists, or any others that are required by Section 103 of the Act or the Secretary of Labor to be filed with the Plan's annual report, are presented fairly in conformity with generally accepted accounting principles applied consistently:

(i)   statement of the assets and liabilities of the Plan;

(ii)  statement of changes in net assets available to the Plan;

(iii) statement of receipts and disbursements, a schedule of all assets held for investment purposes, a schedule of all loans or fixed income obligations in default at the close of the Plan Year;

(iv)  a list of all leases in default or uncollectible during the Plan Year;

(v) the most recent annual statement of assets and liabilities of any bank common or collective trust fund in which Plan assets are invested or such information regarding separate accounts or trusts with a bank or insurance company as the Trustee and Administrator deem necessary; and

(vi) a schedule of each transaction or series of transactions involving an amount in excess of three percent (3%) of Plan assets.

All auditing and accounting fees shall be an expense of and may, at the election of the Administrator. be paid from the Trust Fund.

(b) If some or all of the information necessary to enable the Administrator to comply with Section 103 of the Act is maintained by a bank, insurance company, or similar institution, regulated and supervised and subject to periodic examination by a state or federal agency, it shall transmit and certify the accuracy of that information to the Administrator as provided in Section 103(b) of the Act within one hundred twenty (120) days after the end of the Plan Year or such other date as may be prescribed under regulations of the Secretary of Labor.

7.9    RESIGNATION, REMOVAL AND SUCCESSION OF TRUSTEE

(a) The Trustee may resign at any time by delivering to the Employer, at least thirty (30) days before its effective date, a written notice of his resignation.

(b) The Employer may remove the Trustee by mailing by registered or certified mail, addressed to such Trustee at his last known address, at least thirty (30) days before its effective date, a written notice of his removal.

(c) Upon the death, resignation, incapacity, or removal of any Trustee, a successor may be appointed by resolution of the board of directors of the Employer; and such successor, upon accepting such appointment in writing and delivering same to the Employer, shall, without further act, become vested with all the estate, rights, powers, discretions, and duties of his predecessor with like respect as if he were originally named as a Trustee herein.  Until such a successor is appointed, the remaining Trustee or Trustees shall have full authority to act under the terms of this Agreement.

(d) The Employer may designate one or more successors prior to the death, resignation, incapacity, or removal of a Trustee.  In the event a successor is so designated by the board of directors of the Employer and accepts such designation, the successor shall, without further act, become vested with all the estate, rights, powers, discretions, and duties of his predecessor with the like effect as if he were originally named as Trustee herein immmediately upon the death, resignation, incapacity, or removal of his predecessor.

(e) Whenever any Trustee hereunder ceases to serve as such, he shall furnish to the Employer and Administrator a written statement of account with respect to the portion of the Fiscal Year during which he served as Trustee.  This statement shall be either (I) included as part of the annual statement of account for the Fiscal Year required under Section 7.7 or (II) set forth in a special statement.  Any such special statement of account should be rendered to the Employer no later than the due date of the annual statement of account for the Fiscal Year.  The procedures set forth in Section 7.7 for the approval by the Employer of annual statements of account shall apply to any special statement of account rendered hereunder and approval by the Employer of any such special statement in the manner provided in Section 7.7 shall have the same effect upon the statement as the Employer's approval of an annual statement of account.  No successor to the Trustee shall have any duty or responsibility to investigate the acts or transactions of any predecessor who has rendered all statements of account required by Section 7.7 and this subparagraph.

7.10  TRANSFER OF INTEREST

Notwithstanding any other provision contained in this Plan, the Trustee at the direction of the Administrator shall transfer, upon a 1-Year Break in Service of a Participant, the Vested interest, if any, of such Participant in the Present Value of his Accrued Benefit to another trust forming part of a pension, profit sharing, or stock bonus plan maintained by such Participant's new employer and represented by said employer in writing as meeting the requirements of Code Section 401(a), provided that the trust to which such transfers are made permits the transfer to be made.

