United States District Court
District of Massachusetts

| | |
|---|---|
| Paul W McCree, Jr., ) | |
| ) | |
| Plaintiff ) | Civil Action NO. 04-11334JLT |
| ) | |
| v. ) | |
| ) | |
| Pension Benefit Guaranty ) | |
| Corporation, ) | |
| ) | |
| Defendant ) | |

## Memorandum of Law in Support of Plaintiff's
## Motion for Summary Judgment

### I. Introduction

The Plaintiff is a participant in the H.H. Aerospace Design Co., Inc., Defined Benefit Plan (The " Plan "). After having exhausted administrative remedies, the Plaintiff filed his Complaint and Amended Complaint against the Defendant claiming that the Defendant had erroneously determined his monthly retirement benefit. This motion is offered as an affirmative measure to obtain judgement and as a response to the Defendant's motion for judgement on the pleadings.

As the " Plan " is comprised of a predecessor (1979) and a successor (1984) version, the issue, at base of the dispute, is which version (1979 or 1984) has purview in the determination of the Plaintiff's monthly benefit. The Plaintiff has consistently demonstrated that the Adoption Agreement (1984) has purview over the Plaintiff's deftermination of benefit. Judgment should be entered in favor of the Plaintiff by **Rule 56 (c) of the Federal Rules of Civil Procedure.**

1

**II. Background and Procedural History (synopsis)**

Defined Benefit Plans are insured, private retirement plans These Plans are subject to regulation under the Employee Retirement Income Security Act of 1974 (ERISA) . The Plans are administered by the Employers and the PBGC. The plans are not funded by federal revenues. Funding is provided by PBGC's management of the investment of contributions made by the Employers who sponsor Plans

**III. Law and Argument**

A. Standard for Motion for Summary Judgment

A motion for summary judgement pursuant to Rule 56 (a)(c) is properly made and should be granted where " the pleadings, depositions, answers, to interrogations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgement is appropriate " against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at Trial.". See Celotex Corp. V. Catrett, 477 U.S. 317, 332 (1986) .

There are no factual disputes. The case turns entirely on the matter of the purview of the Adoption Agreement (1984) and its proper application to the determination of benefit for the Plaintiff. These representations are made in full accord with Rule 11 (b) .

B. Basis of the Dispute

The issues under dispute are found in the differences between definitions of certain provisions as defined in the predecessor Plan (1979) and the successor Plan (1984). The Plan (1984) includes an Adoption Agreement (1984) and the Plan Description Document (1979).

The differences between the Plan's version are definitive and substantive. **Namely, they involve changes in the definitions for Compensation and the Normal Retirement benefit. These differences are the crux of the dispute.**

1.0  Purview of the HHA Plan Versions

The HHA Plan (1979) was amended. The successor HHA Plan (1984) became effective on April 1984 with ratification of the Adoption Agreement (1984) . Adoption Agreements are the Authoritative, definitive sources for the provisions of Defined Benefit Plans.

A. The Adoption Agreement (1984), Article I, 1.4, 1.4 ( d ) and page 3 of the Summary Plan Description (1979) define any Participant's Average Monthly Earnings to be based on Compensation **derived,** from the average of **five consecutive Years of Service performed in the last ten years of service. Years of Service** are the accumulation of Hours of Service and , in accord with the KDCAO Defined Benefit and Trust Document , Article I, Definitions, section 1.24, completed **Hours of Service** are deemed paid.

B. The applicability of the purview of a  version depends upon  its time of effect and the time of  a Participant's last ten years of service.

C. The Adoption Agreement (1984) was in effect between April, 1984 and February, 1991.

D. The Plaintiff began employment at the H.H. Aerospace Design Co., Inc., in November 1984. The Plaintiff bcame a Participant in the Plan in April 1985; he terminated his employment at  the H. H. Aerospace Design Co., Inc., in January 1991.

Since the Plaintiff's five consecutive years of experience for determining  his Average Monthly Earnings and the term of the HHA Plan (1984) are in the same frame of time between 1984 and 1991, the Plaintiff's determination of benefit comes entirely under the purview of the Adoption Agreement (1984) . Therefore, in the Plaintiff's case, the Adoption Agreement (1984) is the proper, authoritative source. **This  proves that the  HHA Plan (1979), in this case, has no purview over the termination of the Plaintiff's benefit.**

3

C. The definition, total, taxable Compensation, refers, in part, to the Average Monthly Earnings. In the Plaintiff's case, among other Participants, the employer, from time to time, withheld back pay. The back pay was compensation due to the Plaintiff and other employees for **completed hours of service** . Thus, for the Plaintiff and other Participants, Compensation re. **earnings from completed hours of service**, at date of retirement and determination of benefit, means **paid and accrued.**

