UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL W. McCREE, JR., | * |
| Plaintiff, | * |
| v. | * Civil Action No. 04-11334-JLT |
| PENSION BENEFIT GUARANTY CORPORATION, | * |
| Defendant. | * |

ORDER

December 1*7*, 2004

TAURO, J.

This court hereby orders that:

1. Motions of Paul W. McCree, Jr. for Supplemental Pleadings [#14] and [#19] are ALLOWED;

2. Motion of the Pension Benefit Guaranty Corporation for Judgment on the Pleadings [#10] is ALLOWED for the reasons set forth in Plaintiff's accompanying memorandum, a copy of which is attached for ready reference (appendix); and

3. Motion of Paul W. McCree, Jr. for Summary Judgment [#12] is DENIED.

IT IS SO ORDERED.

_____
United States District Judge

(Appendix)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PAUL W. McCREE, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 04-11334 JLT |
| | ) | |
| v. | ) | |
| | ) | |
| PENSION BENEFIT GUARANTY | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF REASONS IN SUPPORT OF THE
PENSION BENEFIT GUARANTY CORPORATION'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

**I.   Introduction**

Paul W. McCree ("Plaintiff") is a participant in the H.H. Aerospace Design Co., Inc. Defined Benefit Pension Plan (the "Plan"). Defendant Pension Benefit Guaranty Corporation ("PBGC") is the United States government agency that administers the pension plan termination insurance program under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff brought this lawsuit because he disagrees with PBGC's determination of his pension benefit.

At issue is the meaning of the terms "compensation" and "offset plan," two plain and unambiguous terms used in the documents governing the Plan ("Plan Documents"). Judgment should be entered in favor of PBGC for the following reasons:

- PBGC's calculation of Plaintiff's pension benefit was based on the terms of the Plan Documents;

- "Compensation" is clearly defined in the Plan Documents as the amount **actually paid** that is **subject to tax**;

- although "Offset Plan" is not defined in the Plan Documents, it is clearly defined in 26 U.S.C. § 401(*l*)(4)(D) as a plan under which an employee's pension benefit is **reduced** by such employee's Social Security benefit;

- Plaintiff can prove no set of facts in support of his claim that, for the purpose of determining his pension benefit, his compensation should be based on a hypothetical estimate of his wages rather than on his W-2 Wage and Tax Statements;

- Plaintiff can prove no set of facts in support of his claim that an Offset Plan provision should be interpreted to mean that a pension benefit must be added to, rather than reduced by, a Social Security benefit.

## II.  Background and Procedural History

When a covered pension plan terminates without sufficient funds to pay guaranteed benefits, PBGC typically becomes trustee of the plan, takes over the assets and liabilities of the plan, and pays benefits to plan participants in accordance with 29 U.S.C. §§ 1322, 1344. The Plan is a defined benefit pension plan covered by PBGC. The Plan sponsor, H.H. Aerospace Design Company, Inc., ceased business operations in February 1991, after its assets were seized by the Internal Revenue Service. By agreement between PBGC and the H.H. Aerospace Design Company, Inc., the Plan was terminated effective February 1, 1991. On September 8, 1993, PBGC was appointed statutory trustee.

Plaintiff applied for pension benefits on October 18, 1993. PBGC began paying Plaintiff a pension benefit on January 1, 1994, on an estimated basis. PBGC issued a preliminary determination of Plaintiff's benefit entitlement on August 24, 1995, at which time Plaintiff's benefit was reduced due to concerns that it exceeded the amount guaranteed by statute. 29 U.S.C. § 1322(b). On September 22, 1998, PBGC issued its final determination of Plaintiff's benefit.

2

Plaintiff filed an appeal dated October 8, 1998, concerning the final determination of his benefit. PBGC's Appeals Board issued a letter to Plaintiff on October 23, 1998, acknowledging receipt of Plaintiff's October 8, 1998 letter. Plaintiff wrote to the Appeals Board on December 14, 1998, indicating his appeal might need to be withdrawn. The Appeals Board subsequently issued a separate letter on December 31, 1998, which acknowledged receipt of the December 14, 1998, letter and notified Plaintiff that his appeal was being closed. In subsequent letters Plaintiff reiterated his appeal of PBGC's final determination of benefit based on the two aforementioned grounds. In a letter dated March 8, 2001, the Appeals Board explained in great detail the basis for denying Plaintiff's appeal.