The Trustee may accept funds transferred from such trusts or a "conduit" Individual Retirement Account for the account of a Participant under this Plan, provided the conditions precedent to such transfer set forth in Section 4.3 are satisfied.  In the event of such a transfer to a Participant's Account under this Plan, the Trustee shall maintain a separate, nonforfeitable "Participant's Rollover Account" for the amount transferred.  The Trustee may act upon the direction of the Administrator without determining the facts concerning a transfer.

ARTICLE VIII

PLAN AMENDMENT

8.1   AMENDMENT

The Employer shall have the right at any time to amend this Agreement.
However, no such amendment shall authorize or permit any part of the Trust
Fund (other than such part as is required to pay taxes and administration
expenses) to be used for or diverted to purposes other than for the exclusive
benefit of the Participants or their Beneficiaries or estates; no such
amendment shall cause any reduction in the Accrued Benefit of any Participant
(except to the extent permitted under Code Section 412(c)(8)) or cause or
permit any portion of the Trust Fund to revert to or become the property
of the Employer, and no such amendment which affects the rights, duties or
responsibilities of the Trustee and Administrator may be made without the
Trustee's and Administrator's written consent.  Any such amendment shall
become effective as provided therein upon its execution.  The Trustee shall
not be required to execute any such amendment unless the Trust provisions
contained herein are a part of this Agreement and the amendment affects the
duties of the Trustee hereunder.

For purposes of this paragraph, a plan amendment which has the effect of (1)
eliminating or reducing an early retirement benefit or a retirement-type
subsidy, or (2) eliminating an optional form of benefit, with respect to
benefits attributable to service before the amendment shall be treated as
reducing accrued benefits.  In the case of a retirement-type subsidy, the
preceding sentence shall apply only with respect to a Participant who
satisfies (either before or after the amendment) the preamendment conditions
for the subsidy.  In general, a retirement-type subsidy is a subsidy that
continues after retirement, but does not include a qualified disability
benefit, a medical benefit, a social security supplement, a death benefit
(including life insurance), or a plant shutdown benefit (that does not
continue after retirement age).  Furthermore, no amendment to the plan shall
have the effect of decreasing a Participant's Vested interest determined
without regard to such amendment as of the later of the date such amendment
is adopted, or becomes effective.

58

## ARTICLE IX
## PLAN TERMINATION

9.1   TERMINATION

The Employer shall have the right at any time to terminate the Plan by delivering to the Trustee and Administrator written notice of such termination.   Upon any termination (full or partial), all unallocated amounts shall be allocated in accordance with the provisions hereof and the Accrued Benefit of each affected Participant shall become fully Vested and shall not thereafter by subject to Forfeiture.   Upon termination of the Plan, the Employer, by written notice to the Trustee, may direct either:

(a) continuation of the Trust created by this Agreement and the distribution of benefits at such time and in such manner as though the Plan had not been terminated; or

SUBSECTIONS (b) – (d) APPLICABLE IF EMPLOYER COVERED UNDER PENSION BENEFIT GUARANTY CORPORATION

(b) subject to Paragraphs (c) and (d) of this Section, complete distribution of the assets in the Trust Fund to the Participants, in cash or in kind, in one lump-sum payment, or in the form of a deferred annuity payable at Normal Retirement Date, as soon as the Trustee deems it in the best interest of the Participants (no later than three (3) years after such termination).

(c) Plan Termination Procedure--

(i)   The Employer must first notify the Pension Benefit Guaranty Corporation at least ten (10) days prior to the date of the proposed termination.

(ii) No termination distribution shall be made pending notification from the Pension Benefit Guaranty Corporation as to whether the Trust Assets are sufficient to discharge all insured benefit obligations. Notification that Assets are not sufficient shall be treated as a termination by the Pension Benefit Guaranty Corporation as of the date of notification.