The following rationale uses payroll check stubs as an alternate source of information for determining the Plaintiff's Average Monthly Earnings. The Plaintiff was a salaried employee. The Plaintiff's yearly salary was paid on a monthly basis at a specified, hourly rate. A yearly salary is equal to 2080 hours of service per year times the specified hourly rate. This is a standard definition common in government, industry and commerce. The Plaintiff provided monthly payroll check stubs in his original appeal to verify and authenticate his employment and salary history. These dated data show that the Plaintiff's hourly rate of pay in 1986 was $33.00 for 12 months and $35.00 for 12 months for each of the four, consecutive years from 1987 to1990. Thus, the average hourly rate for these five consecutive years is $34.60. Thus, it follows that 2080 hours/years times $34.60 /hour equals $71968.00, the average yearly salary. $71968.00 per year divided by 12 months equals $5997.33, the Average Monthly Earnings.
**The preceeding follows the common method of deductive reasoning. The results are self-evidently true.**

The Defendant, in its motion for judgement on the pleadings, argues that there is no " authority " for this proposed method of determining the Plaintiff's compensation. But, here, the Plan, rightly so, does not provide for any method of computation whatsoever. Here, the Plan is descriptive without offering definition of the means by which a figure for the Average Monthly Earnings can be determined..That is left to be derived at the determination of benefit.

D. **Plaintiff is not trying to recover back pay. But, in accord with the Adoption Agreement Article I, 1.4, 1.5 (d, e, f) and the KDCAO Document, Article I., Section 1.42, it is required that the average shall be based on the total compensation for the total *entitled hours of service* completed over five consecutive years of employment and selected so as to**

5

**provide the highest benefit.**

E. The Defendant used W-2 data to determine the Average Monthly Earnings. These data are correct in so far as what they provide is concerned, but they report record of compensation for only **actually paid Years of Service**. Based on these data, the Plaintiff's Average Monthly Earnings are calculated to be $4701.28. But, it has been shown that, in the case of the Plaintiff and cases of other Participants, compensation means **paid and accrued**. **Therefore, since the back pay due for any Participant's accrued hours of service are not counted or deemed paid, in the Defendant's determinations, the Defendant has miscalculated the Average Monthly Earnings.**

F. The Plan does not require that only W-2 data must be used. No reliable viable and authentic record of employee history is prohibited by the Plan in support of determining the Average Monthly Earnings. As long as a source is valid and authentic, ordinarily, there should be no basis for fraud.

It is not a matter of whether or not the W-2 data are correct. **But, in accord with the Adoption Agreement Article I, 1.4, 1.5 (d, e, f) and the KDCAO Document, Article I., Section 1.42, it is required that the average shall be based on the total compensation for *the total, entitled hours of service* completed over five consecutive years of employment and selected so as to provide the highest benefit. Thus, W-2 data, as it is a record of only actually paid income, does not satisfy these requirements whenever wages have been withheld. W-2 data is appropriately used when wages have not been withheld.**

6

3.0 Definition for the Normal Retirement Benefit

The Adoption Agreement (1984), Article V., 5.1, defines the normal retirement benefit to be equal to 0.45 times the average monthly earnings **offset by** (2/3) times the monthly Social Security benefit.

A. The Plaintiff has demonstrated and proved that, by definition of dictionaries, math and grammatical analysis, logic, cogent example, common sense and common understanding of meaning and usage, **the phrase, *offset by*, as used, <u>translates to mean plus.</u>**

**In summary, as a matter of objective fact and common practice, an offset is made or applied by the addition or subtraction of a compensation, counterweight or counterbalance. Thus, the phrasing, offset by the addition by a specified amount, means offset by a specified amount or *offset by plus* a specified amount. Also, the phrasing, offset by the subtraction by a specified amount, means offset by the addition of minus a specified amount, or offset by minus a specified amount, or reduced by, or minus or less a specified amount. .**

**Furthermore, the words, offset and reduce, are definitely not synonyms. *<u>The verb, to offset, means to compensate , balance , make up for, counter weigh or counterbalance . The verb to reduce means to subtract, diminish or lessen.</u>* Since an offset is made or applied by addition or subtraction, the phrase, *<u>reduced or offset</u>*, connotes the same as the phrase, *<u>reduced or offset by subtraction</u>*. From this analysis, the Plaintiff shows that the meaning of the word, offset, and its usage are unambiguous.**

But the Defendant contends that the phrase, reduced or offset, signifies that offset means reduced. Of course, it can be inferred from the phrase, reduced or offset, that offset means reduced, but that inference is blatantly false. Reduce and offset are not synonyms *<u>The correct inference is that reduced means offset by subtraction.</u>*

7

Nevertheless, the Defendant falsely maintains that the phrase, reduced or offset, as it appears in the Plan and elsewhere, signifies that offset *legally* means reduce

The decision in the case ALESSI ET AL. V. RAYBESTOS-MANHATTAN, iNC., ET AL, No. 79 - 1943 is instructive.