In correspondence dated March 13, 2002, PBGC's Office of the General Counsel notified Plaintiff that it had examined each of his claims and concluded there is no basis to change his benefit determination, and that if Plaintiff wanted to appeal PBGC's final determination he could seek court review. PBGC's final determination of Plaintiff's benefit went into effect on May 1, 2002, following Plaintiff's exhaustion of his administrative remedies. On June 15, 2004, Plaintiff filed a Complaint. On June 30, 2004, Plaintiff filed an Amended Complaint, seeking a judgment as to the amount of pension benefit that he is entitled to receive under the terms of the Plan. PBGC filed an Answer to the Amended Complaint on August 20, 2004.

### III. Law and Argument

#### A. <u>Standard for a Motion for Judgment on the Pleadings</u>

A motion for judgment on the pleadings pursuant to Civil Rule 12(c) is properly made "after the pleadings are closed,"[1] and should be granted if a plaintiff can prove no set of facts in

---

[1] Civil Rule 12(c). PBGC has filed its Answer, closing the pleadings.

3

support of his claim that would entitle him to relief.[2] Thus, the same standard governing motions to dismiss applies to motions for judgment on the pleadings.[3] If there are no factual disputes, only questions of law, the motion should be granted.[4] In considering the motion, a Court may consider a document which is "sufficiently referred to in the complaint."[5]

There are no factual disputes. Plaintiff's allegations concern the meaning of two plain and unambiguous terms, "Compensation" and "Offset Plan," as set forth in the Plan Documents. Plaintiff quotes, misstates and misinterprets various provisions of the Plan Documents at length throughout the Amended Complaint. Because the relevant provisions of the Plan Documents have been extensively quoted, relied upon, and essentially incorporated by reference by Plaintiff in his Amended Complaint, PBGC has attached the Plan Documents as an exhibit to this Memorandum. Consideration of the Plan Documents is appropriate in this case because "they

---

[2] Donovan v. City of Haverhill, 311 F.3d 74, 76 (1st. Cir. 2002).

[3] "[F]ailure to state a claim upon which relief can be granted" is grounds for a Rule 12(b)(6) motion. Civil Rule 12(b)(6); See Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 24 (1st Cir. 1998).

[4] Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 38 (1st Cir. 2004).

[5] See Watterson v. Page, 987 F.2d 1, 3 (1st Cir.1993); PBGC v. White Consol. Indus., 998 F2d 1192,1196 (3rd Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document. . . . Otherwise a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."); Venture Assoc. Corp. v. Zenith Sys. Corp., 987 F.2d 429, 431 (7th Cir.1993)(a defendant may attach "certain pertinent documents [to a 12(b)(6) motion] if the plaintiff failed to do so. . . . Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) ("if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.").

4

were incorporated through reference to the plaintiff's rights under the plans, and they are central to the plaintiff's claims." See Weiner v. Klais and Co., 108 F.3d 86, 89 (6th Cir. 1997).[6] Attaching the Plan Documents is also appropriate because the Plan Documents contradict the Plaintiff's arguments and negate his claims.[7] Neither the term "Compensation" nor the term "Offset Plan" is ambiguous. Plaintiff's proposed interpretations are plainly incorrect. Accordingly, PBGC respectfully requests that the Court consider the Plan Documents as part of the pleadings, because the Plaintiff heavily relies upon them, there is no dispute as to their authenticity, and Plaintiff's allegations turn on the interpretation of the Plan Documents as a matter of law.

### B. The Plan Documents

The determination of Plaintiff's benefits is governed by the following Plan Documents:

- The Guardian (ERISA) Defined Benefit Prototype Pension Plan and Trust Agreement for an Offset Plan[8], effective April 1, 1979, and its accompanying Adoption Agreement (the "Original Plan Document");

---

[6] The First Circuit recognizes that "[t]he jurisprudence of Rule 12(b)(6) requires [the court] to consider not only the complaint, but also matters fairly incorporated within it and matters susceptible to judicial notice." Cruz v. Melecio, 204 F.3d 14, 21-22 (1st Cir. 2000) (citing Beddall, 137 F.3d at 16-17; Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1017-18 (5th Cir. 1996)). In Beddall, the First Circuit held that when a complaint's "factual allegations are expressly linked to--and admittedly dependent upon--a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall, 137 F.3d at 17.

[7] See Thompson v. Illinois Dept. of Prof'l Regulation, 300 F.3d 750,754 (7th Cir. 2002) ("Where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim.").

[8] An "Offset Plan" is a defined term under the Internal Revenue Code. 26 U.S.C. § 401(*l*)(4)(D).