(d) Priority of Benefits -- Upon approval from the Pension Benefit Guaranty Corporation of the Plan termination, the Administrator shall allocate the assets of the Plan among Participants and Beneficiaries in the following order of priority and subject in any event to the provisions of the Act:

(i)   First to that portion of each Participant's Accrued Benefit which is derived from his Voluntary Contribution.

59

(ii)  Equally among individuals in the following two categories:

(1)  Benefits to Retired Participants and their Beneficiaries to whom payment commenced at least three (3) years prior to the termination date, based on Plan provisions in effect during the five (5) year period ending on such date; the lowest benefit in any pay status during the most recent three (3) year period shall be considered the benefit in pay status for such period.

(2)  Benefits as respects a Participant wherein payment would have commenced at least three (3) years prior to the termination date if the Participant had actually retired, based on the lowest benefit determined under the Plan provisions in effect during the five (5) year period ending on such date.

(iii) All other benefits guaranteed (insured under the Act determined without regard to Section 4022(b)(5) thereof; and additional benefits, if any, under this subparagraph if Section 4022(b)(6) of the Act did not apply.

(iv)  All other (uninsured) Vested benefits.

(v)   All other benefits under the Plan.

(vi)  Return of any excess funds to the Employer or reallocated to the Participants in a nondiscriminatory manner only after satisfaction of all liabilities, fixed and contingent.

SUBSECTION (e) APPLICABLE FOR EMPLOYER NOT COVERED BY PENSION BENEFIT GUARANTY CORPORATION

(e) complete distribution of the assets in the Trust Fund to the Participants in cash or in kind, in one lump-sum payment, or in the form of a deferred annuity payable at Normal Retirement Date, as soon as the Trustee deems it in the best interest of the Participants (no later than three (3) years after such termination); in which case the Trustee shall distribute the assets to the remaining Participants in the Plan and the Retired Participants, subject to provisions for expenses of administration or liquidation in the following order to the extent of the sufficiency of such assets, basing such allocation on the Accrued Benefit for each such person at the date of termination of the Plan:

(i)    to provide pension to retired Participants, who shall have retired under the Plan prior to termination of the Plan, without reference to the order of retirement.

(ii)   to provide Normal Retirement Benefits to Participants who have reached their Normal Retirement Dates but have not retired on the date of termination, without reference to the order in which they shall have reached their Normal Retirement Date;

60

(III) to provide Normal Retirement Benefits upon attainment of Normal Retirement Date to Participants who have not yet reached such such date on the date of termination, in the order in which they will attain their Normal Retirement Date.  Such benefits will be based upon Accrued Benefits as of the date of termination.  The balance, if any, of the assets due to erroneous actuarial computation held by the Trust Fund after such allocation may be returned to the Employer, but only after the satisfaction of all liabilities with respect to Participants and pensions under the Plan.

The allocation of the Fund provided in this subparagraph, if complete distribution is directed per this Section 9.1, may, as decided by the Administrator, be carried out through the purchase of annuity Contracts to provide the benefits determined in accordance with this subparagraph; the Fund may be distributed in one sum to the persons entitled to said benefits in the proportion of the then present value of said benefits; or the allocation may be carried out in such other equitable manner as the Administrator may direct.

## 9.2    LIMITATION OF BENEFITS ON EARLY TERMINATION

In the event the Plan is terminated for any reason other than the failure to obtain Internal Revenue Service approval pursuant to Section 11.14, then notwithstanding any provision in this Plan to the contrary, during the first ten (10) years after the Effective Date hereof, and thereafter until full current costs are met, the benefits provided by the Employer's contributions for the Participants whose anticipated annual retirement benefit at Normal Retirement Date exceeds $1,500 and who at the Effective Date of the Plan were among the twenty-five (25) highest paid Employees of the Employer will be subject to the conditions set forth in the following provisions:

(a) The benefit payable to a Participant described in this Section or his Beneficiary shall not exceed the greater of the following:

(1) those benefits purchaseable by the greater of (a) $20,000, or (b) an amount equal to 20% of the first $50,000 of the Participant's annual Compensation multiplied by the number of years from the Effective Date of this Agreement to the earlier of (I) the date of termination of the Plan, or (II) the date the benefit of the Participant becomes payable or (III) the date of a failure on the part of the Employer to meet the full current costs of the Plan; or

(2) if a Participant is a "substantial owner" (as defined in Section 4022(b)(5)(A) of the Act), the present value of the benefit guaranteed for "substantial owners" under Section 4022 of the Act, or

(3) If the Participant is not a "substantial owner", the present value of the maximum benefit provided in Section 4022(b)(3)(B) of the Act, determined on the date the Plan terminates or on the date benefits commence, whichever is earlier and in accordance with regulations of the Pension Benefit Guaranty Corporation.

(b) If the Plan is terminated or the full current costs thereof have not been met at any time within ten (10) years after the Effective Date, the benefits which any of the Participants described in this Section may receive from the Employer's contribution shall not exceed the benefits set forth in Section 9.2(a). If at the end of the first ten (10) years the full current costs are not met, the restrictions will continue to apply until the full current costs are funded for the first time.

(c) If a Participant described in this Section leaves the employ of the Employer or withdraws from participation in the Plan when the full current costs have been met, the benefits which he may receive from the Employer contributions shall not at any time within the first ten (10) years after the Effective Date exceed the benefits set forth in Section 9.2(a), except as provided in Section 9.2(i).

(d) These conditions shall not restrict the full payment of any survivor's benefits on behalf of a Participant who dies while in the Plan and the full current costs have been met.

(e) These conditions shall not restrict the current payment of full retirement benefits called for by the Plan for any Retired Participant while the Plan is in full effect and its full current costs have been met, provided an agreement, adequately secured, guarantees the repayment of any part of the distribution that is or may become restricted.

(f) If the benefits of, or with respect to, any Participant shall have been suspended or limited in accordance with the limitations of Section 9.2(a), (b), and (c) above because the full current costs of the Plan shall not then have been met, and if such full current costs shall thereafter be met, then the full amount of the benefits payable to such Participant shall be resumed and the parts of such benefits which have been suspended shall then be paid in full.

(g) Notwithstanding anything in Section 9.2(a), (b), and (c) above, if on the termination of the Plan within the first ten (10) years after the Effective Date, the funds, Contracts, or other property under the Plan are more than sufficient to provide Accrued Benefits as defined in Section 1.1 for Participants and their Beneficiaries including full benefits for all Participants other than such of the twenty-five (25) highest paid Employees as are still in the service of the Employer and also including Accrued Benefits as limited by this Section for such twenty-five (25) highest paid Employees then any excess of such funds, Contracts, and property shall be used to provide Accrued Benefits for the twenty-five (25) highest paid Employees in excess of such limitations of this Section up to the benefits to which such Employees would be entitled under Section 1.1 without such limitations.

(h) In the event that Congress should provide by statute, or the Treasury Department or the Internal Revenue Service should provide by regulation or ruling, that the limitations provided for in this Article are no longer necessary in order to meet the requirements for a qualified pension plan under the Internal Revenue Code as then in effect, the limitations in this Article shall become void and shall no longer apply without the necessity of amendment to this Plan.

62

(l) In the event a lump-sum distribution is made to an Employee subject to the above restrictions in an amount in excess of that amount otherwise permitted under this Article, an agreement shall be made, with adequate security guaranteeing repayment of any amount of the distribution that is restricted. Adequate security shall mean property having a fair market value of at least 125% of the amount which would be repayable if the Plan had terminated on the date of distribution of such lump sum. If the fair market value of the property falls below 110% of the amount which would then be repayable if the Plan were then to terminate, the distributee shall deposit additional property to bring the value of the property to 125% of such amount.