(a) The Court declares in the Decision that OFFSETS in pension benefit plans are held legal under ERISA ( 29 USCS 1001 ET SEQ. ); the Court ruled against the Plaintiffs.

(b) The Decision refers to the general class of offsets. Offsets can be made by addition or subtraction.

(c) The Plaintiffs' case involved only reductions or offsets made by reductions or subtractions. Thus, use therein of the phrasing, reduced or offset, means reduced or offset by a reduction or subtraction and the phrasing, a reduction or offset, means a reduction or offset made by a reduction or subtraction by something.

(d) It is found in Headnote (3) that ERISA 1974 allows the creators of pension benefit plans full power to define the plan's content and that once vested it cannot be forfeited.

(e) It is found in Headnote (4) that ERISA 1974 does not prohibit "integration" which permits pension benefit levels to be determined by combining pension funds with other income streams.

(f) The Court's ruling against the Plaintiffs is based on the finding that offsets made by reductions or subtractions, in accord with "integration", are legal.

(g) The plans involved in this case involved only reductions of benefits by subtractions of specified offsets. The Court was not presented with the issue of the meaning of the term "offset".

8

***This confirms that pension benefit levels can be legally determined by either addition or subtraction*** and ***not all offsets are reductions***.

Furthermore, to support the false claim that offset means reduce, the Defendant adduced federal Code, Section 401 (1) (4) (D) , for definition of " Offset Plan" . By the cited Code, an " Offset Plan " is any plan in which the statement of benefit provides that the contribution attributable to the employee is *reduced by* a specified amount. But it has been shown that the statement of benefit in the Adoption Agreement (1984) specifies that the contribution attributable to the employee is offset by the *addition* of a specified, positive amount. Consequently, the cited, federal Code does not apply.

B. In the HHA Plan (1979), the normal retirement benefit is defined to be equal to 0.45 times the average monthly earnings **minus or less or reduced by** the monthly Social Security benefit. The Defendant's determination of the Plaintiff's monthly benefit provides that the benefit is reduced. But in the Adoption Agreement (1984) , the normal retirement benefit is defined to be equal to 0.45 times the average monthly earnings offset by (2/3) times the Social Security benefit. It has been shown that phrasing like, **offset by something**, translates to mean **offset by the addition of something or plus something.** The Defendant has either misapplied the HHA Plan (1979) or misinterpreted the Adoption Agreement (1984). In any case, the Plaintiff's monthly benefit, as determined by the Defendant, is **wrongfully reduced.** The same may be true for any Participant in the HHA Plan with 5 consecutive Years of Service from April 1984.

C. In accord with the Adoption Agreement (1984), the Plaintiff's determination of benefit is derived in the following.

Given:
  The Average Monthly Earnings (AME) = $5997.33
  The Monthly Social Security Benefit or PIA = $1013.00
  The Plan Accrual Factor (1984) = (6/7)
  The Survivor Benefit Factor (SBF) = 0.9449

Then:
  The Normal Retirement Benefit (NRB) = 0.45xAME + (2/3)xPIA
                                      = 0.45x$5997.33 + (2/3)x$1013.00
                                      = $2698.80 + $675.33 = $3374.73
  The Accrued Monthly Benefit (AMB) = $3374.13x(6/7)x0.9449
                                    = $2732.75
The Current Accrued Monthly Benefit  = $1166.15
The Monthly Underpayment             = $1566.60
The Total Underpayment equals $1566.60 times the total number of months in arrears

## IV. Conclusion:

It has been shown that the Plaintiff's claims and proofs are **irrefutable** and **expressly consistent, compatible and in full concert with ERISA and the expressed meaning and intent of the HHA Plan (1984)**. It has been shown that there is no genuine basis or justification for the Defendant's false allegations and denials; the allegations and denials are given nude, in the face of preponderant, irrefutable proof and evidence to the contrary.

In accordance with Rule 56 (c) of the Federal Rules of Civil Procedure, **as " there is no genuine issue as to material fact. "**, the Plaintiff, herewith, files Motion for Summary Judgment for recovery as specified in the Plaintiff's Amended Complaint.

Respectfully submitted by:

*Paul W. McCree, Jr.*
Paul W. McCree, Jr.

October 18, 2004

10