- The KDACO Defined Benefit Pension Plan and Trust, adopted by H.H. Aerospace Design Co., Inc., effective April 1, 1984, and its accompanying Adoption Agreement (the "Succeeding Plan Document").

The Plaintiff has raised two arguments with respect to PBGC's determination of his pension benefit. First, Plaintiff argues that PBGC has misinterpreted the term "Compensation" as it is defined in the Succeeding Plan Document. Second, Plaintiff argues that the term "Offset Plan" is ambiguous and that PBGC has misinterpreted this term. PBGC disagrees that there is any ambiguity in either of these provisions and submits that it has correctly interpreted the terms in accordance with the Plan Documents.[9]

### 1. Compensation

#### a. "Compensation" is a Clearly Defined Term in the Plan Documents.

"Compensation" is plainly and unambiguously defined in the Plan Documents. Article 4 of the Adoption Agreement to the Original Plan Document provides that

> COMPENSATION FOR ANY PLAN YEAR OR LIMITATION YEAR shall mean all of each Participant's Compensation *actually paid within such year that is subject to tax* under Section 3101(a) of the Internal Revenue Code without the dollar limitation of section 3121(a).[10]

(emphasis added).

---

[9] See Perry v. New England Bus. Serv., Inc., 347 F.3d. 343, 345-346 (1st Cir. 2003)("Where, as here, the words of an insurance policy are plain, we will 'refrain from conjuring up ambiguities' and likewise 'abjure unnecessary mental gymnastics which give the terms of the policy a forced or distorted construction.'"citing Burnham v. Guardian Life Ins. Co., 873 F.2d 486, 490-91 (1st Cir.1989)(quoting Taylor v. Aetna Cas. & Sur. Co., 867 F.2d 705, 706 (1st Cir.1989)).

[10] Adoption Agreement to the Guardian (ERISA) Defined Benefit Prototype Pension Plan and Trust Agreement for an Offset Plan, effective April 1, 1979.

Likewise, Article 1.5 of the Adoption Agreement to the Succeeding Plan Document provides

> 'Compensation' with respect to any Participant means: . . total compensation for the Limitation Year that is *subject to tax* under Section 3101(a) of the Internal Revenue Code without the dollar limitations of Section 3121(a) which is . . . *actually paid* within such year . . .."[11]

(emphasis added).

Thus, there is no ambiguity in either the Original Plan Document or the Succeeding Plan Document over the definition of the term "Compensation." The Plan Documents clearly state that Compensation is that which is "actually paid" and "subject to tax."

### b. Plaintiff's Argument that PBGC Should *Estimate* His Compensation Has No Support in the Plan Documents.

To determine Plaintiff's Compensation, PBGC relied on the total W-2 Wage and Tax Statements ("W-2 Statements") received by Plaintiff from H.H. Aerospace Design Company, Inc. The W-2 Statements contain the compensation received by Plaintiff that was actually paid by his employer and subject to tax. Plaintiff argues he is entitled to greater compensation than his W-2 Statements indicate. Rather than base his compensation on these W-2 Statements, Plaintiff argues that PBGC should *estimate* his annual compensation by taking a *selective sample* of his paycheck receipts, and using these to arrive at an average hourly wage, multiplied by 40 hours per week, 52 weeks per year. Plaintiff cites no authority for his proposed method of determining his compensation, and PBGC has no way of confirming the validity of Plaintiff's method. Plaintiff has also failed to provide any verifiable proof, such as income tax returns, in support of his argument that his W-2 Statements under-report his compensation for the years in question.

---

[11] Adoption Agreement to the KDACO Defined Benefit Pension Plan and Trust, adopted by H.H. Aerospace Design Co., Inc. on March 30, 1979, effective April 1, 1984.

7

Plaintiff argues that his W-2 Statements are incorrect because his employer failed to pay him for all the time Plaintiff worked. If Plaintiff believes his former employer has underpaid him or withheld his wages, Plaintiff's remedy is to file suit against his former employer, not PBGC. Plaintiff could have sued his former employer under the Massachusetts Wage Act, which specifically requires employers to promptly pay employees their wages.[12]

Likewise, if Plaintiff believes that his W-2 Statements do not accurately reflect his compensation, Plaintiff's remedy is to correct the W-2 Statements through the Social Security Administration.[13] If the Social Security Administration issues a W-2c Corrected Wage and Tax Statement, regarding Plaintiff's income for each of the years in question, PBGC will re-calculate Plaintiff's pension benefit based on any corrected amounts. Until that occurs, PBGC must adhere to terms of the Plan Documents, which clearly state that Plaintiff's pension benefit must be based on what he was "actually paid" that was "subject to tax." Otherwise, any participant could allege as Plaintiff has, that their W-2 Statements under-report their taxable income, and PBGC would have no way of verifying the allegation.