## ARTICLE X

### MERGER, CONSOLIDATION OR TRANSFER OF ASSETS

10.1    REQUIREMENTS

Before this Plan can be merged or consolidated with any other qualified plan or its assets or liabilities transferred to any other qualified plan, the Administrator must secure (and file with the Secretary of Treasury at least 30 days beforehand) a certification from a government-enrolled actuary that the benefits which would be received by a Participant of this Plan, in the event of a termination of the Plan immediately after such transfer, merger or consolidation, are at least equal to the benefits the Participant would hav received if the Plan had terminated immediately before the transfer, merger or consolidation.

64

## ARTICLE XI
## MISCELLANEOUS

11.1   PARTICIPANT'S RIGHTS

This Plan shall not be deemed to constitute a contract between the
Employer and any Participant or to be a consideration or an inducement
for the employment of any Participant or Employee the right to be retained
in the service of the Employer or to interfere with the right of the
Employer to discharge any Participant or Employee at any time regardless
of the effect which such discharge shall have upon him as a Participant of
this Plan.

11.2   ALIENATION

(a) Subject to the exceptions provided below, no benefit which shall be
payable out of the Trust Fund to any person (including a Participant or his
Beneficiary) shall be subject in any manner to anticipation, alienation,
sale, transfer, assignment, pledge, encumbrance, or charge, and any attempt
to anticipate, alienate, sell, transfer, assign, pledge, encumber, or charge
the same shall be void; and no such benefit shall in any manner be liable
for, or subject to, the debts, contracts, liabilities, engagements, or
torts of any such person, nor shall it be subject to attachment or legal
process for or against such person, and the same shall not be recognized
by the Trustee, except to such extent as may be required by law.

(b) This provision shall not apply to the extent a Participant or Beneficiary
is indebted to the Plan, for any reason, under any provision of this Agreement.
At the time a distribution is to be made to or for a Participant's or
Beneficiary's benefit, such proportion of the amount distributed as shall
equal such indebtedness shall be paid by the Trustee to the Trustee or the
Administrator, at the direction of the Administrator, to apply against or
discharge such indebtedness.  Prior to making a payment, however, the
Participant or Beneficiary must be given written notice by the Administrator
that such indebteness is to be so paid in whole or part from his Participant's
Accrued Benefit.  If the Participant or Beneficiary does not agree that the
indebtedness is a valid claim against his Vested Participant's Accrued
Benefit, he shall be entitled to a review of the validity of the claim in
accordance with procedures provided in Sections 2.12 and 2.13.

(c) This provision shall not apply to a "qualified domestic relations order"
defined in Code Section 414(p), and those other domestic relations orders
permitted to be so treated by the Administrator under the provisions of the
Retirement Equity Act of 1984.  The Administrator shall establish a written
procedure to determine the qualified status of domestic relations orders
and to administer distributions under such qualified orders.  Further, to
the extent provided under a "qualified domestic relations order" a former
spouse of a Participant shall be treated as the spouse or surviving spouse
for all purposes under the Plan.

65

11.3 CONSTRUCTION OF AGREEMENT

This Plan and Trust shall be construed and enforced according to the Act and the laws of the State/Commonwealth indicated in Section 11.1 of the Adoption Agreement, other than its laws respecting choice of law, to the extent not pre-empted by the Act.

11.4 GENDER AND NUMBER

Wherever any words are used herein in the masculine, feminine or neuter gender, they shall be construed as though they were also used in another gender in all cases where they would so apply, and whenever any words are used herein in the singular or plural form, they shall be construed as though they were also used in the other form in all cases where they would so apply.

11.5 LEGAL ACTION

In the event any claim, suit, or proceeding is brought regarding the Trust and/or Plan established hereunder to which the Trustee or the Administrator may be a party, and such claim, suit, or proceeding is resolved in favor of the Trustee or Administrator, they shall be entitled to be reimbursed from the Trust Fund for any and all costs, attorney's fees, and other expenses pertaining thereto incurred by them for which they shall have become liable.