    2.    **Offset Plan**

    a.    **"Offset Plan" is a Defined Term Under the Internal Revenue Code**.

Under the Internal Revenue Code, "[t]he term "offset plan" means any plan with respect to which the benefit attributable to employer contributions for each participant is reduced by an amount specified in the plan." 26 U.S.C. § 401(*l*)(4)(D); see <u>Alessi v. Raybestos-Manhattan, Inc.</u> 451 U.S. 504, 516-517 (1981) (comparing pension offsets based on workers' compensation awards to the "analogous reduction" permitted under ERISA for pension offsets based on Social Security benefits).

---

    [12]    G.L.c. 149 § 148.

    [13]    An employee may correct his earnings record by following the procedures described in section 205 of the Social Security Act, 42 U.S.C. § 405.

8

The Original Plan Document provides for an offset of 66.7% of the estimated social security benefit payable at the participant's normal retirement date. Article 7.1 of the Original Plan Document clearly states that

> [t]he amount of Monthly Retirement Benefit on the Normal Form shall be 45% of the Participant's Average Monthly Compensation **less** 66.7% of the Monthly Primary Social Security Benefit in accordance with the Social Security Act . . . in effect at the time of the Participant's retirement (current).[14]

The language in Article 5.1 of the Adoption Agreement to the Succeeding Plan Document follows this, as it states

> [t]he amount of monthly retirement benefit to be provided for each Participant who retires on his Normal Retirement Date (which benefit herein called his Normal Retirement Benefit), shall be equal to 45% Average Monthly Compensation, offset by 66% of the Primary Social Security Benefit in effect at the time of the Participant's retirement (current). The minimum monthly retirement benefit shall be $20 for any Participant entitled to a benefit as described above.[15]

Thus, there is no substantive difference between the Original Plan Document and the Succeeding Plan Document. Both provide that Plaintiff's pension benefit must be offset by his social security benefit. The Original Plan Document uses a different term, "less" instead of "offset," but the two words have identical meanings.

        **b.**    **Plaintiff's Argument That PBGC Should Interpret the Term "Offset" to Mean "Increase" Has No Legal Basis.**

Plaintiff argues that Section 5.1 of the Adoption Agreement to the Succeeding Plan Document is ambiguous and has been misinterpreted by PBGC. Plaintiff argues that where the Succeeding Plan Documents say that a participant's pension benefit must be "offset" by any

---

[14]    Adoption Agreement to The Guardian (ERISA) Defined Benefit Prototype Pension Plan and Trust Agreement for an Offset Plan, effective April 1, 1979.

[15]    Adoption Agreement to The KDACO Defined Benefit Pension Plan and Trust, adopted by H.H. Aerospace Design Co., Inc., effective April 1, 1984.

social security benefit, the word "offset" means "plus" or "increase." Plaintiff offers no legal basis for his interpretation of the Plan Documents.

## IV. Conclusion

For the foregoing reasons, PBGC respectfully asks that the Court dismiss the action with prejudice, and award PBGC its costs and attorney's fees.

                                                  Respectfully submitted,

Dated: October 5, 2004

                                                  */s/ Sherease Pratt Louis*
JAMES J. KEIGHTLEY
General Counsel
WILLIAM BEYER
Deputy General Counsel
ISRAEL GOLDOWITZ
Assistant General Counsel
SHEREASE PRATT LOUIS (NY SL7322)
Staff Attorney

Attorneys for
PENSION BENEFIT GUARANTY CORP.
Office of the General Counsel
1200 K Street, N.W., Ste.340
Washington, D.C. 20005-4026
(202) 326-4020, ext. 3477
(202) 326-4112 (facsimile)
louis.shereasepratt@pbgc.gov and efile@pbgc.gov

## CERTIFICATE OF SERVICE

I certify that a copy of the attached Motion for Judgment on the Pleadings and Memorandum in Support of Defendant Pension Benefit Guaranty Corporation has been filed electronically and served upon *pro se* plaintiff Paul W. McCree by certified mail, return receipt requested, on this 5th day of October 2004, at the following address:

Paul W. McCree
173 Goodman's Hill Road
P.O. Box 77
Sudbury, Massachusetts 01776

                                                 */s/ Sherease Pratt Louis*
                                                 Sherease Pratt Louis (NY SL7322)