11.6 PROHIBITION AGAINST DIVERSION OF FUNDS

(a) Except as provided below and otherwise specifically permitted by law, it shall be impossible by operation of the Plan or of the Trust, by termination of either, by power of revocation or amendment, by the happening of any contingency, by collateral arrangement or by any other means, for any part of the corpus or income of any trust fund maintained pursuant to the Plan or any funds contributed thereto to be used for, or diverted to, purposes other than the exclusive benefit of Participants, retired Participants, or their Beneficiaries.

(b) In the event the Employer shall make an excessive contribution under a mistake of fact pursuant to Section 403(c)(2)(A) of the Act, the Employer may demand repayment of such excessive contribution at any time within one (1) year following the time of payment and the Trustee shall return such amount to the Employer within the one (1) year period. Earnings of the Plan attributable to the excess contributions may not be returned to the Employer but any losses attributable thereto must reduce the amount so returned.

11.7 BONDING

Every Fiduciary, except a bank or an insurance company, unless exempted by the Act and regulations thereunder, shall be bonded in an amount not less than 10% of the amount of the funds such Fiduciary handles; provided, however, that the minimum bond shall be $1,000 and the maximum bond, $500,000.

66

The amount of funds handled shall be determined at the beginning of each Plan Year by the amount of funds handled by such person, group, or class to be covered and their predecessors, if any, during the preceding Plan Year, or if there is no preceding Plan Year, then by the amount of the funds to be handled during the then current year. The bond shall provide protection to the Plan against any loss by reason of acts of fraud or dishonesty by the Fiduciary alone or in connivance with others. The surety shall be a corporate surety company (as such term is used in Section 412(a)(2) of the Act), and the bond shall be in a form approved by the Secretary of Labor. Notwithstanding anything in this Agreement to the contrary, the cost of such bonds shall be an expense of and may, at the election of the Administrator, be paid from the Trust Fund or by the Employer.

## 11.8    EMPLOYER'S AND TRUSTEE'S PROTECTIVE CLAUSE

Neither the Employer nor the Trustee, nor their successors, shall be responsible for the validity of any Contract of Insurance issued hereunder or for the failure on the part of the Insurer to make payments provided by any such Contract, or for the action of any person which may delay payment or render a Contract null and void or unenforceable in whole or in part.

## 11.9    INSURER'S PROTECTIVE CLAUSE

Any Insurer who shall issue Contracts of Insurance hereunder shall not have any responsibility for the validity of this Plan or for the tax or legal aspects of this Plan. The Insurer shall be protected and held harmless in acting in accordance with any written direction of the Trustee, and shall have no duty to see to the application of any funds paid to the Trustee, nor be required to question any actions directed by the Trustee. Regardless of any provision of this Plan, the Insurer shall not be required to take or permit any action or allow any benefit or privilege contrary to the terms of any Contract which it issues hereunder, or the rules of the Insurer.

## 11.10   RECEIPT AND RELEASE FOR PAYMENTS

Any payment to any Participant, his legal representative, Beneficiary, or to any guardian or committee appointed for such Participant or Beneficiary inaccordance with the provisions of this Agreement, shall, to the extent thereof, be in full satisfaction of all claims hereunder against the Trustee and the Employer, either of whom may require such Participant, legal representative, Beneficiary, guardian or committee, as a condition precedent to such payment, to execute a receipt and release thereof. In such form as shall be determined by the Trustee or Employer.

## 11.11   ACTION BY THE EMPLOYER

Whenever the Employer under the terms of this Agreement is permitted or required to do or perform any act or matter or thing, it shall be done and performed by an officer duly authorized by its board of directors.

67.

## 11.12 NAMED FIDUCIARIES AND ALLOCATION OF RESPONSIBILITY

The "named Fiduciaries" of this Plan are (1) the Employer, (2) the Ad-
ministrator, (3) the Trustee and (4) any Investment Manager appointed
hereunder.  The named Fiduciaries shall have only those specific powers,
duties, responsibilities, and obligations as are specifically given them
under this Agreement.  In general, the Employer, acting through its board
of directors, shall have the sole responsibility for making the contribu-
tions provided for under Section 4.1; and shall have the sole authority
to appoint and remove the Trustee, the Administrator, and any Investment
Manager which may be provided for under this Agreement; to formulate the
Plan's "funding policy and method"; and to amend or terminate, in whole or
in part, this Agreement.  The Administrator shall have the sole responsi-
bility for the administration of this Agreement, which responsibility is
specifically described in this Agreement.  The Trustee shall have the sole
responsibility of management of the assets held under the Trust, except
those assets, the management of which has been assigned to an Investment
Manager, who shall be solely responsible for the management of the assets
assigned to it, all as specifically provided in this Agreement.  Each
named Fiduciary warrants that any directions given, information furnished,
or action taken by it shall be in accordance with the provisions of this
Agreement, authorizing or providing for such direction, information or
action.  Furthermore, each named Fiduciary may rely upon any such
direction, information or action of another named Fiduciary as being
proper under this Agreement, and is not required under this Agreement to
inquire into the propriety of any such direction, information or action.
It is intended under this Agreement that each named Fiduciary shall be
responsible for the proper exercise of its own powers, duties, responsi-
bilities and obligations under this Agreement.  No named Fiduciary
shall guarantee the Trust Fund in any manner against investment loss or depre-
ciation in asset value.  Any person or group may serve in more than one
Fiduciary capacity.

## 11.13 HEADINGS

The headings and subheadings of this Agreement have been inserted for
convenience of reference and are to be ignored in any construction of the
provisions hereof.

## 11.14 APPROVAL BY INTERNAL REVENUE SERVICE

(a) (Applicable for New Plan)  Notwithstanding anything herein to the contrary,
if, pursuant to an application filed by or in behalf of the Plan, the
Commissioner of Internal Revenue Service or his delegate should determine
that the Plan does not initially qualify as a tax-exempt plan and trust
under Sections 401 and 501 of the Code, and such determination is not
contested, or if contested, is finally upheld, then the Plan shall be void
ab initio and all amounts contributed to the Plan by the Employer, less expenses
paid, shall be returned within one year and the Plan shall terminate, and
the Trustee shall be discharged from all further obligations.

68

(Applicable to Amended or Restated Plan)  Notwithstanding anything herein to the contrary, if, pursuant to an application filed by or in behalf of the Plan, the Commissioner of Internal Revenue Service or his delegate should determine that the Plan as amended and restated does not initially qualify as a tax-exempt plan and trust under Sections 401 and 501 of the Code, and such determination is not contested, or if contested, is finally upheld, then the Plan shall operate as if it had not been amended and restated.

(b) In the case of a contribution which is made by a mistake of fact, such contribution shall be returned to the Employer within one year after the payment of the contribution.

(c) Notwithstanding any provisions to the contrary, except Sections 3.5 and 3.6, any contribution by the Employer to the Trust Fund is conditioned upon the deductibility of the contribution by the Employer under the Code and, to the extent any such deduction is disallowed, the Employer may within one (1) year following a final determination of the disallowance, whether by agreement within the Internal Revenue Service or by final decision of a court of competent jurisdiction, demand repayment of such disallowed contribution and the Trustee shall return such contribution within one (1) year following the disallowance.  Earnings of the Plan attributable to the excess contribution may not be returned to the Employer, but any losses attributable thereto must reduce the amount so returned.

11.15 UNIFORMITY

All provisions of this Plan shall be interpreted and applied in a uniform, nondiscriminatory manner.

69

## ARTICLE XII
### PARTICIPATING EMPLOYERS

### 12.1 ADOPTION BY OTHER EMPLOYERS

Notwithstanding anything herein to the contrary, with the consent of the Employer and Trustee, any other corporation or entity (provided an Owner-Employee of such entity does not participate in the Plan for Plan Years beginning before January 1, 1984), whether an affiliate or subsidiary or not, may adopt this Plan and all of the provisions hereof, and participate herein and be known as a Participating Employer, by a properly executed document evidencing said intent and will of such Participating Employer. Each such Participating Employer shall be required to select the same Adoption Agreement provisions as those selected by the Employer.

### 12.2 REQUIREMENTS OF PARTICIPATING EMPLOYERS

(a) Each such Participating Employer shall be required to use the same Trustee as provided in this Plan.

(b) The Trustee may, but shall not be required to, commingle, hold and invest as one Trust Fund all contributions made by Participating Employers, as well as all increments thereof.

(c) The transfer of any Participant from or to an Employer participating in this Plan, whether he be an Employee of the Employer or a Participating Employer, shall not affect such Participant's rights under the Plan, and the Participant's Present Value of Accrued Benefit as well as his accumulated service time with the transferor or predecessor and his length of participation in the Plan, shall continue to his credit.

(d) Any contributions made by a Participating Employer, as provided for in this Plan, shall be paid to and held by the Trustee for the exclusive benefit of the Employees of such Participating Employer and the Beneficiaries of such Employees, subject to all the terms and conditions of this Plan. On the basis of information furnished by the Administrator, the Trustee shall keep separate books and records concerning the affairs of each Participating Employer hereunder and as to the Accrued Benefits of the Participants of each Participating Employer. The Trustee may, but need not, register Contracts so as to evidence that a particular Participating Employer is the interested Employer hereunder, but in any event of Employee tranfer from one Participating Employer to another, the employing Employer shall immediately notify the Trustee thereof.

(f) Any expenses of the Trust which are to be paid by the Employer or borne by the Trust Fund shall be paid by each Participating Employer in the same proportion that the total amount standing to the credit of all Participants employed by such Employer bears to the total standing to the credit of all Participants.

70

## 12.3 DESIGNATION OF AGENT

Each Participating Employer shall be deemed to be a part of this Plan; provided, however, that with respect to all of its relations with the Trustee and Administrator for the purpose of this Plan, each Participating Employer shall be deemed to have designated irrevocably the Employer as its agent. Unless the context of the Plan clearly indicates the contrary, the word "Employer" shall be deemed to include each Participating Employer as related to its adoption of the Plan.

## 12.4 EMPLOYEE TRANSFERS

It is anticipated that an Employee may be transferred between Participating Employers, and in the event of any such transfer, the Employee involved shall carry with him his accumulated service and eligibility. No such transfer shall effect a termination of employment hereunder, and the Participating Employer to which the Employee is transferred shall thereupon become obligated hereunder with respect to such Employee in the same manner as was the Participating Employer from whom the Employee was transferred.

## 12.5 AMENDMENT

Amendment of this Plan by the Employer at any time when there shall be a Participating Employer hereunder shall only be by the written action of each and every Participating Employer and with the consent of the Trustee where such consent is necessary in accordance with the terms of this Plan.

## 12.6 DISCONTINUANCE OF PARTICIPATION

Any Participating Employer shall be permitted to discontinue or revoke its participation in the Plan. At the time of any such discontinuance or revocation, satisfactory evidence thereof and of any applicable conditions imposed shall be delivered to the Trustee. The Trustee shall thereafter transfer, deliver and assign Contracts and other Trust Fund assets allocable to the Participants of such Participating Employer to such new Trustee as shall have been designated by such Participating Employer, in the event that it has established a separate pension plan for its Employees. If no successor is designated, the Trustee shall retain such assets for the Employees of said Participating Employer pursuant to the provisions of Article VII hereof. In no such event shall any part of the corpus or income of the Trust as it relates to such Participating Employer be used for or diverted for purposes other than for the exclusive benefit of the Employees of such Participating Employer.

## 12.7 ADMINISTRATOR'S AUTHORITY

The Administrator shall have authority to make any and all necessary rules or regulations, binding upon all Participating Employer and all Participants, to effectuate the purpose of this Article.

71